RON BENDER (SBN 143364)
KIM TUNG (SBN 196236)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Proposed Attorneys for Chapter 11
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| In re: | ) Case No. 8:07-bk-12600-ES |
| | ) |
| GREAT CIRCLE FAMILY FOODS, | ) CHAPTER 11 |
| LLC, et al., | ) |
| | ) Jointly Administered with |
| Debtors. | ) Case Nos.: |
| | ) |
| ⊠  Affects All Debtors | ) Case No. 8:07-bk-12603-ES |
| | ) Case No. 8:07-bk-12605-ES |
| ☐  Affects Great Circle | ) Case No. 8:07-bk-12606-ES |
| Family Foods, LLC only | ) Case No. 8:07-bk-12602-ES |
| | ) Case No. 8:07-bk-12604-ES |
| ☐  Affects GCFF-Huntington | ) |
| Park, LLC only | ) DEBTORS' EMERGENCY MOTION FOR |
| | ) ORDER AUTHORIZING PAYMENT OF A |
| ☐  Affects GCFF-Orange, LLC | ) PERFORMANCE BASED BONUS TO BRETT |
| only | ) GARLINGHOUSE; MEMORANDUM OF |
| | ) POINTS AND AUTHORITIES; |
| ☐  Affects GCFF-San Diego, | ) DECLARATION OF RICHARD G. REINIS |
| LLC only | ) IN SUPPORT THEREOF |
| | ) |
| ☐  Affects GCFF-Canoga, LLC | ) Date:       September 11, 2007 |
| only | ) Time:       10:30 a.m. |
| | ) Place:      Courtroom 5A |
| ☐  Affects GCFF-Ontario, LLC | )            411 West Fourth St. |
| only | )            Santa Ana, CA |
| | ) |
| | ) |
| | ) |

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . .   7

I.   STATEMENT OF FACTS AND BACKGROUND . . . . . . . . . .   7

     A.   Bankruptcy Filings . . . . . . . . . . . . . .   7

     B.   The Debtors' Business Structure and Background .   7

     C.   The Debtors' Debt. . . . . . . . . . . . . . .  14

     D.   The Debtors' Assets. . . . . . . . . . . . . .  15

II.  THE PERFORMANCE OF BRETT GARLINGHOUSE IS CRUCIAL TO
     THE SUCCESS OF THE DEBTORS' REORGANIZATION. . . . . .  16

     A.   A Performance Based Bonus Is Appropriate . . . .  16

     B.   Source of Funds. . . . . . . . . . . . . . . .  18

III. DISCUSSION. . . . . . . . . . . . . . . . . . . . .  19

     A.   This Court Has The Authority To Grant The
          Relief Requested Herein. . . . . . . . . . . .  19

     B.   Payment Of The Performance Bonus To Brett
          Garlinghouse Is Permissible. . . . . . . . . .  20

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . .  21

DECLARATION OF RICHARD G. REINIS . . . . . . . . . . . .  23

# TABLE OF AUTHORITIES

Page(s)

CASES

Green v. Drexler In re Feit & Drexler, Inc.)
    760 F.2d 406 (2d Cir. 1985) -------------------------------- 20

In re America West Airlines, Inc., 171 B.R. 674 (Bkrtcy.D.Ariz.
    1994) ----------------------------------------------------- 20

STATUTES

11 U.S.C. § 105 ------------------------------------- 2, 7, 19
11 U.S.C. § 1107 --------------------------------------- 2, 7
11 U.S.C. § 1109 --------------------------------------- 2, 7

RULES

Local Bankruptcy Rule 9075 --------------------------------- 2, 7

ii

Pursuant to Local Bankruptcy Rule 9075-1, 11 U.S.C. §§ 105(a), 1107(a), and the appropriate exercise of their business judgment, Great Circle Family Foods, LLC ("Great Circle"); GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC, Chapter 11 debtors and debtors in possession herein (collectively, the "Debtors") hereby move, on an emergency basis, for the entry of an order authorizing them to pay a performance based bonus to Brett Garlinghouse (the "Motion").[1]

On August 22, 2007 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since the commencement of these cases, the Debtors have been operating their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtors are in the business of owning and operating Krispy Kreme Doughnut stores. While there are six separate legal entities, the Debtors essentially operate as one consolidated business entity. There is one group of management for all six Debtors; all of the Debtors' employees are paid by one Debtor; the Debtors operate with a central banking system; and the Debtors prepare consolidated financial statements. The Debtors currently own and operate eight Krispy Kreme Doughnut stores and

---

[1] A continued hearing was held on August 27, 2007, at 10:00 a.m., on the motion filed by the Debtors for entry of an order authorizing the Debtors to assume the "Agreement for Employment" dated June 6, 2005 entered into between Great Circle and Brett Garlinghouse, as modified (the "Employment Agreement"). At that hearing, among other things, the Court set a hearing on this Motion on shortened time for September 11, 2007, at 10:30 a.m.

1  manage three others.

