1  RON BENDER (SBN 143364)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Blvd., Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   E-mail:     rb@lnbrb.com; kjm@lnbrb.com
5
6  Attorneys for Chapter 11
   Debtors and Debtors in Possession
7
8
9              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
10                  SANTA ANA DIVISION
11
12  In re:                        ) Case No. 8:07-bk-12600-ES
                                  )
13  GREAT CIRCLE FAMILY FOODS,     ) CHAPTER 11
    LLC, et al.,                  )
14                                ) Jointly Administered with
                                  ) Case Nos.:
15           Debtors.             )
    _____) Case No. 8:07-bk-12603-ES
16                                ) Case No. 8:07-bk-12605-ES
    ☒  Affects All Debtors        ) Case No. 8:07-bk-12606-ES
17                                ) Case No. 8:07-bk-12602-ES
    ☐  Affects Great Circle       ) Case No. 8:07-bk-12604-ES
18  Family Foods, LLC only        )
                                  )
19  ☐  Affects GCFF-Huntington    ) **NOTICE OF EMERGENCY MOTION AND**
    Park, LLC only                ) **EMERGENCY MOTION BY DEBTOR TO**
20                                ) **ASSUME UNEXPIRED NON-RESIDENTIAL**
    ☐  Affects GCFF-Orange, LLC   ) **REAL PROPERTY LEASE WITH BIXBY**
21  only                          ) **LAND COMPANY (LONG BEACH**
                                  ) **LOCATION); MEMORANDUM OF POINTS**
22  ☐  Affects GCFF-San Diego,    ) **AND AUTHORITIES; DECLARATION OF**
    LLC only                      ) **ROGER GLICKMAN IN SUPPORT**
23                                ) **THEREOF**
    ☐  Affects GCFF-Canoga, LLC   )
24  only                          ) Date:     February 19, 2009
                                  ) Time:     2:00 p.m.
25  ☐  Affects GCFF-Ontario, LLC  ) Place:    Courtroom 5A
26  only                          )           411 West Fourth St.
                                  )           Santa Ana, CA
27  _____)
28

1

**TABLE OF CONTENTS**

2  MEMORANDUM OF POINTS AND AUTHORITIES --------------------------- 7

3  I.    INTRODUCTION ------------------------------------------- 7

4  II.   CASE BACKGROUND ---------------------------------------- 7

5        A. Bankruptcy Filings ----------------------------------- 7

6        B.    The Debtors' Business Structure and Background ------- 8

7        C.    Non-Residential Real Property Lease To Be Assumed----- 9

8        D.    Need for Assumption of Lease ----------------------- 11

9
       E.    "Adequate Assurance of Future Performance" For The
10           Lease ---------------------------------------------- 13

11  III. DISCUSSION --------------------------------------------- 14

12       A.    The Assumption of the Lease Constitutes Sound
             Business Judgment ---------------------------------- 14
13
             1.    There are Sound Business Reasons to Support
14                 The Debtors' Decision to Assume the Lease ------ 15

15       B.    The Debtors are Able to Provide "Adequate
             Assurance of Future Performance" Under Section
16           365(b)(1) of the Bankruptcy Code for the Lease ------ 17

17       C.    In the Event the Lease is a "Shopping Center"
18           Lease, the Debtors are Able to Provide "Adequate
             Assurance of Future Performance" under
19           Section 365(b)(3) ---------------------------------- 19

20  IV.   CONCLUSION --------------------------------------------- 21

21  DECLARATION OF ROGER GLICKMAN ------------------------------ 23

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

*In re Bricker,*
     43 B.R. 344, 347 (Bankr. Ariz. 1984) --------------------19

*Carey v. Mobil Oil Corp.* (*In re Tilco, Inc.*),
     558 F.2d 1369, 1372 (10th Cir. 1977) --------------------15

*In re Chipwich, Inc.*,
     54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) -----------15, 16

*In re Claremont Acquisition Corp., Inc.*,
     113 F.3d 1029, 1033 (9th Cir. 1997) --------------------18

*Comm'l Fin. Ltd. v. Hawaii Dimensions, Inc.*
     (*In re Hawaii Dimensions, Inc.*),
     47 B.R. 425, 427 (D.Haw. 1985) -------------------------15

*Control Data Corp. v. Zelman*
     (*In re Minges*),
     602 F.2d 38, 43 (2d Cir. 1979) -------------------------15

*Durkin v. Benedor Corp.*
     (*In re G.I. Indus., Inc.*),
     204 F.3d 1276, 1282 (9th Cir. 2000) --------------------15

*In re FCX, Inc.*,
     60 B.R. 405, 411 (E.D.N.C. 1986) --------------------15, 16

*In re Joshua Slocum Ltd.*,
     922 F.2d 1081, 1087 (3d Cir. 1990) -------------------19, 20

*Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*
     (*In re Richmond Metal Finishers, Inc.*),
     756 F.2d 1043, 1046-47 (4th Cir. 1985) -----------------15

*Orion Pictures Corp. v. Showtime Networks, Inc.*
     (*In re Orion Pictures Corp.*),
     4 F.3d 1095, 1099 (2d Cir. 1993) -----------------------15

*Richmond Leasing Co. v. Capitol Bank, N.A.*,
     762 F.2d 1303, 1309 (5th Cir. 1985) --------------------15

*Robertson v. Pierce* (*In re Chi-Feng Huang*),
     23 B.R. 798, 800 (BAP 9th Cir. 1972) -------------------15

*Summit Land Co. v. Allen* (*In re Summit Land Co.*),
     13 B.R. 310 (Bankr. D.Utah 1981) -----------------------16