2      The Debtors' ability to pursue their restructuring business
3  plans, return to profitability and reorganize is significantly
4  dependent upon the performance of their most key employee, Brett
5  Garlinghouse, the President and Principal Responsible Person for
6  the Debtors.
7

8      The marketplace - and potential bidders for the business -
9  view Mr. Garlinghouse as the "face" and the key employee of the
10  Debtors, and as such, it is critically important to the Debtors
11  to have Mr. Garlinghouse perform well during the bankruptcy
12  process to keep the confidence and support of their suppliers
13  throughout the bankruptcy process.

14      Mr.  Garlinghouse  is  a  highly  talented  and  skilled
15  individual, and plays a crucial role in the day-to-day operations
16  of  the  Debtors,  as  well  as  fulfilling  the  administrative
17  requirements of these chapter 11 cases.  Mr. Garlinghouse was the
18  first employee hired by Debtor in June, 1998, after working for
19  many years for Winchell's Doughnut Shops.  He will help retain
20  and  rally  the  confidence  in  the  Debtors'  key  employees  and
21  vendors.  Needless to say, the Debtors cannot continue to operate
22  and reorganize without their key employees.  Without the key
23  Employees,  the  Debtors'  operations  and  the  value  of  their
24  business  will  be  severely  impaired,  if  not  eviscerated
25  altogether.  Mr. Garlinghouse's performance is critical to the
26  Debtors'  business  and  the  preservation  of  the  value  of  their
27  assets.
28

1    Given the value of Mr. Garlinghouse's performance in the

2  Debtors' sale and reorganization process, the Debtors believe

3  that payment of a performance based bonus is fair and reasonable

4  and a valid exercise of the Debtors' business judgment.

5
     By the Motion, the Debtors respectfully request authority to

6
   pay Mr. Garlinghouse a performance bonus totaling $41,000 (the
7
   "Performance Bonus") as follows:[2]
8

9          (a)   50% of the Performance Bonus will be paid upon the

10                confirmation  of  a  plan  of  reorganization  in  the

11                Debtors' Chapter 11 cases;

12         (b)   50% of the Performance Bonus will be paid upon the

13                earlier  of  (1)  the  sale  of  four  certain  stores  to

14                Kripsy Kreme Doughnuts, Corp., or an overbidder, or (2)

15                in the event the Debtors obtain financing for the four

16                stores; and

17         (c)   the balance of the Performance Bonus, if any, will be

18                paid upon the sale, reorganization or the closing of

19                the Debtors' remaining stores.

20

21

22
   _____
23  [2] At the hearing on August 27, 2007, to assume the Employment Contract, as
     modified, the Court ordered, among other things, that (i) $20,500 will be paid
     to Mr. Garlinghouse six months following the date of the Debtors' Chapter 11
24  filings, provided Brett Garlinghouse is at such time in compliance with the
     terms of the Employment Agreement and his other additional duties as the
25  person in charge of the administration of the Debtors' Chapter 11 estates;
     and (ii) $20,500 will be paid to Mr. Garlinghouse one year following the date
26  of the Debtors' Chapter 11 filings, provided Brett Garlinghouse is at such
     time in compliance with the terms of the Employment Agreement and his other
27  additional duties as the person in charge of the administration of the
     Debtors' Chapter 11 estates.   The payments to Mr. Garlinghouse under the
28  Employment Agreement as modified on August 27, 2007, and the Performance Bonus
     herein, shall collectively not exceed the total of $41,000.

                                           4

The Performance Bonus shall be in addition to any salary, benefits or other compensation to which Mr. Garlinghouse is entitled in the ordinary course of the Debtors' businesses. The Performance Bonus shall be due and payable when an event for payment as described herein has been triggered.

### ADDITIONAL INFORMATION

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Richard G. Reinis, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtors served a copy of this Motion and all supportive papers (including notice of the hearing) upon the Office of the United States Trustee, all secured creditors, and the Debtors' 20 largest unsecured creditors via overnight mail.

**WHEREFORE**, the Debtors respectfully request that this Court issue an order:

(a) affirming the adequacy of the notice given;

(b) authorizing the Debtors to pay a Performance Bonus to Brett Garlinghouse in accordance with the benchmarks set for in the Motion; and

///

///

///

5

1      (c)  granting  such  other  and  further  relief  as  the  Court

2   deems just and proper.

3   Dated:   August 30, 2007         GREAT CIRCLE FAMILY FOODS, LLC;
4                                    GCFF-HUNTINGTON PARK, LLC;
                                     GCFF-ORANGE, LLC;
5                                    GCFF-SAN DIEGO, LLC
                                     GCFF-CANOGA, LLC
6                                    GCFF-ONTARIO, LLC

7

8                                    By: _____
                                          Ron Bender
9                                         Kim Tung
                                          Levene, Neale, Bender,
10                                        Rankin & Brill L.L.P.
                                          Proposed Attorneys for
11                                        Chapter 11 Debtors and
                                          Debtors in Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**

3

**STATEMENT OF FACTS AND BACKGROUND**

4

5      A.   Bankruptcy Filings.

6      Pursuant to Local Bankruptcy Rule 9075-1, 11 U.S.C. §§

7   105(a), 1107(a), and the appropriate exercise of their business

8   judgment, Great Circle Family Foods, LLC; GCFF-Huntington Park,

9   LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and

10   GCFF-Ontario, LLC, Chapter 11 debtors and debtors in possession

11   herein (collectively, the "Debtors"), hereby move, on an

12   emergency basis, for the entry of an order authorizing them to

13   pay a performance based bonus to Brett Garlinghouse (the

14   "Motion").[3]

15      On August 22, 2007 (the "Petition Date"), the Debtors filed

16   voluntary petitions under Chapter 11 of the Bankruptcy Code.