11 U.S.C. § 365(a) ---------------------------------------7, 14, 15, 16
11 U.S.C. § 365(b) ---------------------------------------------7, 18
11 U.S.C. § 365(b)(1) ----------------------------------------17, 18
11 U.S.C. § 365(b)(3) --------------------------5, 14, 19, 20, 21
11 U.S.C. § 365(d)(4) --------------------------------------------17
11 U.S.C. § 1107-------------------------------------------------8
11 U.S.C. § 1108 ------------------------------------------------8


3 Collier on Bankruptcy (15th Edition, Revised)
      Lawrence P. King ¶ 365.05[5][a] (2005) -------------------20

iii

1

2

3      **TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY**

4  **JUDGE:**

5      Pursuant to an order of the Court, an emergency hearing will

6  be held on **February 19, 2009, at 2:00 p.m.**, before the Honorable

7  Erithe Smith, United States Bankruptcy Judge for the Central

8  District of California, in Courtroom "5A" located at 411 West

9  Fourth Street, Santa Ana, California, for the Court to consider

10 the motion (the "Motion") filed by Great Circle Family Foods,

11 LLC; GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego,

12 LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC, Chapter 11 debtors

13 and debtors in possession herein (collectively, the "Debtors"),

14 for an order authorizing the Debtors to assume the following non-

15 residential real property lease (the "Lease"):  The Shopping

16 Center Ground Lease by and between Bixby Land Company

17 ("Landlord") and Great Circle Family Foods, L.L.C.

18

19      The assumption of the Lease is based upon the Debtors' sound

20 business judgment and is in the best interest of the Debtors'

21 estates and their creditors.  The location covered by the Lease

22 that is to be assumed is a profitable, cash-flow positive

23 business, and, therefore, together with other leased locations

24 which have been assumed by these Debtors, is essential to the

25 Debtors' overall business operations and to the Debtors' ability

26 to maximize the value of these estates.  In addition to having

27 significant value as a profitable location, the Debtors have

28

2

1 received an offer from a buyer for the purchase of the Lease,
2 which, if consummated, could also create significant value to
3 these estates.  Even if a sale is not consummated, however, the
4 Debtors project that this store will continue to be profitable in
5 the future, and, therefore, the Lease needs to be assumed.

6     With the exception of the Lease, all other unexpired non-
7 residential real property leases have already been assumed or
8 rejected by these Debtors.  With respect to the Lease, the
9 Debtors and the Landlord had entered into two separate Court
10 approved stipulations, each covering a period of 180 days, to
11 extend the time to assume or reject.  The second extension
12 stipulation is due to expire this Sunday, February 22, 2009.
13 Given that, absent a further extension of the time to assume or
14 reject, the Landlord could potentially end up with a dark store,
15 the Debtors had every expectation that the Landlord would provide
16 the Debtors with a further extension of the time to assume or
17 reject; however, yesterday (on February 17, 2008), the Debtors
18 were notified for the first time that the Landlord would not
19 agree to a further extension of the time to assume or reject the
20 Lease.

21     In addition to operating a profitable, cash-flow positive
22 business at the premises that is covered by the Lease, as
23 aforementioned, the Debtors have received an offer from a buyer
24 for the purchase of the Lease.  The Landlord was notified of the
25 sale possibility including the details of the proposal.  The
26 Debtors now believe that the sharing of this information with the

1  Landlord and possibly the Landlord's desire to take advantage of

2  this sale opportunity without the Debtors' involvement might be

3  one of the reasons that the Landlord has unexpectedly refused to

4  provide the Debtors with a further extension of time to assume or

5  reject.    Based  on  all  of  the  foregoing,  the  Debtors  have

6  determined that assumption of the Lease is both necessary and

7  appropriate under the circumstances and will benefit the Debtors'

8  estates.

9

10      The Debtors are also able to provide "adequate assurance of

11  future performance" for the Lease to be assumed.    The Debtors

12  have remained current on all of their post-petition obligations

13  under the Lease.    Any pre-petition defaults existing under the

14  Lease will be promptly cured by the Debtors, and the Debtors are

15  fully  capable  of  complying  with  all  future  performance

16  obligations under the Lease.    In particular, based on the proof

17  of claim filed by the Landlord in these cases, the Debtors' pre-

18  petition defaults for the Lease are minor and consist of unpaid

19  rents in the amount of approximately $4,751.58.    The Debtors

20  currently have approximately $1.7 million in cash to cure the

21  unpaid pre-petition rents (and will pay these rents upon the

22  entry of an order approving this Motion) and insure the viability

23  of the Debtors' future operations, particularly given that the

24  Debtors' store covered by the Lease is profitable and will

25  continue to generate sufficient revenues to enable the Debtors to

26  continue to pay rent and to perform under the Lease.

27

28

4

1    Furthermore, as discussed more below, the Debtors are
2  uncertain if the Lease is a "shopping center" lease because the
3  affected store has characteristics that are similar to a typical
4  store in a shopping center, but also have characteristics that
5  are not.   In the event that the Lease is considered to be a
6  "shopping center" lease, the Debtors are also able to provide
7  "adequate assurance of future performance" under Section
8  365(b)(3) of the Bankruptcy Code.   The Debtors are able to pay
9  rent and perform under the Lease.   The Debtors believe that any
10 percentage rent due under the Lease will not decline.   There is
11 also no issue as to whether the provisions of the Lease will be
12 honored because the Debtors are not changing any terms of the
13 Lease.   The assumption of the Lease will not disrupt any tenant
14 mix or balance in the shopping center because the Debtors are not
15 changing the terms of the Lease or the use of the store.
16

17                    **ADDITIONAL INFORMATION**

18    This Motion is based on this Notice of Motion and Motion,
19 the supporting Memorandum of Points and Authorities, the
20 Declaration of Roger Glickman and all exhibits attached thereto,
21 the arguments and statements of counsel to be made at the hearing
22 on the Motion, and other admissible evidence properly brought
23 before the Court.
24    In order to provide maximum notice of this Motion,
25 concurrently with the filing of this Motion with the Court (on
26 February 18, 2009), the Debtors served a copy of this Motion and
27 all supportive papers (including notice of the hearing), by e-
28

1  mail and federal express, upon the Office of the United States

2  Trustee, counsel for the Landlord, members of the Official

3  Committee of Unsecured Creditors ("Committee"), counsel for the

4  Committee, counsel for secured creditors, and those parties

5  requesting special notice for which or whom the Debtors had e-

6  mail addresses. All other interested parties, including parties

7  requesting special notice for which or whom the Debtors did not

8  have e-mail addresses, were served a copy of the Motion and all

9  supportive papers (including notice of the hearing), by federal

10  express.