17   Since the commencement of these cases, the Debtors have been

18

19   operating their businesses as debtors in possession pursuant to

20   Sections 1107 and 1108 of the Bankruptcy Code.

21      B.   The Debtors' Business Structure and Background.

22      The Debtors are in the business of owning and operating

23   Krispy Kreme Doughnut stores.  While there are six separate legal

24   entities, the Debtors essentially operate as one consolidated

25

26   [3] A continued hearing was held on August 27, 2007, at 10:00 a.m., on the
motion filed by the Debtors for entry of an order authorizing the Debtors to
27   assume the "Agreement for Employment" dated June 6, 2005 entered into between
Great Circle and Brett Garlinghouse, as modified (the "Employment Agreement").
28   At that hearing, among other things, the Court set a hearing on this Motion on
shortened time for September 11, 2007, at 10:30 a.m.

7

business entity. There is one group of management for all six Debtors; all of the Debtors' approximately 290 employees are paid by one Debtor; the Debtors operate with a central banking system; and the Debtors prepare consolidated financial statements.

The Debtors currently own and operate eight Krispy Kreme Doughnut stores and manage three others. Great Circle Family Foods, LLC ("Great Circle") is the lessee of the stores in Chula Vista, Long Beach, Los Angeles (Crenshaw), and Mission Viejo. GCFF-Canoga, LLC is the lessee of the store in Santa Monica. GCFF-Huntington Park, LLC is the lessee of the store in Gardena. GCFF-Ontario, LLC is the lessee of the stores in City of Industry. GCFF-San Diego, LLC is the lessee of the store in Clairemont.

Great Circle was founded in 1998, with the purpose of developing Krispy Kreme Doughnut stores in Southern California. Development was defined in a January 12, 1998 Area Development Agreement ("ADA") between Great Circle and its franchisor, Krispy Kreme Doughnut Corporation of Winston-Salem, North Carolina ("KKD"). The "ADA" required Great Circle to develop 42 Krispy Kreme Doughnut stores over six years. Great Circle paid an Area Development fee of $420,000 to KKD pursuant to the terms of the ADA.

The first store opened in La Habra, California, one year after the ADA was signed. By the end of 1999, three more stores were opened, at a cost for each of $1.5 Million. During the year, Great Circle generated $12 million in sales revenue, with a

10% net profit. Over 400 new jobs were created. Store openings generated an avalanche of media impressions and created Krispy Kreme euphoria in Southern California.

By the end of Great Circle's second year of business, 2000, the company opened its tenth store at Clairemont Mesa in San Diego with first week sales of more than 500,000 doughnuts, which was a Krispy Kreme record. For its efforts, Great Circle was recognized by Krispy Kreme as the Franchisee of the Year, and in each of the next two years, Great Circle won the coveted QSC Award for the highest ranking for quality, service and cleanliness. Great Circle helped create an award winning software application that connected the point of sale terminals to the back office. Great Circle company joined with Disney at the premiere of their revitalized "Fantasia" movie and sold doughnuts at Dodger stadium. By the end of the year, Great Circle had created more than 1,000 new jobs.

Between 1999, when Great Circle opened its first store in La Habra, through the end of 2004, Great Circle executed 26 separate franchise agreements with KKD, developed 31 retail stores, a commissary, and a wholesale business serving over 800 accounts. Sales volume grew from $12 Million in the first year to $64 Million by 2004, and for the five year period, Great Circle's sales exceeded $275 Million. Great Circle invested over $52 Million in building stores, paid KKD over $90 Million and became Krispy Kreme's largest franchisee and customer. Krispy Kreme became Southern California's best known doughnut brand.

9

That enormous sales year of 2004 was the peak for Great Circle (and for Krispy Kreme entities all over North America), and the fall from May of that year has been precipitous. The former Krispy Kreme CEO announced trouble coming in May 2004, and the trouble ran deeper than missing projections and getting spanked by Wall Street. The bad news about "Corporate Greed" hit the Editorial pages of the LA Times. A Denver cartoon featured two lines at a Krispy Kreme: one for doughnuts, the other for disgruntled stockholders. Network TV and radio carried the story. The negative press was not confined to the business section. The stock took a tumble, but so did sales. And the bigger the franchisee, the larger the sales "hit". By August of 2004, sales declines were over 22%, comparing each week in each store to the same week one year earlier. That rate of decline continued throughout 2005 and into 2006.