11

12      Anyone wishing to opposed or be heard on the Motion must

13  appear at the hearing on the Motion.

14      **WHEREFORE**, the Debtors respectfully request that this Court

15  hold a hearing on the Motion and issue an order:

16      (a)  affirming the adequacy of the notice given;

17      (b)  authorizing the Debtors to assume the Lease; and

18      (c)  granting such other and further relief as the Court

19  deems just and proper.

20  Dated:  February 18, 2009        GREAT CIRCLE FAMILY FOODS, LLC
                                     GCFF-HUNTINGTON PARK, LLC
21                                   GCFF-ORANGE, LLC
                                     GCFF-SAN DIEGO, LLC
22                                   GCFF-CANOGA, LLC
                                     GCFF-ONTARIO, LLC
23

24                                   By: _/s/ Ron Bender_____
                                         Ron Bender
25                                       Krikor J. Meshefejian
                                         Levene, Neale, Bender,
26                                       Rankin & Brill L.L.P.
                                         Attorneys for Chapter 11
27                                       Debtors and Debtors in
                                         Possession
28

                                     6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Pursuant to 11 U.S.C. §§ 365(a) and 365(b), Great Circle Family Foods, LLC; GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC, Chapter 11 debtors and debtors in possession herein (collectively, the "Debtors"), has filed an emergency motion (the "Motion") seeking a Court order authorizing the Debtors to assume an unexpired non-residential real property lease (the "Lease") with landlord Bixby Land Company ("Landlord").

For all of the reasons set forth below, the Debtors submit that the Motion should be granted because there is sound business judgment for the assumption of the Lease and because there is "adequate assurance of future performance" for the Lease being assumed by the Debtors for which there are very minor, pre-petition defaults of not more than $5,000 which can and will be cured upon the entry of an order approving this Motion.

**II.**

**CASE BACKGROUND**

**A.   Bankruptcy Filings.**

On August 22, 2007 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since the commencement of these cases, the Debtors have been operating their businesses as debtors in possession pursuant to

1  Sections 1107 and 1108 of the Bankruptcy Code.

2  **B.    The Debtors' Business Structure and Background.**

3  The Debtors are in the business of owning and operating
4  Krispy Kreme Doughnut stores.  While there are six separate legal
5  entities, the Debtors essentially operate as one consolidated
6  business entity.  There is one group of management for all six
7  Debtors; all of the Debtors' employees are paid by one Debtor;
8  the Debtors operate with a central banking system; and the
9  Debtors prepare consolidated financial statements.  Pursuant to
10  an order of the Court, the Debtors' bankruptcy estates are being
11  jointly administered.
12

13  Great Circle was founded in 1998, with the purpose of
14  developing Krispy Kreme Doughnut stores in Southern California.
15  After initial success, the Debtors subsequently experienced
16  significant financial problems.  Those problems included over
17  expansion; increases in store development expenses; increases in
18  cost of goods sold to franchisees by the franchisor; an absence
19  of marketing to help sales and overcome bad press; dietary
20  changes; wholesale business undermining retail; and an absence of
21  a credible coffee program and other means of extending day parts.
22

23  One means of resolving matters with creditors was to sell
24  assets, and the Debtors previously sold many of their stores.
25  Much of the Debtors' prior large secured indebtedness has been
26  paid off, frequently with agreed upon discounts.  The Debtors
27  goal was to become a smaller but economically viable company, and
28  that goal has been achieved, as the Debtors maintain a very

8

1  steady annual sales rate of approximately $17 Million with an
2  operating profit.

3      The Krispy Kreme brand is still magnetic and a top doughnut
4  brand in Southern California.  A successful wholesale business
5  exists with Stater Bros.  That business could grow substantially.

6      The Debtors' business remains a viable operating business
7  whose going concern value must be preserved while the Debtors
8  explore the optimal means of emerging from their Chapter 11
9  bankruptcy cases.  To achieve this goal, during these cases, the
10  Debtors assumed the leases associated with their profitable
11  stores and rejected the leases associated with the unprofitable
12  stores.  In fact, all of the Debtors' unexpired non-residential
13  real property leases have either been assumed or rejected with
14  the exception of the Lease with the Landlord.

15

16      C.  **Non-Residential Real Property Lease To Be Assumed**.

17      On or about July 6, 1999, Great Circle Family Foods, L.L.C.
18  entered into a written lease agreement with Landlord whereby
19  Landlord leased the premises located at 4790 Los Coyotes
20  Diagonal, Long Beach, CA (the "Long Beach Property").  A copy of
21  the Lease is attached as Exhibit "1" to the Declaration of Roger
22  Glickman (the "Glickman Declaration") annexed hereto.
23

24      The term of the Lease was for 10 years, with 4 options to
25  extend the lease term for 5 years per option.  With the Lease
26  term having commenced on or about April 14, 2000, there is
27  approximately 14 months left on the term of the Lease.  The
28  current monthly base rent due and payable under the Lease is

1   $5,958.70. Under the Lease, the Debtors are also responsible for

2   payment of its share of certain real property taxes and insurance

3   expenses.