The problems included over-expansion; increases in store development expenses; increases in cost of goods sold to franchisees by KKD; an absence of marketing to help sales and overcome bad press; dietary changes; wholesale business undermining retail; and an absence of a credible coffee program and other means of extending day parts; just to name a few.

KKD became a public company in 2000. From that point on, management of the franchisor and management of Great Circle had divergent interests. In 2001, when Great Circle recognized that the KKD store prototype was not functional in a densely populated, expensive real estate community such as Southern

10

California, Great Circle notified KKD that growth had to decelerate. KKD had made projections and estimates for Wall Street analysts that included stores to be developed by all franchisees, and KKD's management team balked at allowing Great Circle to slow down development or build smaller, less expensive stores. Indeed, KKD redesigned stores and equipment that it required franchisees to use, and such design changes materially increased the costs of opening new stores – and profits to KKD's equipment division.

That same division, KKM&D was the exclusive provider to every franchisee of everything used in and sold from the stores. Not coincidentally, Great Circle's Cost of Goods increased from 22.5% in 2000 to 28.5% currently. KKM&D became a very important contributor to KKD's earnings – and the price of its stock. As costs of shortening, sugar, paper goods and other items increased above current market prices, KKM&D's performance and contribution to KKD profits improved. Great Circle's financial performance suffered.

Krispy Kreme became a highly visible public company. From April, 2000 through 2004, Krispy Kreme's stock increased by some 800%. As a result, Krispy Kreme adopted a marketing philosophy that others should do the talking about the company, and it ceased marketing its products and services. Without marketing, when momentum slowed in 2004, the company was unprepared to counter the significant amount of bad financial press.

The little marketing effort put forth in May, 2004, and

11

thereafter, centered on a negative message about the Atkins Diet. KKD took marketing money from franchisees and spent it on telling Wall Street why KKD sales and the price of its stock were declining. In fact, there may have been a change in eating habits that still effects sales. But the public focus was on the company, which by fall, 2004, admitted that all of its financial statements needed to be restated and that the SEC and the Department of Justice were investigating the company. An avalanche of well publicized shareholder and employee class actions followed. KKD's answer was silence and the appointment of work-out specialists.

When Great Circle pleaded with KKD to allow it to slow down development, KKD obligated Great Circle to enter into the wholesale business on a wide scale. Thus, in February, 2002, Great Circle commenced to sell doughnuts in groceries like Ralph's, Albertson's and Stater Bros. The result was very negative on GCFF's retail sales, but quite positive for KKM&D's sale of provisions. This was clearly short term, because by 2005, Great Circle and many other franchisees were forced to reconsider wholesale business entirely, and by 2006, many of such programs were terminated. Great Circle voluntarily reduced its non-profitable, cannibalizing wholesale sales from $22 Million in 2004 to about $3 Million in 2007.

As the sales decline increased sharply, cash flow became a very significant issue for Great Circle. Secured creditors advanced late in 2004 and work-outs began with Union Bank of

12

California, Bank of America, and GE Franchise Finance. In February, 2005, KKD, which required that it be the exclusive source of all daily necessities in franchisee stores, insisted that GCFF pay it before delivery. Salaries and headcount were significantly reduced, store hours were shortened, partners contributed cash, and leases were renegotiated. Notwithstanding, lawsuits were commenced by KKD, landlords and certain vendors, and others. Although many such claims were settled, not less than five actions, including several Great Circle considers meritless, are presently pending.

One means of resolving matters with creditors was to sell assets, and Great Circle sold many of its stores, such that by the end of 2006, Great Circle owned only 9 stores and operated 3 owned by KKD. Much of Great Circle's prior large secured indebtedness has been paid off, frequently with agreed upon discounts. Great Circle's goal was to become a smaller but economically viable company, and that goal has been partially achieved, as Great Circle maintains a very steady sales rate for 2007 that should total approximately $17 Million.

KKD is now developing a new, small footprint prototype. There is a new way to make hot doughnuts in small stores that may be available. This is being tested under KKD supervision. Using the existing stores as hubs, Great Circle would be able to build spokes from La Jolla to San Luis Obispo and provide a short trip to the doughnut shop for most customers. Great Circle operates Coffee Bean & Tea Leaf brand franchises in several stores, having

13

eliminated the KKD coffee program provided by KKD.   The hub and spoke model, including hot doughnuts on demand and a powerful coffee program, with counter-cyclical Ice Blended® beverages, may be more fully exploited.

The Krispy Kreme brand is still magnetic and a top doughnut brand in Southern California.   A successful wholesale business exists with Stater Bros.   That business could grow substantially with better designed products, packaging and display units from KKD.   Great Circle understands that there are KKD plans to make improvements in this area.   Great Circle believes its new business model can generate substantial profits.

Great Circle's business remains a viable operating business, whose going concern value must be preserved while the Debtors explore the optimal means of emerging from their Chapter 11 bankruptcy cases.   That can only occur though the Debtors' continued operation of their stores.