4      The Debtors are current on all post-petition obligations due

5   and payable under the Lease. According to the proof of claim

6   filed by the Landlord in these cases, the unpaid pre-petition

7   rent due and owing is approximately $4,751.58. A copy of the

8   Landlord's proof of claim is attached as Exhibit "2" to the

9   Glickman Declaration.

10

11      Pursuant to two separate Court approved stipulations,

12   Landlord had agreed to extend the time within which the Debtors

13   are required to assume or reject the Lease. Attached as Exhibits

14   "3" and "4" to the Glickman Declaration are copies of the first

15   and second stipulations with the Landlord. Each stipulation

16   provided for an extension of 180 days to assume or reject the

17   Lease, with the second 180 days to expire on or about Sunday,

18   February 22, 2009.

19      Given the possibility of a rejection of the Lease if the

20   Debtors are unable to obtain a further extension of time to

21   assume or reject the Lease beyond February 22, 2009 – an

22   extremely terrible result for the Landlord especially in this

23   current poor economy, the Debtors had every expectation that the

24   Landlord would agree to a further extension of time to assume or

25   reject the Lease. Accordingly, the Debtors made repeated

26   requests that the Landlord sign a third extension stipulation

27

28   which was sent to the Landlord some time prior to the expiration

10

1   date of the second extension stipulation. To the Debtors'
2   surprise, on February 17, 2009, the Landlord indicated that it
3   would not agree to a further extension of time for the Debtors to
4   assume or reject the Lease.

5       Prior to refusing to agree to a further extension, the
6   Debtors had shared with the Landlord information regarding an
7   offer that the Debtors had received to purchase the Lease from
8   these estates, which information included the purchase price.
9   Having learned of the sale possibility, including the details of
10  the proposal, the Debtors now believe that the sharing of the
11  sale information with the Landlord and possibly the Landlord's
12  
13  desire to take advantage of this sale opportunity without the
14  Debtors' involvement might be one of the reasons that the
15  Landlord has unexpectedly refused to provide the Debtors with a
16  further extension of time to assume or reject.

17      Whether or not the Debtors are able to consummate a sale of
18  the Lease, the store covered by the Lease is a profitable, cash-
19  flow positive location for the Debtors. Accordingly, the Debtors
20  are seeking to assume the Lease.

21      **D.   Need For Assumption of Lease.**

22      Through the operation of their stores covered by the already
23  assumed leases, the Debtors continue to have a viable and
24  profitable operating business. The Long Beach Property also
25  constitutes a profitable location which is absolutely essential
26  to maintaining and furthering the Debtors' success and viability.
27  
28      The Lease has significant value because the store is

11

1  profitable and the Debtors are confident that the store will
2  remain profitable through the end of the term of the Lease which
3  is in approximately 14 months. Attached as Exhibit "5" to the
4  Glickman Declaration is an income statement for the Long Beach
5  Property for the eleven month period ending November 30, 2008.
6  This statement shows that, during the first 11 months of 2008,
7  the Long Beach Property was at least $27,000 cash flow positive.

8      The Debtors have formulated financial projections concerning
9  the future revenues and expenses of this store, and, based upon
10 the Debtors' projections, the store will continue to be
11 profitable and generate significant income for the Debtors.
12

13     The Lease has further significant value because the
14 improvements, including the buildings, on the land for the Long
15 Beach Property were built by and are owned by the Debtors. The
16 Debtors believe that the total cost of the building of this
17 location range between $1.5 million to $2 million. If the Lease
18 is not assumed, then the Debtors will lose an extremely valuable
19 building that does not belong to the Landlord and the value of
20 the tenant improvements made by the Debtors.

21     Indeed, the Debtors have received an offer to purchase the
22 Long Beach Property and the Lease, which the Debtors intend to
23 further explore with the proposed buyer. However, whether or not
24 a sale is consummated, given the profitability of the location,
25 the Lease must be immediately assumed.
26

27     Given the provisions of Section 365(d)(4) of the Bankruptcy
28 Code and the Landlord's indication that it will not consent to a

12

1 | further extension of time to assume or reject, unless the Debtors
2 | assume the Lease at this time, the Lease will be deemed rejected,
3 | which would be devastating to these estates given the significant
4 | value of the Lease.

5 | Based on all of the foregoing, the Debtors have determined
6 | that assumption of the Lease is absolutely necessary and
7 | appropriate under the circumstances and will benefit the Debtors'
8 | estates.

9 | **E.   "Adequate Assurance of Future Performance" For The**
10 | **Lease.**
11 |

12 | The Debtors are able to provide "adequate assurance of
13 | future performance" for the Lease.  The Debtors are current on
14 | all post-petition obligations under the Lease.  According to the
15 | Landlord's proof of claim, the Debtors' pre-petition defaults are
16 | relatively minor and consist only of unpaid rents of less than
17 | one month prior to the Petition Date, which is approximately
18 | $4,751.58.  This default will be promptly cured, and the Debtors
19 | are capable of future performance under the Lease.

20 | The Debtors currently have approximately $1.7 million of
21 | cash, which is more than sufficient to cure the unpaid pre-
22 | petition rents of approximately $4,751.58.  The Debtors are not
23 | aware of any pecuniary loss suffered by the Landlord from the
24 | unpaid pre-petition rents.  The Debtors' available cash also
25 | provide a cushion for payment of future rents, and the Debtors'
26 | business operations are and will remain profitable.  The Debtors
27 | are current on all post-petition rents under the Lease, and the
28 |

1  store covered by the Lease is profitable.   The Debtors have
2  performed financial projections of the revenues generated at the
3  store for the Lease, and the Debtors have determined that the
4  store will generate sufficient revenues to enable the Debtors to
5  continue to perform all obligations under the Lease.