C.   The Debtors' Debt.

The Debtors' largest remaining secured creditor is General Electric Capital Business Asset Funding Corporation, formerly known as GE Capital Franchise Finance Corporation ("GE"), which both acquired existing loan obligations from a prior lender, and advanced new loans to Great Circle.   Each loan is separate as to specific stores.   GE is currently owed approximately $7.5 million.   The Debtors have a good working relationship with GE. Prior to the commencement of the Debtors' Chapter 11 cases, the Debtors entered into a discounted payoff agreement with GE, which

14

will be the subject of a separate motion to be filed by the Debtors. While the Debtors and GE may disagree over whether GE has a lien against some portion of the Debtors' cash, the Debtors do not anticipate that GE opposes the Debtors' request for authority to use their cash to pay for the Performance Bonus because GE has a vested interest in making sure that the Debtors' maintain the going concern value of their businesses.

On August 23, 2007, the Court heard the Debtors' emergency motion for an interim order authorizing the Debtors to use cash collateral pending a final hearing thereon. No one, including GE, objected to the cash collateral motion, and GE has agreed to accept a replacement lien against the Debtors' assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by GE.

In addition to the Debtors' secured debt, the Debtors have a significant amount of unsecured debt ranging from debt to lenders, suppliers, former landlords, etc.

D.    The Debtors' Assets.

The Debtors believe that their most valuable assets consist of their operating stores and related leases, their Development Agreement and Operating Agreement and ten franchise agreements with Krispy Kreme, their franchise agreements with Coffee Bean & Leaf, and their goodwill and going concern. The Debtors also own a significant amount of equipment, both at their current locations as well as their former locations which have since been closed, and the Debtors have inventory and accounts receivable at

any given time.  The Debtors are exploring whether a sale of some or all of their assets or whether a reorganization of their business is in the best interests of these estates.

## II.

### THE PERFORMANCE OF BRETT GARLINGHOUSE IS CRUCIAL TO THE SUCCESS

### OF THE DEBTORS' REORGANIZATION

A.    A Performance Based Bonus Is Appropriate

The Debtors' ability to pursue their restructuring business plans, consummate their sales and possibly reorganize is significantly dependent upon the performance of their most key employee, Brett Garlinghouse, the President and Principal Responsible Person for the Debtors.

The marketplace - and potential bidders for the business - view Mr. Garlinghouse as the "face" and the key employee of the Debtors, and as such, it is critically important to the Debtors to have Mr. Garlinghouse perform well during the bankruptcy process to keep the confidence and support of their suppliers throughout the bankruptcy process.

Mr. Garlinghouse is a highly talented and skilled individual, who plays a crucial role in the day-to-day operations of the Debtors, as well as fulfilling the administrative requirements of these chapter 11 cases.  Mr. Garlinghouse was the first employee hired by Debtor in June, 1998, after working for many years for Winchell's Doughnut Shops.  He will help retain and rally the confidence in the Debtors' key employees and

vendors.  Needless to say, the Debtors cannot continue to operate and reorganize without their key employees.  Without the key employees, the Debtors' operations and the value of their business will be severely impaired, if not eviscerated altogether.  Mr. Garlinghouse's performance is critical to the Debtors' business and the preservation of the value of their assets.

Given the value of Mr. Garlinghouse's performance in the Debtors' sale and reorganization process, the Debtors believe that payment of a performance based bonus is fair and reasonable and a valid exercise of the Debtors' business judgment.

By the Motion, the Debtors respectfully request authority to pay Mr. Garlinghouse a performance bonus totaling $41,000 (the "Performance Bonus") as follows:[4]

> (a) 50% of the Performance Bonus will be paid upon the confirmation of a plan of reorganization in the Debtors' Chapter 11 cases;

> (b) 50% of the Performance Bonus will be paid upon the earlier of (1) the sale of four certain stores to

---

[4] At the hearing on August 27, 2007, to assume the Employment Contract, as modified, the Court ordered, among other things, that (i) $20,500 will be paid to Mr. Garlinghouse six months following the date of the Debtors' Chapter 11 filings, provided Brett Garlinghouse is at such time in compliance with the terms of the Employment Agreement and his other additional duties as the person in charge of the administration of the Debtors' Chapter 11 estates; and (ii) $20,500 will be paid to Mr. Garlinghouse one year following the date of the Debtors' Chapter 11 filings, provided Brett Garlinghouse is at such time in compliance with the terms of the Employment Agreement and his other additional duties as the person in charge of the administration of the Debtors' Chapter 11 estates.  The payments to Mr. Garlinghouse under the Employment Agreement as modified on August 27, 2007, and the Performance Bonus herein, shall collectively not exceed the total of $41,000.

Kripsy Kreme Doughnuts, Corp., or an overbidder, or (2) in the event the Debtors obtain financing for the four stores; and

(c)   the balance of the Performance Bonus, if any, will be paid upon the sale, reorganization or the closing of the Debtors' remaining stores.

The Performance Bonus shall be in addition to any salary, benefits or other compensation to which Mr. Garlinghouse is entitled in the ordinary course of the Debtors' businesses. The Performance Bonus shall be due and payable when an event for payment as described herein has been triggered.