6      The Debtors are uncertain if the Lease is a "shopping
7  center" lease.   In an abundance of caution, in the event that the
8  Lease is considered to be "shopping center" lease, the Debtors
9
10 are also able to provide "adequate assurance of future
11 performance" under Section 365(b)(3) of the Bankruptcy Code.   The
12 Debtors are able to pay rent and perform under the Lease.   The
13 Debtors believe that any percentage rent due under the Lease will
14 not decline because based upon the Debtors' projections, the
15 stores will continue to be profitable and will generate revenues
16 consistent with past performance.   There is also no issue as to
17 whether the provisions of the Lease will be honored because the
18 Debtors are not changing any lease terms in their assumption of
19 the Lease.   Lastly, the assumption of the Lease will not disrupt
20 any tenant mix or balance in the shopping center because the
21 Debtors are not changing the lease terms or the use of the store.
22                              **III.**
23
24                          **DISCUSSION**
25 **A.    The Assumption of the Lease Constitutes Sound Business**
26 **Judgment.**

27     Bankruptcy Code section 365(a) permits debtors in possession
28 to "assume or reject any executory contract or unexpired lease of

                                14

1  the debtor," subject to Court approval. 11 U.S.C. § 365(a).

2  Although the Bankruptcy Code itself does not set forth specific

3  guidelines for courts to apply in determining whether to approve

4  a debtor in possession's decision to assume or reject an

5  executory contract or unexpired lease, the overwhelming majority

6  of courts have consistently applied the well-established

7  "business judgment" test. <u>Durkin v. Benedor Corp. (In re G.I.</u>

8  <u>Indus., Inc.)</u>, 204 F.3d 1276, 1282 (9th Cir. 2000) (bankruptcy

9  court applies the business judgment rule to evaluate assumption

10  or rejection decisions); <u>see also Orion Pictures Corp. v.</u>

11  <u>Showtime Networks, Inc. (In re Orion Pictures Corp.)</u>, 4 F.3d

12  1095, 1099 (2d Cir. 1993); <u>Richmond Leasing Co. v. Capitol Bank.</u>

13  <u>N.A.</u>,762 F.2d 1303, 1309 (5th Cir. 1985); <u>Lubrizol Enters., Inc.</u>

14  <u>v. Richmond Metal Finishers, Inc. (In re Richmond Metal</u>

15

16  <u>Finishers, Inc.)</u>, 756 F.2d 1043, 1046-47 (4th Cir. 1985); <u>Control</u>

17  <u>Data Corp. v Zelman (In re Minges)</u>, 602 F.2d 38, 43 (2d Cir.

18  1979); <u>Carey v. Mobil Oil Corp. (In re Tilco, Inc.)</u>, 558 F.2d

19  1369, 1372 (10th Cir. 1977); <u>Robertson v. Pierce (In re Chi-Feng</u>

20  <u>Huang)</u>, 23 B.R. 798, 800 (BAP 9th Cir. 1972).

21     A debtor in possession satisfies the "business judgment"

22  test when it decides, in good faith, that the assumption or

23  rejection may benefit the estate. <u>In re FCX, Inc.</u>, 60 B.R. 405.

24  411 (E.D.N.C. 1986); <u>In re Chipwich, Inc.</u>, 54 B.R. 427, 430-31

25  (Bankr. S.D.N.Y. 1985); <u>Comm'l Fin. Ltd. v Hawaii Dimensions,</u>

26

27  <u>Inc. (In re Hawaii Dimensions, Inc.)</u>, 47 B.R. 425, 427 (D. Haw.

28  1985) (bankruptcy courts generally approve the debtor in

15

possession's decision on assumption or rejection absent a showing of bad faith, abuse of discretion, or a clear demonstration that the assumption or rejection will not benefit the estate or its creditors). In re FCX, Inc., 60 S.R. at 411-12; In re Chipwich, 54 B.R. at 430-31.

In Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310 (Bankr. D.Utah 1981), the bankruptcy court explained why deference is given to the debtor in possession's decision to assume or reject an executory contract or unexpired lease:

> "*[Court approval under section 365(a),] if required, except in extraordinary situations, should be granted as a matter of course.* To begin, this rule places responsibility for administering the estate with the trustee (debtor in possession), not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the Code. Seconds this rule expedites the administration of estates, another goal of the Bankruptcy Reform Act. Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements. Fourth, the rule is supported by pre-Code cases in this Circuit."

Id. at 315 (emphasis added).

## 1.    There are Sound Business Reasons to Support the Debtors' Decision to Assume the Lease.

The Debtors' decisions to assume the Lease are amply supported by sound business reasons.    As discussed above, the Debtors' going concern value and continued profitability can only be preserved and continued though the continued retention and operation of the profitable stores, which will be furthered by the Debtors' assumption of the Lease.    The premises covered by

16

1    the Lease serve as one of the Debtors' profitable stores and

2    business locations, and, therefore, essential to the Debtors'

3    operations.

4    In addition, the store covered by the Lease has significant

5    value because the improvements, including the buildings, on the

6    land for the Long Beach Property, are owned by the Debtors. The

7    Debtors believe that the total cost of the buildings for the Long

8    Beach location range between $1.5 million to $2 million. If the

9    Lease is not assumed, then the Debtors will lose extremely

10   valuable buildings that do not belong to the Landlord and the

11   value of the tenant improvements made by the Debtors. Indeed, as

12   reflected by the offer received from a buyer for the Long Beach

13   Property which the Debtors are in the process of exploring and

14   negotiating, the location has tremendous value which cannot be

15   lost.