B.   Source of Funds

The source of funds to be used to pay the Performance Bonus will be the Debtors' revenue, some of which may be subject to a claim or lien by GE, the Debtors' largest remaining secured creditor. While the Debtors do not dispute the validity of GE's lien on furniture, fixtures and equipment, the Debtors do not believe that any creditor holds a valid lien against the Debtors' cash, including GE. The Debtors understand that GE may disagree with this point, but the Debtors expect that GE does not object to the Debtors' continued use of their cash to pay the Performance Bonus to Mr. Garlinghouse as the Debtors and GE entered into a pre-bankruptcy settlement agreement, which will be the subject of a separate motion brought on full notice to creditors. The Debtors therefore do not believe that any of their cash constitutes the cash collateral of any creditor.

18

However, since others may disagree, and in an abundance of caution, the Debtors filed an emergency motion for authority to use cash collateral. On August 23, 2007, the Court heard the Debtors' emergency motion for an interim order authorizing the Debtors to use cash collateral pending a final hearing thereon. No one, including GE, objected to the cash collateral motion, and, as interim adequate protection, GE has agreed to accept a replacement lien against the Debtors' assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by GE. The Debtors submit that approval to pay Performance Bonus to Mr. Garlinghouse will not render these estates administratively insolvent.

### III.

### DISCUSSION

**A.    This Court Has The Authority To Grant The Relief Requested Herein.**

Pursuant to Section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The basic purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid in their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 at 105-3 (15th ed. rev. 1998). Essentially, Section 105(a) codifies the bankruptcy court's inherent equitable powers. See Green v. Drexler (In re Feit & Drexler, Inc.), 760 F.2d 406 (2d

19

Cir. 1985).  Accordingly, the Court has the power to grant the relief requested herein which is beneficial to the Debtors' estates and their creditors.

**B.  Payment Of The Performance Bonus To Brett Garlinghouse Is Permissible.**

A debtor exercises appropriate business judgment in its decision to pay performance based bonuses to its officers and employees.  See In re America West Airlines, Inc., 171 B.R. 674, 678 (Bkrtcy.D.Ariz. 1994) (held that it was proper business judgment for the debtor to pay performance bonuses to officers and employees).  In so holding, the court in America West Airlines applied established law which held that it was proper use of a debtor's business judgment to propose bonuses for employees who help propel the debtor successfully through the confirmation process.  Id. at 678.  Therefore, when a debtor determines that the estate will obtain a benefit in paying a performance bonus to an officer or an employee, the bonus is properly authorized.  See Id. at 678.

The Debtors have exercised reasonable business judgment in their decision to pay the Performance Bonus to Mr. Garlinghouse. As explained above, the Debtors' ability to pursue their restructuring business plans, sale efforts, and reorganization possibilities is significantly dependent upon the performance of their most key employee, Brett Garlinghouse, the President and Principal Responsible Person for the Debtors.

The marketplace views Mr. Garlinghouse as the "face" and the

key employee of the Debtors, and, as such, it is critically important to the Debtors to have Mr. Garlinghouse perform well during the bankruptcy process to keep the confidence and support of their suppliers throughout the bankruptcy process.

Mr. Garlinghouse is a highly talented and skilled individual, and plays a crucial role in the day-to-day operations of the Debtors, as well as fulfilling the administrative requirements of these chapter 11 cases. Mr. Garlinghouse will help the Debtors to retain and rally confidence in the key employees of the Debtors. Mr. Garlinghouse's performance is crucial to the Debtors' business and the preservation of the value of their assets.

Moreover, the benchmarks for payment of the Performance Bonus are reasonable and appropriate. Therefore, the Debtors believe that payment of the Performance Bonus is fair and reasonable and a valid exercise of the Debtors' business judgment.

## IV.

### CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court issue an order:

(a) affirming the adequacy of the notice given;

(b) authorizing the Debtors to pay a Performance Bonus to Brett Garlinghouse in accordance with the benchmarks set for in the Motion; and

21

        (c) granting such other and further relief as the Court

deems just and proper.

Dated:  August 30, 2007          GREAT CIRCLE FAMILY FOODS, LLC;
                                 GCFF-HUNTINGTON PARK, LLC;
                                 GCFF-ORANGE, LLC;
                                 GCFF-SAN DIEGO, LLC
                                 GCFF-CANOGA, LLC
                                 GCFF-ONTARIO, LLC


                                 By: _____
                                     Ron Bender
                                     Kim Tung
                                     Levene, Neale, Bender,
                                     Rankin & Brill L.L.P.
                                     Proposed Attorneys for
                                     Chapter 11 Debtors and
                                     Debtors in Possession

22

### DECLARATION OF RICHARD G. REINIS

I, Richard G. Reinis, hereby declare as follows:

1.   I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.   I am the President of Neguity, Inc., which is a Member of the Board of Managers of Great Circle Family Foods, LLC ("Great Circle").

3.   I incorporate herein statements in prior declarations to which I declared.

4.   The Debtors' ability to pursue their restructuring business plans, sale efforts and reorganization possibilities is significantly dependent upon the performance of their most key employee Brett Garlinghouse, the President and Principal Responsible Person for the Debtors.