16

17   Pursuant to the provisions of Section 365(d)(4) of the

18   Bankruptcy Code, unless the Debtors assume the Lease by Sunday,

19   February 22, 2009, the Lease will be deemed rejected, which would

20   be devastating to these estates. For all of these reasons, the

21   Debtors submit that their assumption of the Lease is in the best

22   interests of their estates and should be approved by the Court.

23

24

25   **B.    The Debtors are Able to Provide "Adequate Assurance of**

26   **Future Performance" Under Section 365(b)(1) of the**

27   **Bankruptcy Code for the Lease.**

28   In general, a debtor must cure all defaults, both monetary

17

1 and non-monetary, prior to the assumption of an executory

2 contract or unexpired lease. 11 U.S.C. § 365(b); In re Claremont

3 Acquisition Corp., Inc., 113 F.3d 1029, 1033 (9th Cir. 1997).

4 Bankruptcy Code section 365(b)(1) provides, in relevant part,

5 that:

6
>          if there has been a default in an executory
7           contract or unexpired lease of the debtor,
            the [debtor in possession] may not assume
8           such contract or lease unless, at the time of
            assumption of such contract or lease, the
9           [debtor in possession] –

10
>          (A) cures, or provides adequate assurance
            that the [debtor in possession] will promptly
11          cure, such default …;

12
>          (B) compensates, or provides adequate
            assurance that the [debtor in possession]
13          will promptly compensate, a party other than
            the debtor to such contract or lease, for any
14          actual pecuniary loss to such party resulting
            from such default; and
15

16
>          (C) provides adequate assurance of future
            performance under such contract or lease."
17

18 11 U.S.C. § 365(b)(1).

19      The Debtors clearly are able to provide "adequate assurance

20 of future performance" for the Lease. The Debtors' defaults for

21 unpaid pre-petition rents under the Lease aggregate $4,751.58.

22 The Debtors currently have cash of approximately $1.7 million,

23 which is more than sufficient to enable the Debtors to cure the

24 defaults, which the Debtors will do shortly following Court

25 approval of the Debtors' assumption of the Lease. The Debtors

26 are not aware of any pecuniary loss suffered by the Landlord from

27 the Debtors' unpaid pre-petition rent defaults.

28

1    The Debtors' available cash also provides a cushion for

2  payment of future rents and helps to insure the Debtors'

3  continued operations and ability to perform under the Lease. The

4  Debtors are current on all post-petition rents under the Lease,

5  and the store covered by the Lease is profitable. The Debtors

6  post-petition payment history and the continued profitability of

7  the Debtors' stores provide adequate assurance of future

8  performance under the Lease.

9

10

11  C.   **In the Event the Lease Is A "Shopping Center" Lease, the**

12      **Debtors Are Able to Provide "Adequate Assurance of Future**

13      **Performance" Under Section 365(b)(3).**

14    A debtor's right to assume an unexpired "shopping center"

15  lease under which there is an existing default is also subject to

16  Section 365(b)(3) of the Bankruptcy Code.  11 U.S.C. § 365(b)(3);

17  see In re Bricker, 43, B.R. 344, 347 (Bankr.Ariz. 1984); In re

18  Joshua Slocum Ltd., 922 F.2d 1081, 1087 (3d Cir. 1990).  The term

19  "shopping center" is not defined in the Bankruptcy Code, but

20  should be strictly construed.  Joshua Slocum Ltd., at 1087.

21

22  There are multiple factors considered in determining if a

23  location is a "shopping center" lease.[1]  Joshua Slocum Ltd., at

24

25  [1] The factors considered in determining whether a lease is a "shopping center"
   lease include a the existence of (a) a combination of leases; (b) all leases
   held by a single landlord; (c) all tenants engaged in the commercial retail
26  distribution of goods; (d) the presence of a common parking area; (e) The
   purposeful development of the premises as a shopping center; (f) the existence
27  of a master lease; (g) the existence of fixed hours during which all stores
   are open; (h) the existence of joint advertising; (j) contractual
   interdependence of the tenants as evidenced by restrictive use provisions in
28  their leases; (k) the existence of percentage rent provisions in the leases;

                                    19

1087-1089. However, there is no one factor that will outright
determine if a location is a "shopping center". See Joshua
Slocum Ltd., at 1087-1089; see also 3 Collier On Bankruptcy (15th
Edition Revised), Lawrence P. King, ¶365.05[5][a] (2005). The
determination is made on a case by case basis.

The Debtors are uncertain if the Lease is a "shopping
center" lease because the Debtors' store has characteristics that
are similar to the typical store in a shopping center, but also
have characteristics that are not. In an abundance of caution,
in the event that the Lease is considered to be "shopping center"
lease, the Debtors are able to provide "adequate assurance of
future performance" under Section 365(b)(3) of the Bankruptcy
Code. Section 365(b)(3) of the Bankruptcy Code provides:

> For the purposes of paragraph (1) of this
> subsection and paragraph (2)(B) of subsection (f),
> adequate assurance of future performance of a
> lease of real property in a shopping center
> includes adequate assurance –
>    (A) of the source of rent and other
> consideration due under such lease, and in the
> case of an assignment, that the financial
> condition and operating performance of the
> proposed assignee and its guarantors, if any,
> shall be similar to the financial condition and
> operating performance of the debtor and its
> guarantors, if any, as of the time the debtor
> became the lessee under the lease;
>    (B) that any percentage rent due under such
> lease will not decline substantially;
>    (C) that assumption or assignment of such lease
> is subject to all the provisions thereof,
> including (but not limited to) provisions such as
> a radius, location, use, or exclusivity provision,

---

(1) the right of the tenants to terminate their leases if the anchor tenant
terminates its lease; (m) joint participation by tenants in trash removal and
other maintenance; (n) the existence of a tenant mix; and
(o) the contiguity of the stores. Joshua Slocum Ltd., at 1087-1088.