5.   The marketplace - and potential bidders for the business - view Mr. Garlinghouse as the "face" and the key employee of the Debtors, and, as such, it is critically important to the Debtors to have Mr. Garlinghouse perform well during the bankruptcy process to keep the confidence and support of their suppliers throughout the bankruptcy process.

6.   Mr. Garlinghouse is a highly talented and skilled individual, and plays a crucial role in the day-to-day operations of the Debtors, as well as fulfilling the administrative requirements of these chapter 11 cases.  Mr. Garlinghouse was the first employee hired by Debtor in June, 1998, after working for

23

many years for Winchell's Doughnut Shops.  He will help retain and rally the confidence in the Debtors' key employees and vendors.  Needless to say, the Debtors cannot continue to operate and reorganize without their key employees.  Without the key Employees, the Debtors' operations and the value of the business will be severely impaired, if not eviscerated altogether.  Mr. Garlinghouse's performance is critical to the Debtors' business and the preservation of the value of their assets.

7.    Given the value of Mr. Garlinghouse's performance in the Debtors' sale and reorganization process, I believe that payment of a performance based bonus is fair and reasonable and a valid exercise of the Debtors' business judgment.

8.    By the Motion, the Debtors respectfully request authority to pay Mr. Garlinghouse a performance bonus totaling $41,000 (the "Performance Bonus") as follows:[5]

(a)    50% of the Performance Bonus will be paid upon the

confirmation of a plan of reorganization in the

Debtors' Chapter 11 cases;

---

[5] At the hearing on August 27, 2007, to assume the Employment Contract, as modified, the Court ordered, among other things, that (i) $20,500 will be paid to Mr. Garlinghouse six months following the date of the Debtors' Chapter 11 filings, provided Brett Garlinghouse is at such time in compliance with the terms of the Employment Agreement and his other additional duties as the person in charge of the administration of the Debtors' Chapter 11 estates; and (ii) $20,500 will be paid to Mr. Garlinghouse one year following the date of the Debtors' Chapter 11 filings, provided Brett Garlinghouse is at such time in compliance with the terms of the Employment Agreement and his other additional duties as the person in charge of the administration of the Debtors' Chapter 11 estates.  The payments to Mr. Garlinghouse under the Employment Agreement as modified on August 27, 2007, and the Performance Bonus herein, shall collectively not exceed the total of $41,000.

1

2     (b)   50% of the Performance Bonus will be paid upon the

3             earlier of (1) the sale of four certain stores to

4             Kripsy Kreme Doughnuts, Corp., or an overbidder, or (2)

5             in the event the Debtors obtain financing for the four

6             stores; and

7     (c)   the balance of the Performance Bonus, if any, will be

8             paid upon the sale, reorganization or the closing of

9             the Debtors' remaining stores.

10     9.    The Performance Bonus shall be in addition to any

11 salary, benefits or other compensation to which Mr. Garlinghouse

12 is entitled in the ordinary course of the Debtors' businesses.

13 The Performance Bonus shall be due and payable when the event for

14 payment as described herein has been triggered.

15     10.   The source of funds to be used to pay the Performance

16 Bonus will be the Debtors' revenue.   The Debtors submit that

17 approval to pay Performance Bonus to Mr. Garlinghouse will not

18 render the Debtors' estates administratively insolvent.

19     I declare under penalty of perjury that the foregoing is

20 true and correct to the best of my knowledge.

21     Executed on this 30th day of August, 2007, at Los Angeles,

22 California.

23

24                         RICHARD G. REINIS

25

26

27

28                     25

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

On August 30, 2007, I served the foregoing document(s) described as:

DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF A PERFORMANCE BASED BONUS TO BRETT GARLINGHOUSE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD G. REINIS IN SUPPORT THEREOF

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

SEE ATTACHED SERVICE LIST

_____ (By Mail) I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail. Executed on August 30, 2007 at Los Angeles, California.

__X__ (By Federal Express/Overnight Mail) I caused such envelope to be delivered by Federal Express (or Express Mail), next business morning delivery to the offices of the on the attached list. Executed on August 30, 2007, at Los Angeles, California.

_____ (By Facsimile) I caused said document to be sent via facsimile to the offices of the addressees listed above. Executed on August __, 2007, at Los Angeles, California.

_____ (By E-mail) I caused such envelope to be delivered via email to the addressees on the attached list. Executed on August __, 2007, at Los Angeles, California.

_____ (By Personal service) I caused such envelope to be delivered by hand to the offices of the addressee so designated on the attached list. Executed on August __, 2007 at Los Angeles, California.

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__ (Federal) I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

John Berwick

Consolidated List for:
GREAT CIRCLE FAMILY FOODS, LLC,
GCFF-HUNTINGTON PARK, LLC
GCFF-ORANGE, LLC
GCFF-SAN DIEGO, LLC
GCFF-CANOGA, LLC
GCFF-ONTARIO. LLC

Debtors
Great Circle Family Foods, et al.
717 State College Blvd., No. 1
Fullerton, CA 92831

Offices of the U.S. Trustee
Michael J. Hauser, Esq.
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701

Richard G. Reinis, CEO
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067

Roger E. Glickman, President and COO
Great Circle Family Foods, LLC
Dba Krispy Kreme Doughnuts
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Brett Garlinghouse, President
Great Circle Family Foods, LLC
Dba Krispy Kreme Doughnuts
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

RSN-Counsel for Krispy Kreme Doughnut Corp.