1    and will not breach any such provision contained
     in any other lease, financing agreement, or master
2    agreement relating to such shopping center; and
        (D) that assumption or assignment of such
3    lease will not disrupt any tenant mix or balance
     in such shopping center.
4

5    11 U.S.C. §365(b)(3).

6        The Debtors are able to pay rent and perform under the Lease

7    given the amount of cash available, the post-petition payment

8    history, and the continued profitability of the store.   The

9    Debtors believe that any percentage rent due under the Lease will

10   not decline because based upon the Debtors' projections, the

11   store will continue to be profitable and will generate revenues

12   consistent with past performance.   There is also no issue as to

13   whether the provisions of the Lease will be honored because the

14   Debtors are not changing any lease terms in their assumption of

15   the Lease.   Lastly, the assumption of the Lease will not disrupt

16
     any tenant mix or balance in the shopping center because the
17
     Debtors are not changing the lease terms or the use of the
18
     stores.   Accordingly, if Section 365(b)(3) is applicable, the
19
20   Debtors believe that there is "adequate assurance of future

21   performance" under Section 365(b)(3) for the Lease.

22                                  IV.

23                              CONCLUSION

24       Based upon all of the foregoing, the Debtors respectfully

25   request that the Court enter an order:

26       (1)  granting the Motion in its entirety;

27       (2)  authorizing the Debtors to assume the Lease; and

28
                                    21

1    (3)  granting such other and further relief as the Court

2  deems just and proper.

3  Dated:  February 18, 2009       GREAT CIRCLE FAMILY FOODS, LLC
                                   GCFF-HUNTINGTON PARK, LLC
4                                  GCFF-ORANGE, LLC
                                   GCFF-SAN DIEGO, LLC
5                                  GCFF-CANOGA, LLC
                                   GCFF-ONTARIO, LLC
6

7                                  By:  /s/ Ron Bender
                                        Ron Bender
8                                       Krikor J. Meschefejian
                                        Levene, Neale, Bender,
9                                       Rankin & Brill L.L.P.
                                        Attorneys for Chapter 11
10                                      Debtors and Debtors in
                                        Possession
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF ROGER GLICKMAN

I, Roger Glickman, hereby declare as follows:

1.    I am the Chief Executive Officer and Chief Financial Officer of Great Circle Family Foods, LLC; GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC, Chapter 11 debtors and debtors in possession herein (collectively, the "Debtors"). I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2.    On August 22, 2007 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since the commencement of these cases, the Debtors have been operating their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.    The Debtors are in the business of owning and operating Krispy Kreme Doughnut stores. While there are six separate legal entities, the Debtors essentially operate as one consolidated business entity. There is one group of management for all six Debtors; all of the Debtors' employees are paid by one Debtor; the Debtors operate with a central banking system; and the Debtors prepare consolidated financial statements. Pursuant to an order of the Court, the Debtors' bankruptcy estates are being jointly administered.

4.    Great Circle was founded in 1998, with the purpose of developing Krispy Kreme Doughnut stores in Southern California. After initial success, the Debtors subsequently experienced

significant financial problems.   Those problems included over-
expansion; increases in store development expenses; increases in
cost of goods sold to franchisees by the franchisor; an absence
of marketing to help sales and overcome bad press; dietary
changes; wholesale business undermining retail; and an absence of
a credible coffee program and other means of extending day parts

5.   One means of resolving matters with creditors was to
sell assets, and the Debtors previously sold many of their
stores.   Much of the Debtors' prior large secured indebtedness
has been paid off, frequently with agreed upon discounts.   The
Debtors goal was to become a smaller but economically viable
company, and that goal has been achieved, as the Debtors maintain
a very steady annual sales rate of approximately $17 Million with
an operating profit.

6.   The Krispy Kreme brand is still magnetic and a top
doughnut brand in Southern California.   A successful wholesale
business exists with Stater Bros.   That business could grow
substantially.

7.   The Debtors' business remains a viable operating
business whose going concern value must be preserved while the
Debtors explore the optimal means of emerging from their Chapter
11 bankruptcy cases.   To achieve this goal, during these cases,
the Debtors assumed the leases associated with their profitable
stores and rejected the leases associated with the unprofitable
stores.   In fact, all of the Debtors' unexpired non-residential

1  real property leases have either been assumed or rejected with
2  the exception of the Lease with the Landlord.

3  8.   On or about July 6, 1999, Great Circle Family Foods,
4  L.L.C. entered into a written lease agreement with Landlord
5  whereby Landlord leased the premises located at 4790 Los Coyotes
6  Diagonal, Long Beach, CA (the "Long Beach Property").  A copy of
7  the Lease is attached hereto as Exhibit "1".

8  9.   The term of the Lease was for 10 years, with 4 options
9  to extend the lease term for 5 years per option.  With the Lease
10
   term having commenced on or about April 14, 2000, there is
11
   approximately 14 months left on the term of the Lease.  The
12
13 current monthly base rent due and payable under the Lease is
14 $5,958.70.  Under the Lease, the Debtors are also responsible for
15 payment of its share of certain real property taxes and insurance
16 expenses.

17 10.  The Debtors are current on all post-petition
18 obligations due and payable under the Lease.  According to the
19 proof of claim filed by the Landlord in these cases, the unpaid
20 pre-petition rent due and owing is approximately $4,751.58.  A
21 copy of the Landlord's proof of claim is attached hereto as
22 Exhibit "2".
23
24 11.  Pursuant to two separate Court approved stipulations,
   Landlord had agreed to extend the time within which the Debtors
25
   are required to assume or reject the Lease.  Attached hereto as
26
27 Exhibits "3" and "4" are copies of the first and second
28 stipulations with the Landlord.  Each stipulation provided for an

25

1  extension of 180 days to assume or reject the Lease, with the
2  second 180 days to expire on or about Sunday, February 22, 2009.