Jeff Wegner
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102

Christopher R. Kaup, Esq.
Tiffany & Bosco, P.A.
Camelback Esplanade II
2525 East Camelback Road, Third Floor
Phoenix, AZ 85016

RSN-Counsel for Krispy Kreme Doughnut
David M. Poitras, Esq.
Jeffer Mangels et al LLP
1900 Ave Of The Stars 7FL
Los Angeles, CA 90067-4308

RSN-Counsel for Piege Co. dba Felina Lingerie
Marc Smith, Esq./Ann Penners Bergen, Esq.
Krane & Smith
16255 Ventura Blvd., Suite 600
Encino, CA 91436-2302

Consolidated List for:
GREAT CIRCLE FAMILY FOODS, LLC,
GCFF-HUNTINGTON PARK, LLC
GCFF-ORANGE, LLC
GCFF-SAN DIEGO, LLC
GCFF-CANOGA, LLC
GCFF-ONTARIO. LLC

20 LARGEST

Debtors
Great Circle Family Foods, et al.
717 State College Blvd., No. 1
Fullerton, CA 92831

Offices of the U.S. Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701

Piege Co. dba Felina
20120 Plummer Street
Chatsworth, CA 91311

Krispy Kreme Doughnut Corp.
37 Knollwood Suite #500
Winston Salem, NC 27103

BakeMark
7351 Crider Avenue
Pico Rivera, CA 90660

ABN AMRO Bank N.V.
WCS Rent
Chicago, IL 60674

KB Home Non Qual. Def. Comp Plan
c/o US Trust Company
515 S. Flower St., St. 2800
Los Angeles, CA 90071

Bruce E. Karatz
680 Stone Canyon Road
Los Angeles, CA 90077

Karlovich, Carol
2052 Via Casa Alta
La Jolla, CA 92037-5732

Los Angeles County Tax Collect
P.O. Box 54088
Los Angeles, CA 90054-0088

The Rancho Mirage Trust
c/o Steven Gilfenbain
9777 Wilshire Boulevard, #918
Beverly Hills, CA 90212

Weinstein Family L.P.
4823 Lake Washington Bl., N.E., #1
Kirkland, WA 98033

Anthony W. Podell
3 Pine Tree Lane
Rolling Hills, CA 90274

Nora J. Hunt
49 Overlook Drive
Newport Beach, CA 92657

Jaroslav J. Marik
287 N. Layton Drive
Los Angeles, CA 90049

Paul Laufer
312 S. Rodeo Drive
Beverly Hills, CA 90212

San Diego County Tax Collector
PO Box 129009
San Diego, CA 92112

Kamprath Seed Co.
c/o Pali Capital
650 5th Avenue, 6th Floor
New York, NY 10019

Kenneth Tuchman
c/o Mantucket Capital Management
5251 DTC Parkway, St. 995
Englewood, CO 80111

Howard S. Marks
21 Oakmont Drive
Los Angeles, CA 90049

Suzanne Caplan and Stan Caplan
2224 Main Street
Santa Monica, CA 90405

Franchise Tax Board
P. O. Box 942857
Sacramento, CA 92457-0631

GREAT CIRCLE FAMILY FOODS
*Secured Creditors*
File No. 3888

GE Capital Franchise Finance Corp.
8377 East Hartford Drive, Suite 200
Scottsdale, AZ 85255

GE Capital Business Asset Funding
8377 East Hartford Drive, Suite 200
Seottsdale, AZ 85255

Textron Finaneial Corp.
40 Westminster Street
Providence, RI 02903

Wells Fargo Bank MN
6th Street & Marquette Ave.,
MAC N9311-160
Minneapolis, MN 55479

California Bank & Trust
11622 El Camino Real, Ste. 200
San Diego, CA 92130

City National Bank
400 No. Roxbury Dr
3rd Floor
Beverly Hills, CA 90210

GE Capital Business Asset Funding
10900 NE 4th Street
Ste 500 FF
Bellevue, WA 98004

GE Capital Business Asset Funding
8377 E. Hartford Dr., Ste 200
Scottsdale, AZ 85255

Bank of Ameriea
600 Peachtree St NE
GA 1-006-13-20
Atlanta, GA 30308

October Acquisition LLC
300 S. Grand Ave., #2600
Los Angeles, CA 90071

IOS Capital LLC
1738 Bass Rd
Macon, GA 31210

Dell Financial Svcs
12234 N. IH-35, Bldg B
Austin, TX 78753

Pricketts Distributing, INC
123 M Street
Fresno, CA 93721

Richard G Reinis
Great Circle Mgmt
300 S. Grand Ave., Ste 2600
Los Angeles, CA 90071