3      12.  Given the possibility of a rejection of the Lease if
4  the Debtors are unable to obtain a further extension of time to
5  assume or reject the Lease beyond February 22, 2009 – an
6  extremely terrible result for the Landlord especially in this
7  current poor economy, the Debtors had every expectation that the
8  Landlord would agree to a further extension of time to assume or
9  reject the Lease.  Accordingly, the Debtors made repeated
10 requests that the Landlord sign a third extension stipulation
11 which was sent to the Landlord some time prior to the expiration
12 date of the second extension stipulation.  To the Debtors'
13 surprise, on February 17, 2009, the Landlord indicated that it
14 would not agree to a further extension of time for the Debtors to
15 assume or reject the Lease.
16

17     13.  Prior to refusing to agree to a further extension, the
18 Debtors had shared with the Landlord information regarding an
19 offer that the Debtors had received to purchase the Lease from
20 these estates, which information included the purchase price.
21 Having learned of the sale possibility, including the details of
22 the proposal, the Debtors now believe that the sharing of the
23 sale information with the Landlord and possibly the Landlord's
24 desire to take advantage of this sale opportunity without the
25 Debtors' involvement might be one of the reasons that the
26 Landlord has unexpectedly refused to provide the Debtors with a
27 further extension of time to assume or reject.
28

26

14. Whether or not the Debtors are able to consummate a sale of the Lease, the store covered by the Lease is a profitable, cash-flow positive location for the Debtors. Accordingly, the Debtors are seeking to assume the Lease.

15. Through the operation of their stores covered by the already assumed leases, the Debtors continue to have a viable and profitable operating business. The Long Beach Property also constitutes a profitable location which is absolutely essential to maintaining and furthering the Debtors' success and viability

16. The Lease has significant value because the store is profitable and the Debtors are confident that the store will remain profitable through the end of the term of the Lease which is in approximately 14 months. Attached hereto as Exhibit "5" is an income statement for the Long Beach Property for the eleven month period ending November 30, 2008. This statement shows that, during the first 11 months of 2008, the Long Beach Property was at least $27,000 cash flow positive.

17. The Debtors have formulated financial projections concerning the future revenues and expenses of this store, and, based upon the Debtors' projections, the store will continue to be profitable and generate significant income for the Debtors.

18. The Lease has further significant value because the improvements, including the buildings, on the land for the Long Beach Property were built by and are owned by the Debtors. The Debtors believe that the total cost of the building of this location range between $1.5 million to $2 million. If the Lease

27

1 | is not assumed, then the Debtors will lose an extremely valuable
2 | building that does not belong to the Landlord and the value of
3 | the tenant improvements made by the Debtors.

4 |     19.   Indeed, the Debtors have received an offer to purchase
5 | the Long Beach Property and the Lease, which the Debtors intend
6 | to further explore with the proposed buyer.  However, whether or
7 | not a sale is consummated, given the profitability of the
8 | location, the Lease must be immediately assumed.

9 |
10 |     20.   I am informed and understand that, given the provisions
11 | of Section 365(d)(4) of the Bankruptcy Code and the Landlord's
12 | indication that it will not consent to a further extension of
13 | time to assume or reject, unless the Debtors assume the Lease at
14 | this time, the Lease will be deemed rejected, which would be
15 | devastating to these estates given the significant value of the
16 | Lease.

17 |     21.   Based on all of the foregoing, the Debtors have
18 | determined that assumption of the Lease is absolutely necessary
19 | and appropriate under the circumstances and will benefit the
20 | Debtors' estates.

21 |     22.   The Debtors are able to provide "adequate assurance of
22 | future performance" for the Lease.  The Debtors are current on
23 | all post-petition obligations under the Lease.  According to the
24 | Landlord's proof of claim, the Debtors' pre-petition defaults are
25 | relatively minor and consist only of unpaid rents of less than
26 | one month prior to the Petition Date, which is approximately
27 | $4,751.58.  This default will be promptly cured, and the Debtors
28 |

1  are capable of future performance under the Lease.

2      23.   The Debtors currently have approximately $1.7 million
3  of cash, which is more than sufficient to cure the unpaid pre-
4  petition rents of approximately $4,751.58.   The Debtors are not
5  aware of any pecuniary loss suffered by the Landlord from the
6  unpaid pre-petition rents.   The Debtors' available cash also
7  provide a cushion for payment of future rents, and the Debtors'
8  business operations are and will remain profitable.   The Debtors
9  are current on all post-petition rents under the Lease, and the
10 store covered by the Lease is profitable.   The Debtors have
11 performed financial projections of the revenues generated at the
12 store for the Lease, and the Debtors have determined that the
13 store will generate sufficient revenues to enable the Debtors to
14 continue to perform all obligations under the Lease.
15

16     24.   The Debtors are able to pay rent and perform under the
17 Lease.   The Debtors believe that any percentage rent due under
18 the Lease will not decline because based upon the Debtors'
19 projections, the stores will continue to be profitable and will
20 generate revenues consistent with past performance.   There is
21 also no issue as to whether the provisions of the Lease will be
22 honored because the Debtors are not changing any lease terms in
23 their assumption of the Lease.   Lastly, the assumption of the
24 Lease will not disrupt any tenant mix or balance in the shopping
25 center because the Debtors are not changing the lease terms or
26 the use of the store.
27

28

1   I declare under penalty of perjury that the foregoing is

2   true and correct.

3       Executed this 18th day of February 2009 at Los Angeles,

4   California.

5

6                                   ROGER GLICKMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30