1  RON BENDER (SBN 143364)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Blvd., Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   Email: rb@lnbrb.com; kjm@lnbrb.com
5
6  Attorneys for Chapter 11
   Debtors and Debtors in Possession
7
8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                    SANTA ANA DIVISION

10 In re:                        ) Case No. 8:07-bk-12600-ES
                                 )
11 GREAT CIRCLE FAMILY FOODS,    ) CHAPTER 11
   LLC, et al.,                  )
12                               ) Jointly Administered with
                 Debtors.        ) Case Nos.:
13 _____)
                                 ) Case No. 8:07-bk-12603-ES
14 ☒  Affects All Debtors        ) Case No. 8:07-bk-12605-ES
                                 ) Case No. 8:07-bk-12606-ES
15 ☐  Affects Great Circle       ) Case No. 8:07-bk-12602-ES
   Family Foods, LLC only        ) Case No. 8:07-bk-12604-ES
16                               )
   ☐  Affects GCFF-Huntington    )
17 Park, LLC only                ) ORDER CONFIRMING DEBTORS' SECOND
                                 ) AMENDED  PLAN  OF  REORGANIZATION,
18 ☐  Affects GCFF-Orange, LLC   ) AS MODIFIED
   only                          )
19                               )
   ☐  Affects GCFF-San Diego,    ) Plan Confirmation Hearing:
20 LLC only                      ) Date:     April 30, 2009
                                 ) Time:     10:30 a.m.
21 ☐  Affects GCFF-Canoga, LLC   ) Place:    Courtroom 5A
   only                          )           411 West Fourth St.
22                               )           Santa Ana, CA
                                 )
23 ☐  Affects GCFF-Ontario, LLC  )
   only                          )
24                               )
                                 )
25 _____)

1

A hearing was held on April 30, 2009, at 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge for the Central District of California, in Courtroom "5A" located at 411 West Fourth Street, Santa Ana, California, for the Court to consider the confirmation of the Second Amended Plan of Reorganization, as modified (the "Plan") which was proposed by Great Circle Family Foods, LLC; GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC, the Debtors and Debtors in Possession in the above-referenced Chapter 11 bankruptcy cases (collectively, the "Debtors"). Appearances were made at the Plan confirmation hearing as set forth on the record of the Court.

The Court, having considered the Plan, the voting on the Plan, the memorandum filed by the Debtors in support of Plan confirmation, the statements, arguments and representations made at the Plan confirmation hearing, all other evidence presented to the Court and the entire record of these cases,

IT IS HEREBY FOUND AND DETERMINED THAT:

A. Core Proceeding (28 U.S.C. §157(h)(2)). Confirmation of the Plan is a core proceeding under 28 U.S.C. §157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.  <u>Notice</u>.   The Disclosure Statement order, the Disclosure Statement, the Plan and ballots for accepting or rejecting the Plan were duly and timely transmitted and served in accordance with the Court's orders and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Central District of California.  Adequate and sufficient notice of the Plan confirmation hearing and the other deadlines and hearing dates was provided, and no further notice is required.

C.  <u>Solicitation</u>.  The solicitation of votes for acceptance or rejection of the Plan has complied with Bankruptcy Code §§1125 and 1126, Federal Rules of Bankruptcy Procedure 3017 and 3018, and the Disclosure Statement order, all other applicable provisions of the Bankruptcy Code, and all of the rules, laws, regulations and the soliciting procedures as set forth in the Disclosure Statement order.  Based upon the record before the Court, the Debtors have acted in good faith in the solicitation of votes and are entitled to the protections afforded by Bankruptcy Code §1125(e).

D.  <u>Distribution</u>.  All procedures used to distribute the solicitation materials to the applicable holders of claims and interests and to tabulate the ballots were fair and conducted in substantial compliance with the Disclosure Statement order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and

the Local Bankruptcy Rules for the Central District of California and all other rules, laws and regulations.

E.    Burden of Proof.    The Debtors, as the proponents of the Plan, have met their burden of proving all of the elements of §1129(a) and (b) of the Bankruptcy Code for confirmation of the Plan.

F.    Compliance with Bankruptcy Code (§1129(a)(1)).    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying §1129(a)(1) of the Bankruptcy Code.

G.    Classification of Claims (§§1122-1123(a)(1)).    The Plan designates five classes of claims and one class of interests. The claims and interests placed in each class are substantially similar to other claims or interests, as the case may be, in each such class, and such classification is therefore consistent with §1122 of the Bankruptcy Code.    Valid business and legal reasons exist for the various classes of claims and interests created under the Plan, and such classes do not unfairly discriminate between holders of claims or interests.    Thus, the Plan satisfies §§1122 and 1123(a)(1).

H.    Specified Treatment of Impaired Classes (§1123(a)(3)).    The Plan specifies that classes 1, 2, 4 and 5 are impaired and that class 3 is not impaired.    The Plan specifies the treatment of those classes thereby satisfying §1123(a)(3) of the Bankruptcy Code.

I.    No Discrimination (§1123(a)(4)). The Plan provides for the same treatment for each claim or interest in each respective class unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest, thereby satisfying Section 1123(a)(4) of the Bankruptcy Code.

J.    Implementation of the Plan (§1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying §1123(a)(5) of the Bankruptcy Code. Among other things, the Plan provides that all property of the Debtors will vest in the Reorganized Debtor on and as of the Effective Date free and clear of all liens, claims, encumbrances and interests, except as otherwise expressly provided in the Plan or this Order, including, but not limited to, the security interests and other rights granted to class 1 and 2 claim holders.

K.    Disclosure of Officers and Directors (§1123(a)(7)). The provisions of the Plan regarding the disclosure of officers and directors of the Debtors are consistent with the interests of creditors and equity security holders and with public policy, thereby satisfying §1123(a)(7) of the Bankruptcy Code.

L.    Additional Plan Provisions (11 USC §1123(b)). In accordance with Section 1123(b)(6) of the Bankruptcy Code, the Plan does not include any provision inconsistent with the applicable provisions of the Bankruptcy Code. The provisions of the Plan are appropriate and consistent with the applicable

provisions of the Bankruptcy Code including, without limitation, provisions for (a) certain classes of claims to be unimpaired; (b) distribution to creditors; (c) the release and exculpation of various persons, and permanent injunctions prohibiting certain actions against the Debtor, (d) the rejection or assumption of certain executory contracts and expired leases, and (e) the retention of and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived or released under the Plan.

M.    Federal Rule of Bankruptcy Procedure 3016(a).   The Plan is dated and identifies the entities submitting it, thereby satisfying Federal Rule of Bankruptcy Procedure 3016(a).

N.    The Debtor's Compliance With The Bankruptcy Code (§1129(a)(2)).   The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code.  Specifically:

i.    The Debtors are proper debtors under 11 USC §109 and filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

ii.   The Court has jurisdiction over these chapter 11 cases pursuant to 11 U.S.C. §1334.

iii.  Venue of these cases is proper in this district pursuant to 28 U.S.C. §1408.

iv.   The Debtors are the proper proponents of the Plan pursuant to Section 1121(a) of the Bankruptcy Code.

v.   The Debtors have acted in accordance with all orders of the Court entered during these chapter 11 cases.

vi.   The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Northern District of California in transmitting the Disclosure Statement, the Plan and ballots for accepting or rejecting the Plan and in soliciting and tabulating votes on the Plan.

O.   Plan Proposed in Good Faith (§1129(a)(3)).   The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying §1129(a)(3) of the Bankruptcy Code.

P.   Payments for Services or Costs and Expenses (§1129(a)(4)). All payments made or to be made by the Debtors, for services or for costs and expenses in, or in connection with the Debtors' chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court, thereby satisfying §1129(a)(4).

Q.   Directors, Officers and Insider (§1129(a)(5)).   The Debtors have complied with Section 1129(a)(5) of the Bankruptcy Code. Specifically:

i.  The Debtors have disclosed in the Plan and the Disclosure Statement the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Reorganized Debtor and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

ii.  To the extent known at this time, the Debtors have disclosed the identity of any insider who will be employed or retained by the Reorganized Debtor and the nature of such person's compensation, to the extent known.

R.  <u>No Rate Changes (§1129(a)(6))</u>.  The Plan does not provide for any rate changes over which any governmental regulatory commission has jurisdiction.

S.  <u>Best Interests of Creditors (§1129(a)(7))</u>.  The Plan satisfies the best interests of creditors test set forth in Section 1129(a)(7) of the Bankruptcy Code.

T.  <u>Acceptance by All Classes of Claims (§1129(a)(8))</u>.  Each class of claims has accepted the Plan or is not impaired under the Plan.  While the sole class of interests (class 6) is deemed to have rejected the Plan, the Plan is nevertheless confirmable over the rejection of class 6 pursuant to §1129(b)(1) and (b)(2)(C) because the Plan does not discriminate unfairly, and is fair and equitable, with respect to class 6.  No holder of any interest that is junior to the interests of class 6 will

8

receive or retain under the Plan any property on account of such junior interest.

U.    Treatment of Administrative and Priority Claims (§1129(a)(9)).  The treatment of Administrative Claims, Priority Claims (if any), Bankruptcy Court and U.S. Quarterly Trustee Fees under the Plan satisfies the requirements of Sections 1129(a)(9)(A) of the Bankruptcy Code.

V.    Acceptance by Impaired Classes (§1129(a)(10)).  Classes 1, 2 and 4 are each classes of claims that are impaired under the Plan and have accepted the Plan, and at least one such impaired class has accepted the Plan without including any acceptance of the Plan by any insider of the Debtors holding a claim in such class, thereby satisfying Section 1129(a)(10) of the Bankruptcy Code.

W.    Feasibility (§1129(a)(11)).  Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor.

X.    Payment of Fees (§1129(a)(12)).  Any fee, charge or amount required to be paid before confirmation under 28 U.S.C. §1930 or by the Plan has been paid.

Y.    Continuation of Retiree Benefits (§1129(a)(13)).  Because the Plan does not modify any retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, Section 1129(a)(13) of the Bankruptcy Code is inapplicable.

Z.    Principal Purpose of the Plan (§1129(d)).    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on such grounds.

AA.    Good Faith Solicitation (§1125(e)).    Solicitation of acceptances of the Plan has been in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

BB.    No Other Plan (§1129(c)).    The Plan is the only plan of reorganization confirmed by this Court in the Debtors' Chapter 11 Cases.

CC.    Plan Modifications (§1127(b)).    The modifications to the Plan proposed by the Debtors are authorized by §1127(b) because such modifications were made before confirmation of the Plan and the Plan as modified satisfies the requirements of §§1122 and 1123 of the Bankruptcy Code.    No additional disclosure to creditors is required of such modifications because the Debtors to not intend to solicit votes from previously dissenting creditors and the modifications do not materially and adversely impacts parties who previously voted for the Plan.

NOW THEREFORE, It is hereby ORDERED, ADJUDGED and DECREED that:

1.    Plan Confirmation.    The Plan, a copy of which is attached hereto as Exhibit "A", is hereby confirmed and all of the terms of the Plan are herein incorporated by reference.    The Effective Date of the Plan shall be the first business day which is at

least eleven days following the date of entry of this Order when and provided that all of the following conditions to the effectiveness of the Plan have been satisfied or waived by the Debtors: (a) there shall not be any stay in effect with respect to this Order; (b) this Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instruments and agreements.

2.   <u>Objections</u>.   To the extent that any pleading filed by any party constitutes an objection to confirmation of the Plan and has not been withdrawn, waived or settled, such objection is hereby overruled in its entirety.

3.   <u>No Deviation of Disbursement</u>.   All dividends (cash and stock) under the Plan to be disbursed to holders of allowed claims shall be made in accordance with the provisions of §1111 of the Bankruptcy Code, and any deviation therefrom shall be made only after motion and approval of this Court.

4.   <u>Conveyance of Assets to the Reorganized Debtor, Substantive Consolidation, Issuance of Equity Interests and Management of the Reorganized Debtor</u>.   Upon the Effective Date, all of the property of the Debtors and the Debtors-in-Possession shall vest in the Reorganized Debtor free and clear of all liens, claims, encumbrances, and interests, except as expressly provided for in the Plan or in this Order.   On the Effective Date, all of the

Debtors will be deemed to be merged into and substantively consolidated with Great Circle Family Foods, LLC, which shall thereafter be the "Reorganized Debtor". All of the other Debtors shall cease to exist as legal entities on the Effective Date without the need for any of them to take any further action. The Reorganized Debtor will continue to be a limited liability company organized under the laws of the State of California. On the Effective Date, all of the existing equity interests in all of the Debtors (including all membership interests, partnership interests, common stock, preferred stock, stock options, warrants, etc.) shall be deemed cancelled, terminated and extinguished and of no further force or effect and will no longer constitute an equity interest in the Debtors without the need for either the Debtors or the interest holders to take any further action. Interest holders will not receive any distribution or retain any property under the Plan on account of their equity interests in one or more of the Debtors. In exchange for a contribution of $150,000 of new cash and various personal guarantees which are required to be provided to GE and to KKD to effectuate the terms of the Plan, Richard Reinis shall receive 50% of the equity interests in the Reorganized Debtor. The other 50% of the equity interests in the Reorganized Debtor will be distributed to the holders of class 4 allowed claims (general unsecured creditors) on a pro rata basis based upon the amount of their class 4 allowed

claims.   This issuance of equity interests to class 4 claim holders is exempt from section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security pursuant to Section 1145(a)(1)(A) of the Bankruptcy Code as the issuance of the equity interests to class 4 claim holders will be in exchange for their claims against the Debtors which are not otherwise paid under the Plan.   The Management Committee of the Reorganized Debtor will consist of five members, four of whom will be selected by Mr. Reinis, and one of whom will be selected by the Liquidating Trust.   Other than day-to-day operational decisions (which will be made by officers or managers of the Reorganized Debtor selected by the Management Committee), all strategic decisions for the Reorganized Debtor will be made by a majority vote of the Management Committee.

5.   Treatment of Allowed Claims and Distributions to Claim holders.   All allowed claims against the Debtors shall be treated in the manner set forth in the Plan.   The Reorganized Debtor shall serve as the disbursing agent for purposes of making all distributions required to be made under the Plan. The Reorganized Debtor will not charge any disbursing agent fee for making such distributions.

6.   Agreements with Franchisor.   On the Effective Date, the Debtors shall enter into a new Operating Agreement (the "New Operating Agreement") with Krispy Kreme Doughnut Corporation

1  ("KKD") and/or its affiliate Southern Doughnuts, LLC.  Also on

2  the Effective Date, the Reorganized Debtor shall enter into the

3  Three Managed Stores Agreement (as defined in the Disclosure

4  Statement) with KKD and/or Southern Doughnuts, LLC.   KKD's

5  assignment to the Reorganized Debtor of each unexpired real

6  property lease for each location of the Three Managed Stores is

7  hereby approved and shall be effective as of the date the

8  Reorganized Debtor pays in full the Purchase Price, as that term

9  is defined in the Three Managed Stores Agreement.  As a result

10 of this Order, KKD shall not be liable for and shall be released

11 from any further obligations to the lessors under the terms of

12 the ground leases of the Three Managed Stores arising after the

13 date of the assignment of the ground leases and transfer of the

14 Three Managed Stores to the Reorganized Debtor.  Following the

15 Closing Date (as that term is defined in the Three Managed

16 Stores Agreement), the Reorganized Debtor shall be the only

17 person liable to pay rent and all other amounts due to those

18 lessors, and the Reorganized Debtor shall make all such payments

19 when due and timely perform all other obligations of the lessees

20 under those ground leases.  KKD's assignment to the Reorganized

21 Debtor of the agreements, licenses for software and/or hardware

22 used exclusively in the day-to-day operations of the Three

23 Managed Stores, leases, transferrable permits and licenses

24 issued by any governmental authority and contract rights, which

25 relate to the Three Managed Stores, is hereby approved and shall

be effective as of the date the Reorganized Debtor pays in full the Purchase Price, as that term is defined in the Three Managed Stores Agreement.    The Franchise Agreements listed in Exhibit "8" to the Disclosure Statement and in Exhibit "B" to this Order are, with the express written consent of KKD, assumed by the franchisees identified in each such agreement and assigned to the Reorganized Debtor.    The Reorganized Debtor shall cure all defaults and payment arrearages under those Franchise Agreements pursuant to the terms of the Cure Note, as that term is defined in the Disclosure Statement.    The Reorganized Debtor shall make all payments and perform on all other obligations to KKD under the terms of the Cure Note (including payment of the 20 day amount due under the Franchise Agreements in the amount of $35,665.00 or such other amount agreed upon by the parties), the Three Managed Stores Agreement, the new Operating Agreement, the assumed Franchise Agreements and all other agreements with KKD.

7.    Binding Effect.    The provisions of the Plan and this Order are hereby binding on each claim and interest holder of the Debtors and any other party in interest in the Debtors' Chapter 11 cases, whether or not the claim or interest of such party is impaired under the Plan and whether or not such party has filed, or is deemed to have filed, a proof of claim or interest or has accepted, or is deemed to have accepted, or rejected the Plan.

8.    Assumption and Rejection of Unexpired Leases and Executory Contracts.    As of the Effective Date, without further action by

the Debtors or this Court, all unexpired leases and executory contracts of the Debtors which had previously been assumed by the Debtors, and all unexpired leases and executory contracts of the Debtors listed on Exhibit "B" to this Order (collectively, the "Assumed Contracts"), shall be deemed assumed by the Reorganized Debtor and made an unexpired lease and executory contract of the Reorganized Debtor.  Also, without further action by the Debtors or this Court, all unexpired leases and executory contracts of the Debtors which are not Assumed Contracts shall be deemed rejected on the Effective Date.  The bar date for filing a proof of claim based on a claim arising from the rejection of an unexpired lease or executory contract which is rejected on the Effective Date will be thirty days after the Effective Date.

9.  <u>Exculpations and Releases</u>.  To the maximum extent permitted by law, neither the Debtors, the Reorganized Debtor, nor the Creditors' Committee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall have or incur liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan,

16

or the consummation and implementation of the Plan and the transactions contemplated therein.

10. <u>Discharge</u>. Except as otherwise provided in the Plan or in this Order, all property distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all claims of any nature whatsoever against the Debtors, and the Reorganized Debtor and/or any of their assets, and upon the Effective Date, the Debtors shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all debts except as provided in the Plan. This Order is a judicial determination of discharge of all liabilities of the Debtors except as provided in the Plan.

11. <u>Injunction</u>. This Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan. Except as provided in the Plan or this Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtor, or their property on account of any such discharged

claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.

12. <u>Controlling Effect</u>.  To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any claim, any interest, or any other matter, the terms of the Plan shall control.  To the extent that the terms of this Order are inconsistent with the terms of the Plan, by reason of, among other things, any modifications made to the Plan resulting from this Order, the terms of this Order shall control.

13. <u>The Liquidating Trust</u>.  On the Effective Date, the Reorganized Debtor shall create the Liquidating Trust for the benefit of holders of class 4 allowed claims.  A copy of the Liquidation Trust Agreement is attached hereto as Exhibit "C". The details pertaining to the Liquidation Trust are set forth in the Plan and the Liquidation Trust Agreement.  To the extent

there are any inconsistencies between the Plan and the Liquidating Trust, the terms of the Plan shall prevail.  All property and cash delivered by the Reorganized Debtor to the Liquidating Trust, together with any recoveries obtained from the pursuit of avoidance causes of action, shall collectively be defined as the "Liquidating Trust Funds".  The Creditors' Committee shall designate the Liquidating Trustee to be appointed for the purpose of administering the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement.

14. <u>Retained Jurisdiction</u>.  This Court shall retain all authority and jurisdiction as provided under the Bankruptcy Code and other applicable law and the Plan to enforce the provisions, purposes, and intent of the Plan or any modification thereof, including, without limitation, for the purposes set forth in the Plan.

15. <u>Recordable Form</u>.  This Order is hereby declared to be in recordable form, and this Order or a certified copy thereof shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or supporting documents.

16. <u>Notice of Confirmation Order</u>.  Pursuant to Federal Rule of Bankruptcy Procedure 2002(f), the Debtors shall mail to all parties in interest in these chapter 11 cases notice of entry of this Order within fifteen (15) days of the entry hereof.

17.   <u>Confirmation Hearing, Findings and Conclusions</u>.   Any of the Court's subsidiary findings and conclusions dictated into the record at the Plan confirmation hearing are incorporated herein by reference.

18.   <u>Post-Confirmation Modifications to the Plan</u>.   The Debtors may also seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated and (2) this Court authorizes the proposed modifications after notice and a hearing.

19.   <u>Final Decree and Post-Confirmation Status Conference</u>. Pursuant to Section 1106(a)(7) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3022, the Debtors shall file with the Clerk of this Court, and serve upon all interested parties, a motion for the entry of a Final Decree to close these Chapter 11 cases.   A post-confirmation status conference shall be held on October 22, 2009, at 10:30 a.m. unless a Final Decree is entered before then.   The Reorganized Debtors shall file a post-confirmation status report by October 13, 2009.   The Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6).

###

DATED: June 25, 2009

_____
United States Bankruptcy Judge

20

# EXHIBIT "A"

RON BENDER (SBN 143364)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:      rb@lnbrb.com

Attorneys for Chapter 11
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re: | ) Case No. 8:07-bk-12600-ES |
| | ) |
| GREAT CIRCLE FAMILY FOODS, | ) CHAPTER 11 |
| LLC, et al., | ) |
| | ) Jointly Administered with |
| Debtors. | ) Case Nos.: |
| _____ | ) |
| | ) Case No. 8:07-bk-12603-ES |
| ☒   Affects All Debtors | ) Case No. 8:07-bk-12605-ES |
| | ) Case No. 8:07-bk-12606-ES |
| ☐   Affects Great Circle | ) Case No. 8:07-bk-12602-ES |
| Family Foods, LLC only | ) Case No. 8:07-bk-12604-ES |
| | ) |
| ☐   Affects GCFF-Huntington | ) |
| Park, LLC only | ) DEBTORS' SECOND AMENDED PLAN OF |
| | ) REORGANIZATION (DATED FEBRUARY |
| ☐   Affects GCFF-Orange, LLC | ) 18, 2009), AS MODIFIED |
| only | ) |
| | ) |
| ☐   Affects GCFF-San Diego, | ) Plan Confirmation Hearing: |
| LLC only | ) Date:    April 30, 2009 |
| | ) Time:    10:30 a.m. |
| ☐   Affects GCFF-Canoga, LLC | ) Place:   Courtroom 5A |
| only | ) 411 West Fourth St. |
| | ) Santa Ana, CA |
| ☐   Affects GCFF-Ontario, LLC | ) |
| only | ) |
| | ) |
| | ) |
| _____ | ) |

1

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................. 2

II.  PLAN SUMMARY ............................................. 3

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 8

    A.   WHAT CREDITORS AND INTEREST HOLDERS WILL RECEIVE
         UNDER THIS PLAN ..................................... 8

    B.   UNCLASSIFIED CLAIMS ................................. 8

         1. Administrative Expenses ......................... 9

         2. Priority Tax Claims ............................ 13

    C.   CLASSIFIED CLAIMS AND INTERESTS ................... 16

         1. Classes of Secured Claims ...................... 16

         2. Classes of Priority Unsecured Claims ........... 30

         3. Class of General Unsecured Claims .............. 31

         4. Class of Interest Holders ...................... 35

    D.   MEANS OF EFFECTUATING THIS PLAN AND
         IMPLEMENTATION OF THIS PLAN ....................... 36

         1.  Funding for this Plan ......................... 36

         2.  Composition of the Reorganized Debtor and
             Substantive Consolidation of the Debtors ...... 37

         3.  Post-Confirmation Management .................. 37

         4.  Disbursing Agent .............................. 39

         5.  Objections to Claims .......................... 39

         6.  Avoidance Actions ............................. 41

         7.  Creation and Purpose of the Liquidating Trust .. 42

i

8.  Appointment Of the Liquidating Trustees........ 43

9.  Transfer of Property, Claims, Rights and Causes
    of Action to the Liquidating Trust............ 44

10. Employment of Officers, Employees and
    Professionals................................. 45

11. Distribution of Liquidating Trust Funds ........ 46

12. Transferability of Individual Trust Interests .. 46

13. Sale or Transfer of Entire Trust Interests ..... 47

14. Dilutive Act of Interests in the Reorganized
    Debtor ....................................... 48

15. Profit or Excess Capital Distributions By the
    Reorganized Debtor ........................... 49

16. Termination of Liquidating Trust ............... 49

17. Exemption from Transfer Taxes ................. 49

18. Employment of Professionals By the Reorganized
    Debtor and Payment of Professional Fees and
    Expenses Incurred after the Effective Date ..... 50

19. Distributions to be Made Pursuant to
    This Plan .................................... 50

20. Exculpations and Releases ..................... 51

21. Injunctions .................................. 52

22. Executory Contracts and Unexpired Leases ....... 53

23. Changes in Rates Subject to Regulatory
    Commission Approval .......................... 54

24. Remedy of Taxing Authority Following Plan
    Default ...................................... 54

25. Retention of Jurisdiction ..................... 55

ii

IV.  EFFECT OF CONFIRMATION OF THIS PLAN ..................... 58

     A.   DISCHARGE. ...................................... 58

     B.   MODIFICATION OF THIS PLAN. ...................... 58

     C.   POST-CONFIRMATION STATUS REPORTS. ............... 59

     D.   POST-CONFIRMATION CONVERSION/DISMISSAL. ......... 59

     E.   FINAL DECREE. ................................... 60

# I. **INTRODUCTION**

Great Circle Family Foods, LLC; GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC, the Debtors and Debtors in Possession in the above-referenced Chapter 11 bankruptcy cases (collectively, the "Debtors"), are the Debtors in pending Chapter 11 bankruptcy cases.  On August 22, 2007 (the "Petition Date"), the Debtors commenced these bankruptcy cases by filing Voluntary Petitions under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code").  An Official Committee of Unsecured Creditors (the "Committee") has been formed to represent the interests of the unsecured creditors.  This document is the Debtors' Second Amended Plan of Reorganization ("Plan") that is being proposed by the Debtors.

Chapter 11 allows the Debtors, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization.  This Plan is a plan of reorganization which has been proposed by the Debtors.  The effective date of this Plan (the "Effective Date") will be the first business day which is at least eleven days following the date of entry of the Court order confirming this Plan (the "Plan Confirmation Order") when and provided that all of the following conditions to the effectiveness of this Plan have been satisfied or waived by the Debtors: (a) there shall not be any stay in

2

effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan shall have been executed and delivered by all parties to such documents, instruments and agreements. The Debtors following the Effective Date shall be referred to as the "Reorganized Debtor". Any defined terms which are not defined in this Plan shall have the same definitions as such terms have in the Debtors' Disclosure Statement which described this Plan.

## II. **PLAN SUMMARY**

On the Plan Effective Date, all of the Debtors will be deemed to be merged into and substantively consolidated with Great Circle Family Foods, LLC, which shall be referred to herein as the Reorganized Debtor. All of the other Debtors shall cease to exist as legal entities on the Plan Effective Date without the need for any of them to take any further action. On the Plan Effective Date, all of the existing equity interests in all of the Debtors shall be deemed cancelled and extinguished and of no further force or effect. Equity holders in the Debtors will not receive any distribution or retain any property on account of such equity interests.

In exchange for a contribution of $150,000 of new cash (the "New Cash Contribution" - all of which will be paid to the

holders of class 4 allowed claims) and various personal guarantees which are required to be provided to GE and to KKD to effectuate the terms of this Plan, Richard Reinis (the "New Investor") shall receive 50% of the equity interests in the Reorganized Debtor.   Mr. Reinis was a former officer of the Debtors and, directly or indirectly, presently owns or controls approximately 50% of the equity interests of the Debtors.   Mr. Reinis has not served as an officer of the Debtors during the pendency of their bankruptcy cases.

The Debtors' primary secured creditor (GE) is referred to below as the class 1 claim holder, whose class 1 claim shall be treated in the manner described below.   The GE debt is on account of pre-petition funding and financing provided by GE to the Debtors to help fund the Debtors' growth and acquisition of stores.   The treatment of GE's class 1 claim is designed to economically mirror the terms of the Debtors' pre-petition agreement with GE, taking into account the changed circumstances of these cases and extensive discussions between the Debtors and GE.

The Debtors' other primary secured creditor (October Acquisitions, LLC - "OA")) is referred to below as the class 2 claim holder.   The OA debt (which is in the estimated amount of approximately $5,625,000) is on account of pre-petition funding and financing provided by Bank of America to the Debtors to help

4

fund the Debtors' growth and acquisition of stores, which outstanding debt was ultimately assigned to OA in connection with a pre-petition debt restructuring.  OA is owned directly or indirectly by Richard Reinis and, according to the Committee, is therefore an insider of the Debtors.  On the Petition Date, OA held a first priority perfected lien against the Debtors' accounts receivable, which were in the amount of $210,127.98. Because of a change in the Debtors' business practice, the Debtors no longer have any substantial accounts receivable, which give rise to an allowed super priority administrative claim in favor of OA as a result of the post-petition diminution in the value of OA's collateral.  Pursuant to the provisions of the Bankruptcy Code, OA is entitled to be paid in cash on the Effective Date for the full amount of its allowed super priority administrative claim.  Subject to the confirmation of this Plan, OA has agreed (i) to permit the Reorganized Debtor to repay the full amount of OA's allowed secured and super priority administrative claim of $210,127.98 over time to assist the Reorganized Debtor with its cash flow, and (ii) to voluntarily waive the balance of its class 2 claim (of more than $5,400,000) in order to increase the distributions and value to be received by other general unsecured creditors.

Class 3 claim holders are comprised of any non-tax priority claims.  The Debtors believe that if there are any remaining

5

class 3 claims, they would be on account of still unpaid pre-petition employee priority claims and would not be substantial in amount.

Class 4 claim holders (general unsecured creditors) will receive on the Plan Effective Date a cash payment in the amount of $400,000 ($150,000 of which will be funded from the New Cash Contribution described above, with the other $250,000 to be funded from the Debtors' cash on hand) plus 50% of the stock in the Reorganized Debtor, which will be subject to the terms described below. This issuance of equity interests to class 4 claim holders would be exempt from section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security pursuant to Section 1145(a)(1)(A) of the Bankruptcy Code as the issuance of the equity interests to class 4 claim holders will be in exchange for their claims against the Debtors which are not otherwise paid under this Plan. Mr. Reinis, directly or indirectly, presently owns or controls approximately 32%-44% of the expected total class 4 allowed claims, which class 4 allowed claims will be treated under this Plan in the same manner as all other class 4 allowed claims.

Class 5 claim holders are comprised of any other secured claims which exist other than those contained in any other class. The Debtors have not included any such other secured

claims in their bankruptcy schedules, but certain alleged creditors have filed proofs of claim contending to have secured claims. The Debtors have objected, or will be objecting, to all such secured claims. To the extent the Court overrules any such objections, the holders of class 5 allowed claims will be treated in a manner consistent with the provisions of Section 1129(b)(2)(A)(i) of the Bankruptcy Code (i.e., the holders of such claims will retain their liens securing such claims and receive payments from the Reorganized Debtor over time with interest equal to the present value of such claims existing on the Plan Effective Date).

The following chart lists all potential class 5 claims:

| Claimant | Claim No. | Debtor | Claim Amount |
|---|---|---|---|
| County of San Bernardino | 76 | Great Circle Family Foods | $5,400.17 (objection to be filed) |
| Franchise Tax Board | 13 | Orange | $7,605.02 (additional $7,055.36 asserted as a priority claim, and $1,738.16 asserted as a general unsecured claim) (objection to be filed) |
| Iron Mountain Information Management Services | 21 | Great Circle Family Foods | $1,748.00 (additional $1,147.00 asserted as a general unsecured claim) (objection to be filed) |
| Los Angeles County Tax Collector | 3 | Great Circle Family Foods | $192,071.60 (additional $42,485.07 asserted as a general unsecured claim) |

7

| | | | (also identified in the Debtors' priority tax claims chart below)<br>(objection to be filed) |
|---|---|---|---|
| Riverside County Treasurer | 28 | Great Circle Family Foods | $25,322.50<br>(objection to be filed) |
| Riverside County Treasurer | 30 | Great Circle Family Foods | $25,322.50<br>(duplicate of Riverside County Treasurer's Claim No. 28)<br>(objection to be filed) |

Class 6 interest holders will not receive any money or other property on account of their class 6 interests, and all interests will be cancelled on the Plan Effective Date.

### III. <u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>

**A.   What Creditors and Interest Holders Will Receive Under this Plan**

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority.  This Plan states whether each class of claims or interests is impaired or unimpaired.  This Plan provides the treatment each class will receive.

**B.   Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired

and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have <u>not</u> placed the following claims in a class.

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 cases which are allowed under Bankruptcy Code Section 507(a)(2).  The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtors' § 507(a)(2) administrative claims and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB"), bankruptcy counsel to the Debtors | $300,000 (est.), which would be in addition to the $381,124.60 of post-petition fees and expenses paid to LNBRB by the Debtors through October 31, 2008 | Paid in full  on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| RSM McGladrey, Inc., accountants to the Debtors | $20,000 (est.) | Paid in full on the later of the Effective Date |

| | | and the date the Court enters an order allowing such fees and expenses |
|---|---|---|
| Silver & Freedman ("S&F"), special counsel to the Debtors | $0 beyond the $17,568.72 of post-petition fees and expenses paid to S&F by the Debtors through October 31, 2008 | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Steptoe & Johnson LLP ("S&J"), special counsel to the Debtors | $75,000 (est.) beyond the $76,789.49 of post-petition fees and expenses paid to S&J by the Debtors through October 31, 2008 | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Reed Smith LLP, special real estate counsel to the Debtors with respect to the Debtors' sale of the Crenshaw store | $5,000 beyond the $16,290.25 of post-petition fees and expenses paid to Reed Smith LLP by the Debtors through October 31, 2008 | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| California Commercial Partners, Inc., as the Debtors' exclusive listing broker for the sale and assignment of the lease for the Long Beach store | Unknown | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Weiland, Golden, Smiley, Wang, Ekvall & Strok, LLP ("WGSWE&S"), bankruptcy counsel to the Committee | $75,000 (est.), which would be in addition to the $84,785.36 of post-petition fees and expenses | Paid in full on the later of the Effective Date and the date the Court enters an order allowing |

|  | paid to WGSWE&S by the Debtors through May 31, 2008. | such fees and expenses |
|---|---|---|
| Post-Petition Non-Professional Fee Administrative Claims | $200,000 (approx.) of post-petition accounts payable accrued in the ordinary course of the Debtors' business. | Paid in full out of the Reorganized Debtors' funds in the ordinary course of the Reorganized Debtors' business or following the entry of an order of the Court if a dispute exists between the Reorganized Debtor and the administrative claim holder |
| **TOTAL** | $675,000 est. comprised of $475,000 of professional fees and expenses and $200,000 of post-petition outstanding accounts payable | Paid in the manner described above |

<u>Court Approval of Fees Required:</u>

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses except fees owing to the Clerk of the Bankruptcy Court and fees owing to the OUST, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will

11

be required to be paid under this Plan. The administrative claim amounts set forth above simply represent the Debtors' best estimates as to the amount of allowed administrative claims in these cases. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtors are required to engage in any substantial litigation regarding the confirmation of this Plan and/or objecting to claims. To the extent the Debtors are required to engage in any such substantial litigation, the Debtors' professionals, or certain of them, are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in these cases are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order as such fees and expenses are just estimates provided at the time of the preparation of the Disclosure Statement.

To the extent allowed administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtors out of the Debtors' funds. To the extent allowed administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor out of its operating funds.

### 2. Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date. All allowed Section 507(a)(8) priority tax claims will be paid the full amount of such claims over a period of thirteen calendar quarters (with the payments to be made by June 30, 2009; September 30, 2009; December 31, 2009; March 31, 2010; June 30, 2010; September 30, 2010; December 31, 2010; March 31, 2011; June 30, 2011; September 30, 2011; December 31, 2011; March 31, 2012; and June 30, 2012) in equal quarterly payments with interest to accrue from the Plan Effective Date at the rate of 5% per annum. The chart below indicates all priority tax claims which were either

13

scheduled by the Debtors or asserted by the taxing agencies in

filed proofs of claim.  Any claims by taxing agencies not listed

below may be found on the claims chart attached as Exhibit "1"

to the Disclosure Statement.  The amortization payment schedule

with respect to the repayment of all priority tax claims is

attached as Exhibit "3" to the Disclosure Statement.

| Claimant | Claim No. | Debtor | Claim Amount |
|----------|-----------|--------|--------------|
| City of Los Angeles, Office of Finance | 48 | Great Circle Family Foods | $9,797.42 (proof of claim) (unscheduled) |
| County of San Bernardino | 76 | Great Circle Family Foods | Statutory interest on the base amount of taxes owed (proof of claim) (proof of claim also includes additional $5,400.17 secured) (scheduled as unsecured claim in amount of $4,716.97) (Debtors will object to secured status of claim) |
| Franchise Tax Board | 8 | Great Circle Family Foods | Unknown (proof of claim) |
| Franchise Tax Board | 84 | Great Circle Family Foods | $12,209.81 (proof of claim) (scheduled as priority claim in amount of $99,849.74) |
| Franchise Tax Board | 4 | Canoga | $800 (administrative claim placed on court's claims register) |
| Franchise Tax Board | 7 | Canoga | $25,332.50 (proof of claim) (claim includes an additional $3,227.17 as general unsecured) |
| Franchise Tax Board | 8 | Canoga | $7,043.46 (administrative claim placed on court's |

14

| | | | claims register) |
|---|---|---|---|
| Franchise Tax Board | 4 | Huntington Park | $800 (administrative claim placed on court's claims register) |
| Franchise Tax Board | 10 | Huntington Park | $19,298.85 (proof of claim) (claim includes an additional $3,227.17 as general unsecured) |
| Franchise Tax Board | 3 | Ontario | $800 (administrative claim incorrectly placed on court's claims register) |
| Franchise Tax Board | 7 | Ontario | $25,332.50 (proof of claim) (claim includes additional $3,227.17 as general unsecured) |
| Franchise Tax Board | 9 | Orange | $800 (administrative claim placed on court's claims register) |
| Franchise Tax Board | 13 | Orange | $7,055.36 (proof of claim) (proof of claim includes additional $7,605.02 as secured nonpriority and additional $1,728.16 as general unsecured) |
| Franchise Tax Board | 6 | San Diego | $800 (administrative claim placed on court's claims register) |
| Franchise Tax Board | 12 | San Diego | $13,341.32 (proof of claim) (claim includes additional $1,738.16 as general unsecured) |
| Internal Revenue Service | 5 | Great Circle Family Foods | $8,375.82 (proof of claim) Claim withdrawn |
| Internal Revenue Service | 2 | Huntington Park | $900 (proof of claim-includes an additional $400 listed as a general unsecured claim) Claim withdrawn |
| Internal Revenue Service | 2 | Ontario | $200 (proof of claim) Claim withdrawn |
| Internal | 6 | Orange | $200 |

| | | | |
|---|---|---|---|
| Revenue Service | | | (proof of claim) Claim withdrawn |
| Los Angeles County Tax Collector | | Great Circle Family Foods | $232,389.79 (scheduled) (see proof of claim no. 3 - filed as partially secured and partially unsecured nonpriority) |
| Orange County Tax Collector | 86 | Great Circle Family Foods | $9,460.74 (proof of claim) (also scheduled as priority claim at $72,184.64) |
| San Diego County Tax Collector | 89 | Great Circle Family Foods | $16,642.03 (proof of claim) (also scheduled as priority claim at $123,602.28) |
| State Board of Equalization | 75 | Great Circle Family Foods | $159,313.31 (proof of claim) (unscheduled) |
| State Board of Equalization | 85 | Great Circle Family Foods | $169,534.50 (proof of claim) (unscheduled) Objection sustained, claim disallowed |
| Ventura County Tax Collector | 33 | Great Circle Family Foods | $7,490.69 (proof of claim) (scheduled as priority claim in the amount of $7,252.29) |

## C.   Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estates.  The following charts set forth the description and treatment of each of the Debtors' secured claims.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | All claims of GE, including | Impaired; allowed | In full settlement and satisfaction of all of |

16

| | | | |
|---|---|---|---|
| | the secured claim of GE and any unsecured deficiency claim of GE<br><br>Estimated claim amount is approximately $8 million | claim in this class is entitled to vote on this Plan. | GE's allowed claims against the Debtors, on the Plan Effective Date, GE will receive four promissory notes from the Reorganized Debtor as follows:<br><br>1. <u>Promissory Note 1 ($1,400,000)</u>.<br><br>Promissory Note 1 will accrue interest at the rate of 11.9845% per annum. The Reorganized Debtor will repay the $1,400,000 balance owing under Promissory Note 1 by making a $250,000 cash payment to GE on the Plan Effective Date and then by making sixty monthly payments to GE by the last day of each of the first sixty full calendar months following the Plan Effective Date, with the amount of the monthly payments to be computed based upon a 20-year amortization schedule (amounting to monthly payments of $12,650.07), with all outstanding principal and interest to be fully due and owing five years after the Plan Effective Date. The obligations of the Reorganized Debtor to GE under Promissory Note 1 will be (i) secured by the Puente Hills Lease, the |

Gardena Lease, and the Clairemont Lease, (ii) cross collateralized with the obligations of the Reorganized Debtor under Promissory Note 2, and (iii) personally guaranteed by Richard Reinis. Once the obligations of the Reorganized Debtor to GE under Promissory Note 1 have been fully satisfied, Richard Reinis shall be deemed released from any personal guaranty obligations to GE. The Reorganized Debtor shall have the right, but not the obligation, to prepay any portion of the outstanding balance owing under Promissory Note 1 at any time with no prepayment penalty (with the amount of the remaining monthly payments to be made under Promissory Note 1 to be reduced accordingly). The amortization payment schedule with respect to Promissory Note 1 is attached as Exhibit "4" to the Disclosure Statement. In the event that the collateral securing Promissory Note 1 is sold before the full principal balance and accrued interest owing under Promissory Note 1 have been paid in full

and the sale is for more than the outstanding balance owing under Promissory Note 1 at the time of sale, all of the collateral sale proceeds will be paid to GE up to the point where GE has received principal payments on account of Promissory Note 1 and Promissory Note 2 in the total aggregate amount of $1,820,000, with any excess sale proceeds to be retained by the Reorganized Debtor. Provided all accrued interest is paid in full at any time GE has received principal payments on account of Promissory Note 1 and Promissory Note 2 in the total aggregate amount of at least $1,820,000, all of the obligations of the Reorganized Debtor to GE under Promissory Note 1 and Promissory Note 2 will be deemed fully satisfied, and the personal guaranty of Richard Reinis shall be terminated, with all obligations therein arising satisfied.

2.   Promissory Note 2 ($90,000).

Promissory Note 2 will have an initial principal balance of

$90,000 which will accrue interest at the rate of 13.3861% per annum. The Reorganized Debtor will repay the $90,000 balance owing under Promissory Note 2 by making sixty monthly payments to GE by the last day of each of the first sixty full calendar months following the Plan Effective Date, with the amount of the monthly payments to be computed based upon a 10-year amortization schedule (amounting to monthly payments of $1,364.37), with all outstanding principal and interest to be fully due and owing five years after the Plan Effective Date. The obligations of the Reorganized Debtor to GE under Promissory Note 2 will be (i) secured by the equipment located at the City of Industry store, the Gardena store and the San Diego store, and (ii) cross collateralized with the obligations of the Reorganized Debtor under Promissory Note 1. There will be no personal guaranty of Promissory Note 2. In the event that the collateral securing Promissory Note 2 is sold for more than the

outstanding balance owing under Promissory Note 2 at the time of sale, then the collateral sale proceeds will be used first to pay off the outstanding balance owing under Promissory Note 2 and any excess will be paid to GE to reduce the outstanding principal owing under Promissory Note 1 (with the amount of the remaining monthly payments to be made under Promissory Note 1 to be reduced accordingly). The amortization payment schedule with respect to Promissory Note 2 is attached as Exhibit "5" to the Disclosure Statement. In the event that the collateral securing Promissory Note 2 is sold before the full principal balance and accrued interest owing under Promissory Note 2 have been paid in full and the sale is for more than the outstanding balance owing under Promissory Note 2 at the time of sale, all of the collateral sale proceeds will be paid to GE up to the point where GE has received principal payments on account of Promissory Note 1 and Promissory

Note 2 in the total aggregate amount of $1,820,000, with any excess sale proceeds to be retained by the Reorganized Debtor. Provided all accrued interest is paid in full at any time GE has received principal payments on account of Promissory Note 1 and Promissory Note 2 in the total aggregate amount of at least $1,820,000, all of the obligations of the Reorganized Debtor to GE under Promissory Note 1 and Promissory Note 2 will be deemed fully satisfied.

3. <u>Promissory Note 3 ($790,000)</u>.

Promissory Note 3 will have an initial principal balance of $790,000 and will not accrue any interest. There will be no mandatory monthly payment obligations under Promissory Note 3. The obligations of the Reorganized Debtor to GE under Promissory Note 3 will be (i) secured by the Crenshaw Lease and the Long Beach Lease, and (ii) cross collateralized with the obligations of the Reorganized Debtor under Promissory Note 4. There will be no

personal guaranty of Promissory Note 3. In the event that the collateral securing Promissory Note 3 is sold before the full principal balance and accrued interest owing under Promissory Note 3 have been paid in full and the sale is for more than the outstanding balance owing under Promissory Note 3 at the time of sale, all of the collateral sale proceeds will be paid to GE up to the point where GE has received principal payments on account of Promissory Note 3 in the total aggregate amount of $1,000,000, with any excess sale proceeds to be retained by the Reorganized Debtor. If at any time GE has received principal payments on account of Promissory Note 3 in the total aggregate amount of at least $1,000,000, all of the obligations of the Reorganized Debtor to GE under Promissory Note 3 will be deemed fully satisfied. The Reorganized Debtor will continue with the Debtors' efforts to market the Crenshaw store/Crenshaw Lease and the Long Beach store/Long Beach Lease

for sale, and the Reorganized Debtor shall be responsible to fund any negative operating cash flow resulting from the operations of the Crenshaw store and the Long Beach store. If Promissory Note 3 has not been repaid in full within twenty-four months following the Effective Date, the Reorganized Debtor and GE will use their reasonable best efforts to reach an agreement on the continuing disposition of the Crenshaw store and the Long Beach store, with the Bankruptcy Court to be the forum to resolve any disagreements with respect to the foregoing.

4.    Promissory Note 4 ($280,000).

Promissory Note 4 will have an initial principal balance of $280,000 and will not accrue any interest. There will be no mandatory monthly payment obligations under Promissory Note 4. The obligations of the Reorganized Debtor to GE under Promissory Note 4 will be (i) secured by the equipment located at the Crenshaw store and

the Long Beach store and by the equipment which was previously located at the Debtors' former stores which were located in Palmdale and Bakersfield, California, and (ii) cross collateralized with the obligations of the Reorganized Debtor under Promissory Note 3. There will be no personal guaranty of Promissory Note 4. If at any time GE has received principal payments on account of Promissory Note 3 and Promissory Note 4 in the total aggregate amount of at least $280,000, all of the obligations of the Reorganized Debtor to GE under Promissory Note 4 will be deemed fully satisfied. The Reorganized Debtor will continue with the Debtors' efforts to market the equipment from the former Palmdale and Bakersfield stores for sale. If Promissory Note 4 has not been repaid in full within twenty-four months following the Effective Date, the Reorganized Debtor and GE will use their reasonable best efforts to reach an agreement on the continuing disposition

| | | | of the collateral which secures Promissory Note 4, with the Bankruptcy Court to be the forum to resolve any disagreements with respect to the foregoing. |
|---|---|---|---|

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | All claims of October Acquisitions, LLC ("OA"), including OA's secured claim and unsecured deficiency claim

Estimated claim amount is approximately $5.625 million

On the Petition Date, OA held a first priority perfected lien against the Debtors' accounts receivable, which were in the amount of $210,127.98, which constitutes an allowed secured claim (and a super priority administrative claim for the reasons described above). The balance of OA's claim is a general unsecured claim that would be part of class 4 if not for the voluntary claim waiver | Impaired; allowed claim in this class is entitled to vote on this Plan. The Committee contends that the OA claim is an insider claim. | In full settlement and satisfaction of its class 2 secured claim, OA will receive a promissory note from the Reorganized Debtor in the principal amount of $210,127.98, which will accrue interest following the Effective Date at the rate of 10% per annum. The Reorganized Debtor will repay this promissory note by making thirty-six monthly payments to OA by the last day of each of the first thirty-six full calendar months following the Plan Effective Date, on a fully amortized basis (amounting to monthly payments of $6,780.24), with all outstanding principal and interest to be fully due and owing three years after the Plan Effective Date. The obligations of the Reorganized Debtor to OA under this promissory note will continue be secured by a first priority lien against the accounts receivable of the Reorganized Debtor.

Subject to confirmation of this Plan, OA will voluntarily agree to waive the remaining balance of its class 2 |

27

| | described herein. | | claim in its entirety, meaning that (i) the holder of the class 2 claim will receive no distribution, of cash or equity, on account of the remaining balance of its class 2 claim, (ii) the Reorganized Debtor will have no financial obligation to OA on account of the remaining balance of its class 2 claim, and (iii) the holder of the class 2 claim will not be a voting member of class 4 on account of its class 2 deficiency claim. |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Class 5 claim holders are comprised of any other secured claims which exist other than those contained in any other class. As described above, the Debtors have not included any such other secured claims in their bankruptcy schedules, but certain alleged creditors have filed proofs of claim contending to have secured claims. The Debtors have objected, or will be objecting, to all such secured claims. A chart which lists all potential class 5 claims is contained above. | Impaired; allowed claims in this class are entitled to vote on this Plan. | In full settlement and satisfaction of all class 5 claims, each holder of a class 5 allowed claim will be treated in a manner consistent with the provisions of Section 1129(b)(2)(A)(i) of the Bankruptcy Code (i.e., the holders of such claim will retain its liens securing such claim and receive payments from the Reorganized Debtor over time with interest equal to the present value of such claim existing on the Plan Effective Date). The holders of class 5 allowed claims will be entitled to include with their class 5 allowed claims pre-petition and post-petition interest pursuant to Sections 506(b) and 511 of the Bankruptcy Code.<br><br>All class 5 allowed claims will be paid the full amount of their class 5 allowed claims in equal quarterly payments over a period of twenty calendar quarters (with the payments to be made by June 30, 2009; September 30, 2009; December 31, 2009; March 31, 2010; June |

| | | | 30, 2010; September 30, 2010; December 31, 2010; March 31, 2011; June 30, 2011; September 30, 2011; December 31, 2011; March 31, 2012; June 30, 2012; September 30, 2012; December 31, 2012; March 31, 2013; June 30, 2013; September 30, 2013; December 31, 2013; and March 31, 2014). |
|---|---|---|---|

## 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.

The Debtors are investigating the unsecured priority claims filed by Kaiser Permanente, in the amount of $30,042.79, and United Health Care, in the amount of $11,829.56. The Debtors believe that there may be grounds for objecting to Kaiser Permanente's and United Health Care's claims, and, if appropriate, will object to those claims. If the claims of

Kaiser Permanente and United Health Care are deemed allowed, they will be paid in full on the later of the Plan Effective Date or the date of allowance of such claims.

The Debtors believe that if there are any other Section 507(a)(3), (4), (5), (6), or (7) priority unsecured claims, they would consist of a small amount of still unpaid pre-petition priority wage claims of the Debtors' employees. The Debtors believe that all of these claims have previously been paid (or will be paid prior to the Effective Date) pursuant to the Court order granting the Debtors' emergency wage motion filed at the commencement of these cases. To the extent the Debtors have any such allowed priority unsecured claims (which the Debtors do not believe will be the case), such claims will be considered class 3 allowed claims and will be paid in full by the Reorganized Debtor on the later of the Plan Effective Date and the date the Court enters an order allowing such priority claims, unless such class 3 allowed claims can be satisfied in an alternative manner acceptable to the holders of the class 3 allowed claims (such as by permitting employees to take accrued vacation).

### 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of the Debtors' non-priority general unsecured claims (see

31

Exhibit "1" to the Disclosure Statement for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | All general unsecured claims which are not included in any other class<br><br>Total amount of class 4 claims which have been asserted against the Debtors is approximately $12,559,612. A detailed claims chart showing all claims which were scheduled by the Debtors and all proofs of claim which have been filed against the Debtors is attached as Exhibit "1" to the Disclosure Statement (the "Claims Chart"). It is the Debtors' intention to update the Claims Chart prior to the Disclosure Statement hearing to indicate which claims in the Claims Chart are objectionable | Impaired; allowed claims in this class are entitled to vote on this Plan. | Within thirty days following the later of the (i) Plan Effective Date and (ii) date of entry of a Court order resolving the final disputed class 4 claim, holders of class 4 allowed claims will receive a cash distribution of $400,000, comprised of the $150,000 capital contribution from the New Investor and $250,000 of the Debtors' funds, with such funds to be distributed to holders of class 4 allowed claims on a pro rata basis based upon the amount of their class 4 allowed claims. If there remain any disputed class 4 claims on the Plan Effective Date, this $400,000 will be deposited into a segregated interest bearing account and be maintained solely for distribution to holders of class 4 allowed claims once the final disputed class 4 claim has been resolved by Court order. Since the Debtors estimate that there will likely be a total of approximately $9,542,662.05 – $12,559,612.01 of |

| | | |
|---|---|---|
| to the Debtors, even if the Debtors have not yet filed formal objections to those claims. The Debtors believe that after the objection to claims process has been completed, there will likely be a total of approximately $9,542,662.05–$12,559,612.01 of class 4 allowed claims. | | class 4 allowed claims after the Debtors have completed the claims objections process, the Debtors estimate that this initial $400,000 cash distribution to holders of class 4 allowed claims will equate to a distribution of approximately 3.1%–4.1% of their class 4 allowed claims.

In addition to this initial $400,000 cash distribution, holders of class 4 allowed claims shall through a Liquidating Trust (described more below) collectively own on the Plan Effective Date 50% of the equity interests of the Reorganized Debtor on a pro rata basis based upon the amounts of their class 4 allowed claims. Subject to that set forth below, the Reorganized Debtor shall have the right to purchase all such equity interests held by the class 4 claim holders at any time for a period of five years following the Plan Effective Date for a cash purchase price of $500,000 on the Plan Effective Date with this figure to accrue interest at |

| | | | the rate of 5% per annum (the "Redemption Price"). The Reorganized Debtor shall have the right to purchase less than all such equity interests held by the class 4 claim holders at any time for a period of five years following the Plan Effective Date by paying a proportional amount of the Redemption Price, provided that any such purchase of partial equity interests must result in a payment to class 4 claim holders at the time of purchase of at least $100,000.<br><br>In addition to all of the foregoing, any and all net recoveries obtained from the pursuit of avoidance causes of action shall be distributed on a pro rata basis to holders of class 4 allowed claims. |
|---|---|---|---|

### 4. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in any or all of the Debtors. The following chart identifies this Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 6 | All equity holders, including holders of membership interests, partnership interests, common stock, preferred stock, stock options, warrants, etc. | Impaired; holders of class 6 interests are not entitled to vote on this Plan because they are deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code. | On the Effective Date, all class 6 interests will be deemed cancelled, terminated and extinguished and of no further force and effect and will no longer constitute an equity interest in the Debtors without the need for either the Debtors or the class 6 interest holders to take any further action. Interest holders will not receive any distribution or retain any property under this Plan on account of their equity interests in one or more of the Debtors. |

**D.   Means of Effectuating this Plan and Implementation of this Plan**

**1.   Funding for this Plan**

This Plan will be funded in the manner described above. All cash payments which are requested to be made on or near the Plan Effective Date will be funded from the New Cash

36

Contribution plus the Debtors' funds. The payments which are required to be made over time will be funded from the Reorganized Debtor's business operations.

**2.    Composition of the Reorganized Debtor and Substantive Consolidation of the Debtors**

On the Plan Effective Date, all of the Debtors will be deemed to be merged into and substantively consolidated with Great Circle Family Foods, LLC, which shall thereafter be the Reorganized Debtor. The Reorganized Debtor will continue to be a limited liability company organized under the laws of the State of California. All of the other Debtors shall cease to exist as legal entities on the Plan Effective Date without the need for any of them to take any further action. On the Plan Effective Date, all of the existing equity interests in all of the Debtors shall be deemed cancelled and extinguished and of no further force or effect. Equity holders in the Debtors will not receive any distribution or retain any property on account of such equity interests. On the Plan Effective Date, the Reorganized Debtor will be owned 50% by the New Investor and 50% by the Liquidating Trust for the benefit of holders of class 4 allowed claims. All management decisions for the Reorganized Debtor would be made by a majority vote of the Management Committee.

**3.    Post-Confirmation Management**

37

Roger E. Glickman will serve as the initial Chairman of the Management Committee of the Reorganized Debtor as well as the Chief Executive Officer and Chief Financial Officer of the Reorganized Debtor, which are the same titles he holds at this time.  Mr. Glickman assumed control of the Debtors' business operations in March, 2008 (after having worked for the Debtors in various senior level capacities prior to the Debtors' bankruptcy filings).  Mr. Glickman received his Bachelor of Science Degree in Management from Babson College in 1989 and a Master of Business Administration from The Wharton School of the University of Pennsylvania in 1996.  Mr. Glickman has substantial experience serving as a senior level executive.  Mr. Glickman will be in charge of the Reorganized Debtor's overall business operations, finances and strategic planning.  Mr. Glickman's initial compensation will remain the same as it currently is, which consists of a base salary of $250,000 per year plus usual and customary benefits.  Brett Garlinghouse will serve as the initial President of the Reorganized Debtor, which is the same title he holds at this time.  Mr. Garlinghouse will be the person who is second in command and work under the direction of Mr. Glickman.  Mr. Garlinghouse's initial compensation will remain the same as it currently is, which consists of a base salary of $144,000 per year plus usual and customary benefits.  Wendy Glickman (spouse of Mr. Glickman)

38

will serve as the Reorganized Debtor's initial head of marketing and person in charge of franchisor/franchisee relations, which is the same title she holds at this time.    Ms. Glickman's initial compensation will remain the same as it currently is, which consists of a base salary of $102,000 per year plus usual and customary benefits.    The Management Committee of the Reorganized Debtor will consist of five members, four of whom will be selected by the New Investor, and one of whom will be selected by the Liquidating Trust.    Three of the initial members selected by the New Investor will be Mr. Glickman, Mr. Garlinghouse and Mrs. Glickman.    The New Investor will identify the fourth initial member selected by the New Investor prior to the Plan confirmation hearing.    Other than day-to-day operational decisions (which will be made by officers or managers of the Reorganized Debtor selected by the Management Committee), all strategic decisions for the Reorganized Debtor will be made by a majority vote of the Management Committee.

**4.    Disbursing Agent**

The Reorganized Debtor shall serve as the disbursing agent for purposes of making all distributions required to be made under this Plan.    The Reorganized Debtor will not charge any disbursing agent fee for making such distributions.

**5.    Objections to Claims**

Except as set forth immediately below, the Debtors or the Reorganized Debtor, as the case may be, will file objections to all claims which are inconsistent with the Debtors' books and records unless the Debtors deem the inconsistency to be insignificant.  The Committee will have the responsibility of analyzing and filing any objections to the claims of any insiders of the Debtors, including the class 2 claim of OA. With respect to disputed claims which are not resolved prior to the Plan Effective Date, the Reorganized Debtor or the Committee, as the case may be, will have the authority, in their sole discretion, in the reasonable exercise of their business judgment, to settle or compromise any disputed claim without further notice or Court approval.  As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of this Plan.  The Debtors, the Reorganized Debtor or the Committee, as the case may be, will have the authority to file any objections to claims following the confirmation of this Plan, and the Court shall retain jurisdiction over the Debtors, the Reorganized Debtor and these case s to resolve such objections to claims following the confirmation of this Plan.  If the Reorganized Debtor, in consultation with the Liquidating Trust, determines it appropriate to do so, the Reorganized Debtor shall make an interim distribution to holder of class 4 allowed claims before

all disputed class 4 claims have been resolved to final order, and shall establish an appropriate reserve to deal with payment to holders of disputed class 4 claims who ultimately obtain class 4 allowed claims. Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtor or the Committee of any rights of setoff or recoupment, or of any defense, the Debtors, the Reorganized Debtor or the Committee may have with respect to any claim.

**6.    Avoidance Actions**

The Debtors are not aware of any payments made during the ninety-day preference period for non-insiders or the one-year period for insiders which would be clearly avoidable as preference payments, as the Debtors believe that all such payments would be subject to some form of ordinary course, contemporaneous exchange or new value defense. A copy of the schedule of the Debtors' payments made during the ninety-day preference period for non-insiders and the one-year period for insiders is attached as Exhibit "6" to the Disclosure Statement. The Debtors also believe that the detriment to their business from suing vendors would outweigh any benefit from the pursuit of preference actions. The Debtors are also not aware of any fraudulent conveyances which have occurred and which need to be avoided. If the Committee disagrees, then on the Plan Effective Date the power and standing of these estates to pursue avoidance

causes of action shall be transferred and conveyed to the
Liquidating Trust as the representative of the Debtors' estates
under section 1123(b) of the Bankruptcy Code.  However, any
professional fees and expenses incurred in the pursuit of
avoidance causes of action may be paid solely from the recovery
from the pursuit of such avoidance causes of action and/or from
the funds described in Section IV.D.10 below.  All claims,
causes of action and avoidance actions of the Debtors and their
estates are preserved by this Plan, and the Liquidating Trust
shall have full power and authority to settle, adjust, retain,
enforce or abandon any claim, cause of action or avoidance
actions as the representative of the Debtors' estates under
section 1123(b) of the Bankruptcy Code or otherwise, regardless
of whether such claims, causes of action or avoidance actions
were commenced prior or subsequent to the Plan Effective Date.

**7.    Creation and Purpose of the Liquidating Trust**

On the Plan Effective Date, the Reorganized Debtor shall
create the Liquidating Trust for the benefit of holders of class
4 allowed claims.  The Liquidating Trust shall be a creditors
liquidating trust for all purposes, including Treasury
Regulations Section 301.7701-4(d).  The Liquidating Trust will
be organized for the purpose of liquidating all property,
claims, rights and causes of action of the Debtors and their
estate which are assigned to the Liquidating Trust pursuant to

this Plan and to distribute the Liquidating Trust Funds in accordance with the terms of this Plan.  If the Liquidating Trust so desires, the Reorganized Debtor will distribute the Liquidating Trust Funds to holders of class 4 allowed claims in accordance with the terms of this Plan.  The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business.  The Liquidating Trust shall receive, liquidate and distribute the property, claims, rights and causes of action of the Debtors and their estates in accordance with this Plan and the Liquidating Trust Agreement as promptly as is reasonably practicable, in an expeditious but orderly manner. The Liquidating Trust is not a successor of the Debtors for purposes of incurring the Debtors' liabilities.  To the extent there are any inconsistencies between this Plan and the Liquidating Trust, the terms of this Plan shall prevail.  A copy of the Liquidating Trust Agreement is attached as Exhibit "7" to the Disclosure Statement.  All property and cash delivered by the Reorganized Debtor to the Liquidating Trust, together with any recoveries obtained from the pursuit of avoidance causes of action, shall collectively be defined as the "Liquidating Trust Funds".

## 8.  Appointment of the Liquidating Trustees

The Committee shall designate the Liquidating Trustee to be appointed for the purpose of administering the Liquidating Trust

pursuant to this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee may be compensated on terms agreed to by the Committee out of funds available to the Liquidating Trust.  The Liquidating Trustee shall perform all of the obligations of the Liquidating Trustee under this Plan and the Liquidating Trust Agreement.  The Liquidating Trust shall be the authorized representative of the holders of class 4 allowed claims.  The Liquidating Trustee shall serve for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided in the Liquidating Trust Agreement.  The Liquidating Trustee shall have the authority to enter into agreements and compromises on behalf of the Liquidating Trust upon 14-days prior notice to all Liquidating Trust members subject to the terms of the Liquidating Trust Agreement.

> **9.    Transfer of Property, Claims, Rights and Causes of Action to the Liquidating Trust**

On the Effective Date, all property, claims, rights, and causes of action of the Debtors' estate s to be transferred to the Liquidating Trust as described above shall be deemed transferred to and vested in the Liquidating Trust free and clear of all liens and claims against the Debtors and all equity interests in the Debtors.  All property, claims, rights, and causes of action received or held by the Liquidating Trust shall

be held in trust for the benefit of holders of class 4 allowed claims subject to the provisions of this Plan and the Liquidating Trust Agreement.

**10.  Employment of Officers, Employees and Professionals**

On and after the Effective Date, the Liquidating Trust shall have the right to employ and compensate such officers, employees, professionals, agents and representatives as the Liquidating Trust determines is necessary or appropriate to implement all of the provisions of this Plan and the Liquidating Trust Agreement.  Until the Liquidating Trust no longer has any interest in the Reorganized Debtor, the Reorganized Debtor shall pay the sum of $25,000 per year to assist the Liquidating Trust to pay for the fees and expenses of the professionals engaged by the Liquidating Trust and any other expenses of the Liquidating Trust.  This annual payment of $25,000 will be made regardless of whether the Liquidating Trust incurs expenses equal to or greater than this sum in any given year, and the Liquidating Trust shall have the right to distribute any sums remaining from these annual payments to the members of the Liquidating Trust on a pro rata basis, similar to any other distribution made by the Liquidating Trust to its members.  The payment of all other fees and expenses of the professionals engaged by the Liquidating Trust and any other expenses of the Liquidating Trust shall be the responsibility of the Liquidating Trust.

**11.   Distribution of Liquidating Trust Funds**

After the Effective Date, as deemed appropriate by the Liquidating Trustee, the Liquidating Trust shall: (i) pay or provide for all expenses of the Liquidating Trust from the Liquidating Trust Funds, (ii) establish and maintain a reserve for expenses of the Liquidating Trust, (iii) establish and maintain a reserve for disputed claims, (iv) establish and maintain a reserve for unclaimed distributions, (v) establish any other reserves or accounts, and (vi) make distributions of cash to the holders of class 4 allowed claims from the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement.  All cash held by the Liquidating Trust shall be invested only in investments permitted under the Liquidating Trust Agreement.  As described above, if the Liquidating Trust so desires, the Reorganized Debtor will distribute the Liquidating Trust Funds to holders of class 4 allowed claims in accordance with the terms of this Plan.

**12.   Transferability of Individual Trust Interests**

Any member of the Liquidating Trust may at any time sell their interest in the Liquidating Trust to an existing member of the Liquidating Trust.  A member of the Liquidating Trust who is unable to sell their interest to an existing member of the Liquidating Trust shall have the right to sell their interest to a third party, provided the third party is a bona fide purchaser

46

for value ("BFP") who has made a written purchase offer, and further provided that the Reorganized Debtor (if the Reorganized Debtor is interested in exercising a right of redemption), and then the New Investor (if the Reorganized Debtor is not interested in exercising a right of redemption), are provided rights of first refusal to purchase the interest of the existing member of the Liquidating Trust on the same terms as offered by the BFP. The selling member shall be required to provide the Reorganized Debtor and the New Investor with a copy of the BFP's written offer. The Reorganized Debtor shall have ten days after receipt of a copy of the BFP's written offer to exercise its right of redemption, and the New Investor shall have ten days thereafter to purchase the selling member's interest if the Reorganized Debtor does not exercise its right of redemption.

**13.  Sale or Transfer of Entire Trust Interests**

If at any time the New Investor sells any portion of his interest in the Reorganized Debtor to a third party, the New Investor and the Management Committee must make the same sale opportunity available to the Liquidating Trust. Further, if the New Investor elects to sell his entire interest in the Reorganized Debtor to a third party in an arm's length transaction, the New Investor shall have the ability to require the Liquidating Trust to sell all of its interest in the Reorganized Debtor for the same price. The Reorganized Debtor

shall have the right to purchase all of the Liquidating Trust's interest in the Reorganized Debtor at any time for a period of five years following the Plan Effective Date for a cash purchase price of $500,000 on the Plan Effective Date with this figure to accrue interest at the rate of 5% per annum (the "Purchase Option Price").  The Reorganized Debtor shall have the right to purchase less than all such equity interests held by the Liquidating Trust at any time for a period of five years following the Plan Effective Date by paying a proportional amount of the Purchase Option Price.

**14.   Dilutive Act of Interests in the Reorganized Debtor.**

In the event of any equity infusion into the Reorganized Debtor in which the equity investor obtains an equity interest in the Reorganized Debtor, the New Investor and the Liquidating Trust shall have their equity interests in the Reorganized Debtor diluted on a proportional basis.  The Management Committee shall have the right to issue, or make available to be purchased as options, up to 10% of the equity interests in the Reorganized Debtor to the key management of the Reorganized Debtor, with the equity interests of the New Investor and the Liquidating Trust to be diluted on a proportional basis.  Any such dilution in the equity interests of the Liquidating Trust shall not reduce the amounts of any Redemption Price paid for the equity interests held by the class 4 claim holders.

**15. Profit or Excess Capital Distributions By the Reorganized Debtor.**

In the event of any distribution by the Reorganized Debtor of any profit and/or excess capital to equity holders, such distributions shall be made to all equity holders on a proportional basis pursuant to the amount of their equity interests in the Reorganized Debtor.

**16. Termination of Liquidating Trust**

The Liquidating Trust shall be irrevocable. The Liquidating Trust shall terminate: (1) when the Liquidating Trustee has performed all of its duties under this Plan and the Liquidating Trust Agreement, including the liquidation of all of the property, claims, rights and causes of action of the Liquidating Trust and distribution of all of the Liquidating Trust Funds; or (2) by a majority vote of the members of the Liquidating Trust who elect to vote (not including the votes of insiders of the Debtor (e.g., Richard Reinis and Roger Glickman), with the majority determined by more than 50% of the amount of interests held by the voting members, not by the number of voting members.

**17. Exemption from Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed

49

under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.    Transfers under this Plan that are exempt from taxes under section 1146(c) of the Bankruptcy Code include all transfers by the Debtors after the commencement of their chapter 11 cases in contemplation of this Plan but prior to the Effective Date, and all transfers to and by the Liquidating Trust.    The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**18.    Employment of Professionals By the Reorganized Debtor and Payment of Professional Fees and Expenses Incurred after the Effective Date**

The Reorganized Debtor shall have the authority to employ professionals as the Reorganized Debtor deems appropriate and to pay the fees and expenses incurred by such professionals without any further order of the Court.

**19.    Distributions to be Made Pursuant to this Plan**

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to this Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of

50

claim duly filed with the Bankruptcy Court, to such address.
Checks issued to pay allowed claims shall be null and void if
not negotiated within sixty (60) days after the date of issuance
thereof.

**20. Exculpations and Releases**

To the maximum extent permitted by law, neither the
Debtors, the Reorganized Debtor, nor the Committee, nor any of
their employees, officers, directors, shareholders, agents,
members, representatives, or professionals employed or retained
by any of them, whether or not by Bankruptcy Court order, shall
have or incur liability to any person or entity for any act
taken or omission made in good faith in connection with or
related to the formulation and implementation of this Plan, or a
contract, instrument, release, or other agreement or document
created in connection therewith, the solicitation of acceptances
for or confirmation of this Plan, or the consummation and
implementation of this Plan and the transactions contemplated
therein, provided, however, that nothing in this Plan or the
Plan Confirmation Order shall, in any way, amend, alter or
modify the Debtors', the Reorganized Debtor's and Bixby Land
Company's rights and obligations under that certain "Shopping
Center Ground Lease" dated July 6, 1999, by and between Bixby
Land Company, as landlord, and the Debtors and Reorganized
Debtor, as tenant, which lease was assumed by the Debtors in

accordance with that certain "Order Approving Debtor's Assumption Of Unexpired Non-Residential Real Property Lease With Bixby Land Company (Long Beach Location)" entered by the Court on February 19, 2009.

## 21. Injunctions

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan. Except as provided in this Plan or the Plan Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtor, or their property on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt,

liability or obligation due to the Debtors; and (v) commencing

or continuing any action in any manner, in any place, that does

not comply with or is inconsistent with the provisions of this

Plan.  By accepting distribution pursuant to this Plan, each

holder of an allowed claim receiving distributions pursuant to

this Plan shall be deemed to have specifically consented to the

injunctions set forth in this Section.

### 22. Executory Contracts and Unexpired Leases

On the Effective Date, all of the Debtors' remaining

executory contracts and unexpired leases which have not

previously been assumed or rejected by the Debtors and which are

identified in Exhibit "8" to the Disclosure Statement shall be

deemed to be assumed by the Debtors and to become valid and

binding executory contracts and unexpired leases of the

Reorganized Debtor (the "Debtors' Assumed Contracts and

Leases").  By 5:00 p.m. PST on the day prior to the date of the

Plan confirmation hearing, the Debtors shall file a pleading

with the Court identifying all of the Debtors' Assumed Contracts

and Leases.  All of the Debtors' remaining executory contracts

and unexpired leases which have not previously been assumed or

rejected by the Debtors and which are not included among the

Debtors' Assumed Contracts and Leases shall be deemed rejected

effective as of 11:59 PST on the Plan Effective Date.  With

respect to all of the Debtors' Assumed Contracts and Leases for

which a default exists on the Plan Effective Date, the Debtors will be required to (a) cure or provide adequate assurance that the Reorganized Debtor will promptly cure any default existing under any such executory contracts and unexpired leases, (b) compensate or provide adequate assurance that the Reorganized Debtor will promptly compensate any other party to such executory contracts and unexpired leases for any actual pecuniary loss to such parties resulting from any default existing under any such executory contracts and unexpired leases, and (c) provide adequate assurance of future performance under such executory contracts and unexpired leases. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE PLAN EFFECTIVE DATE.** Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**23. Changes in Rates Subject to Regulatory Commission Approval**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**24. Remedy of Taxing Authority following Plan Default**

A failure by the Reorganized Debtor to make a payment to the taxing authorities pursuant to the terms of this Plan shall be an event of default.  If the Reorganized Debtor fails to cure any such event of default within ten (10) days after receipt of written notice of such default from the taxing authority, then the taxing authority may enforce the entire amount of its allowed tax claim, plus all penalties and interest accrued under state law, against the Reorganized Debtor in accordance with applicable state law remedies.

**25.  Retention of Jurisdiction**

After confirmation of this Plan and occurrence of the Plan Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.  To resolve any and all disputes regarding the operation and interpretation of this Plan and the Plan Confirmation Order;

ii.  To resolve any and all disputes regarding the operation and interpretation of the Liquidating Trust;

iii. To determine the allowability, classification, or priority of claims and interests upon objection by the Debtors, the Committee, the Liquidating Trust, or by other parties in interest with standing to bring such objection or proceeding and

to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iv.  To determine the extent, validity and priority of any lien asserted against property of the Debtors, property of the Debtors' estates, or the Liquidating Trust;

v.  To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan, the Plan Confirmation Order, the Liquidating Trust and all matters referred to in this Plan, the Plan Confirmation Order, and the Liquidating Trust, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

vi.  To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vii. To determine any request for payment of administrative expenses;

viii.  To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired

leases filed before the Effective Date and the allowance of any claims resulting therefrom;

ix.  To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date including avoidance causes of action, and the Liquidating Trust shall have the right to commence any avoidance causes of action after the Effective Date and to continue with the prosecution of any avoidance causes of action commenced by the Debtors prior to the Effective Date;

x.  To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

xi.  To modify this Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xii. Except as otherwise provided in this Plan, the Plan Confirmation Order, or the Liquidating Trust, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Plan Confirmation Order;

xiii. To issue such orders in aid of consummation of this Plan, the Plan Confirmation Order, or the Liquidating Trust, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiv. To enter a final decree closing this Chapter 11 case.

## IV. **EFFECT OF CONFIRMATION OF THIS PLAN**

**A.    Discharge.**

The Debtors will receive a discharge under this Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtors' estates and because the Reorganized Debtor will be continuing with the Debtors' current business operations.

**B.    Modification of this Plan.**

The Debtors may modify this Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on this Plan if the Debtors modify this Plan before confirmation. The Debtors may also seek to modify this Plan at any time after confirmation of this Plan so long as (1) this Plan has not been substantially consummated and

58

(2) the Court authorizes the proposed modifications after notice and a hearing.

**C.    Post-Confirmation Status Reports.**

As described above, until a final decree closing the Debtors' Chapter 11 cases is entered, the Reorganized Debtor shall file a quarterly status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.

**D.    Post-Confirmation Conversion/Dismissal.**

A creditor or any other party in interest may bring a motion to convert or dismiss the case under Section 1112(b) of the Bankruptcy Code after this Plan is confirmed if there is a default in performing this Plan.  If the Court orders the cases converted to Chapter 7 after this Plan is confirmed, then all property that had been property of the Chapter 11 estates, and that has not been disbursed pursuant to this Plan, will revest in the Chapter 7 estates, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke

confirmation within 180 days after the entry of the Plan Confirmation Order.

**E.   Final Decree.**

Once these estates have been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close this case.   The Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6).

Dated: April 30, 2009

Presented By:

LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.


By:_____
        RON BENDER
        Attorneys for Chapter 11
        Debtors and Plan Proponents


Great Circle Family Foods, LLC
GCFF-Huntington Park, LLC
GCFF-Orange, LLC
GCFF-San Diego, LLC
GCFF-Canoga, LLC
GCFF-Ontario, LLC


By:_____
        ROGER E. GLICKMAN
        Chief Executive Officer and Chief Financial
        Officer

# EXHIBIT "B"

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES NOT PREVIOUSLY ASSUMED

### Real Property Lease Agreements

Mauna Lani Investments, LLC, Diversified Starbuck Center, LLC, and Diversified Rockfiled, LLC Lease - The Debtors rejected their non-residential real property lease with Mauna Lani Investments, LLC, Diversified Starbuck Center, LLC, and Diversified Rockfiled, LLC for the property located 25802 El Paseo Ave., Mission Viejo, California 92691 (the "Mission Viejo Lease").  The Debtors had intended to shut down and to vacate the Mission Viejo store effective as of approximately March 24, 2008.  However, the Debtors and the landlord of the Mission Viejo store ultimately agreed to enter into a stipulation to provide for Great Circle to remain a tenant of the Mission Viejo store on a temporary basis with reduced rent and continue to operate the Mission Viejo store to enable the landlord to avoid having the Mission Viejo store go dark while the landlord searches for a new tenant.  Pursuant to the stipulation, the landlord and the Debtors agreed that the Mission Viejo Lease shall be deemed rejected effective on March 31, 2008, and that effective on April 1, 2008, Great Circle shall occupy the Mission Viejo store on a month-to-month basis.  The parties agreed that during Great Circle's occupancy of the Mission Viejo store pursuant to the new month-to-month lease, commencing April 1, 2008, Great Circle would pay base rent to the landlord of $7,500 per month, plus ordinary CAM charges and Association Fees, plus 10% of the "net profits" generated by Great Circle from the operation of the Mission Viejo store.  The month-to-month lease automatically renews on a rolling thirty-day basis, with both the Debtors and the landlord having the right to terminate the lease at any time by providing written notice of the termination to the other party, with the effective date of the termination to be thirty days following delivery of the written notice.

### Personal Property Lease Agreements

IKON Financial Services –Image Management Plus Agreement dated July 8, 2005, for Canon Copier IR5570

### Franchise Agreements with Krispy Kreme Doughnut Corporation

| Owner | Store No. | Date of Agreement | Address |
|---|---|---|---|
| Great Circle Family Foods, LLC | 983 | 3/21/00 | 4760 Los Coyotes Diagonal Long Beach, CA 90815 |
| GCFF – Huntington Park, LLC | 984 | 4/26/00 | 1199 West Artesia Blvd. Gardena, CA 90248 |
| Great Circle Family Foods, LLC | 985 | 8/15/00 | 4034 Crenshaw Boulevard Los Angeles, CA 90008 |
| GCFF – Ontario, LLC | 989 | 12/20/00 | 1548 Asuza Avenue City of Industry, CA 91748 |
| GCFF – San Diego, LLC | 995 | 12/6/00 | 4180 Clairemont Mesa Blvd. San Diego, CA 92117 |
| Great Circle Family Foods, | 1004 | 8/6/2002 | 25802 El Paseo Avenue |

| | | | |
|---|---|---|---|
| LLC | | | Mission Viejo, CA 92691 |
| Great Circle Family Foods, LLC | 4502 | No Agreement | 1231 Wilshire Boulevard Santa Monica, CA 90403 |
| Great Circle Family Foods, LLC | 4519 | No Agreement | 2305 Otay Lakes Road Suite 206 Chula Vista, CA 91914 |

**Test Agreement with Krispy Kreme Doughnut Corporation**

Test Agreement between Great Circle Family Foods, LLC and Krispy Kreme Doughnut Corporation, dated July 27, 2005.

**Franchise Agreements with CBTL Franchising, LLC**

| Owner | Date of Agreement | Address |
|---|---|---|
| Great Circle Family Foods, LLC | 8/8/2005 | 1521 North Victory Place Burbank, CA 91504 |
| Great Circle Family Foods, LLC | 8/8/2005 | 2305 Otay Lakes Road Suite 206 Chula Vista, CA 91915 |
| Great Circle Family Foods, LLC | 8/8/2005 | 1199 West Artesia Blvd. Gardena, CA 90248 |
| Great Circle Family Foods, LLC | 8/8/2005 | 1548 Asuza Avenue City of Industry, CA 91748 |
| Great Circle Family Foods, LLC | 8/8/2005 | 330 City Drive South Orange, CA 92868 |
| Great Circle Family Foods, LLC | 8/8/2005 | 1231 Wilshire Blvd. Santa Monica, CA 90403 |

**Area Development Agreement and amendment thereto, with CBTL Franchising, LLC**

The Coffee Bean & Tea Leaf Area Development Agreement by and between CBTL Franchising, LLC, a Delaware Limited Liability Company, as company, and Great Circle Family Foods, LLC, A California Limited Liability Company, as developer, dated August 8, 2005.

First Amendment to Area Development Agreement, dated February 16, 2006.

# EXHIBIT "C"

# LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT (the "Agreement") is made this ___ day of _____, 2009 (the "Effective Date") by and among Great Circle Family Foods, LLC in its capacity as the Reorganized Debtor, on the one hand, and _____, not in his individual capacity but solely in his capacity as the trustee hereunder (the "Trustee").

## R E C I T A L S:

A.    Voluntary petitions were filed by Great Circle Family Foods, LLC; GCFF-Huntington Park, LLC; GCFF-Orange, LLC; GCFF-San Diego, LLC; GCFF-Canoga, LLC; and GCFF-Ontario, LLC (collectively, the "Debtors") on August 22, 2007 (the "Petition Date") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("the Bankruptcy Court") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") as Case Nos. 8:07-bk-12600-ES; Case No. 8:07-bk-12603-ES; Case No. 8:07-bk-12605-ES; Case No. 8:07-bk-12606-ES; Case No. 8:07-bk-12602-ES; Case No. 8:07-bk-12604-ES (collectively, the "Bankruptcy Cases").

B.    At a hearing held on April 30, 2009, the Bankruptcy Court confirmed the Debtors' Second Amended Plan of Reorganization, as modified (the "Plan").  The effective date of the confirmed Plan (the "Effective Date") is _____, 2009.

C.    Pursuant to the terms of the confirmed Plan, on the Plan Effective Date, all of the Debtors were deemed merged into and substantively consolidated with Great Circle Family Foods, LLC, which, following the Plan Effective Date, shall be defined as, and referred to herein as, the "Reorganized Debtor".

D.    Pursuant to the terms of the confirmed Plan, Richard Reinis acquired 50% of the equity interests in the Reorganized Debtor and all holders of class 4 allowed claims (general unsecured claims) acquired through a Liquidating Trust 50% of the equity interests in the Reorganized Debtor on a pro rata basis based upon the amounts of their class 4 allowed claims. The equity interests held by the holders of the class 4 allowed claims in the Reorganized Debtor through this Liquidating Trust are subject to potential dilution as provided for in the Plan.

E.    The Plan provides that a liquidating trust (the "Liquidating Trust") be created for the benefit of the holders of class 4 allowed claims.

F.    The Reorganized Debtor and the Trustee desire to create the Liquidating Trust as contemplated by the Plan.

## A G R E E M E N T S:

NOW THEREFORE, for and in consideration of the premises, and the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Reorganized Debtor and the Trustee, intending to be legally bound, hereby agree as follows:

65

I.    <u>Definitions:</u>

A.    <u>Terms Defined Above</u>.  As used in this Agreement, each of the terms "Reorganized Debtor", "Debtors," "Agreement," "Bankruptcy Court," "Plan," "Plan Confirmation Order," and "Trustee" shall have the meanings set forth above.

B.    <u>Additional Defined Terms</u>.  As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

1.    "Beneficial Interest" shall mean a participating beneficial interest in the Liquidating Trust issued pursuant to the Plan and this Agreement to the holder of a class 4 allowed claim under the Plan.

2.    "Committee" shall mean the Official Committee of Creditors Holding Unsecured Claims

3.    "Holders" shall mean the owners of a Beneficial Interest.

4.    "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

5.    "Liquidating Trust" shall mean the Liquidating Trust formed pursuant to the Plan and this Agreement.

6.    "Liquidating Trust Assets" shall mean all of the tangible and intangible real and personal property transferred to and vested in the Liquidating Trust pursuant to the Plan and this Agreement.

7.    "Net Sale Proceeds" shall mean the net cash proceeds realized by the Liquidating Trust in connection with the sale or other disposition of any of the Trust Estate, after deduction of any and all brokerage commissions and other normal and customary closing costs and expenses.

8.    "Registrar and Transfer Agent" shall mean the Trustee or any agent or designee appointed by the Trustee.

9.    "Trust Estate" shall mean any or all of the Liquidating Trust Assets.

10.    "Trust Register" shall mean the books kept by the Registrar and Transfer Agent for the registration of Beneficial Interests and in which shall be recorded the names and addresses of the Holders and the Classes and amounts of their Allowed Claims.

11.    "Trustee" shall have the meaning ascribed to that term above, and any duly appointed successor, not in their individual capacity, but solely as a trustee hereunder.

C.    <u>Terms Defined in Plan</u>.  Terms used in this Agreement without definition herein shall have the meanings assigned to them in the Plan.  The rules of construction applicable to the Plan shall also apply to this Agreement.

II.    Declaration of Trust.

A.    Creation of Liquidating Trust.  Pursuant to the Plan and the Plan Confirmation Order, and as of the Plan Effective Date, the Reorganized Debtor and the Trustee hereby irrevocably create the Liquidating Trust for the benefit of the Holders.  The name of the Liquidating Trust shall be "The Liquidating Trust."  The Liquidating Trust shall terminate only in accordance with the provisions of the Plan and this Agreement.  The Liquidation Trust is a creditors liquidating trust for all purposes, including Treasury Regulation Section 301.7701-4(d) and the provisions of IRS Rev. Proc. 94-45 are incorporated herein.  Pursuant to IRS Rev. Proc. 94-45, the Liquidating Trust shall be a grantor trust.

B.    Property in the Liquidating Trust.  The Liquidating Trust shall hold the legal title to the Trust Estate and shall hold such property in trust to be administered and disposed of by it pursuant to the terms of the Plan and this Agreement for the benefit of the Holders.  The Trustee is authorized to make disbursements and payments from the Liquidating Trust in accordance with the Plan and this Agreement.  The equity interests held by the holders of the class 4 allowed claims in the Reorganized Debtor through this Liquidating Trust are subject to potential dilution as provided for in the Plan.

C.    Purpose of Liquidating Trust.  The Liquidating Trust is organized for the purposes of collecting, holding and liquidating the Trust Estate, making payments to the Holders, and administering, compromising, settling, withdrawing, objecting to, or litigating objections to disputed claims, and prosecuting Causes of Action (as defined in the Plan) with no objective to engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

D.    Number of Trustees.  There shall be one (1) Trustee unless the Holders determine by a majority vote of those who elect to vote that there shall be a different number of Trustees. The resignation, removal, incapacity or the Trustee shall not operate to terminate the Liquidating Trust.

III.    Beneficial Interests.

A.    Non-Certificated.  Beneficial Interests will not be evidenced by any certificate or other instrument or document.  Upon the Plan Effective Date, each entity who is the holder of a class 4 allowed claim shall automatically become the owner of a Beneficial Interest on a pro rata basis based upon the amounts of their class 4 allowed claims.

B.    Transferability. Any Holder may at any time sell their Beneficial Interest to another Holder.  A Holder who is unable to sell their Beneficial Interest to another Holder shall have the right to sell their Beneficial Interest to a third party, provided the third party is a bona fide purchaser for value ("BFP") who has made a written purchase offer, and further provided that the Reorganized Debtor (if the Reorganized Debtor is interested in exercising a right of redemption), and then the New Investor (if the Reorganized Debtor is not interested in exercising a right of redemption) are provided rights of first refusal to purchase such Beneficial Interest on the same terms as offered to the Holder by the BFP.  The selling Holder shall be required to provide the Reorganized Debtor and the New Investor with a copy of the BFP's

written offer. The Reorganized Debtor shall have ten days after receipt of a copy of the BFP's written offer to exercise its right of redemption, and the New Investor shall have ten days thereafter to purchase the Holder's Beneficial Interest if the Reorganized Debtor does not exercise its right of redemption. To the extent necessary, the Trustee shall establish additional reasonable procedures for the implementation of these purchase rights. The Reorganized Debtor also has the right, pursuant to the Plan, to purchase the Liquidating Trust's equity interest in the Reorganized Debtor for a period of five (5) years following the Plan Effective Date on the terms set forth in the Plan.

C.    <u>Absolute Owners</u>. The Liquidating Trust and the Trustee may deem and treat each Holder as the absolute owner of the underlying Beneficial Interest for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

D.    <u>No Required Meetings or Votes</u>. The Trustee is not required to call or conduct any meeting of all or any of the Holders. The Trustee is not required to solicit, obtain the vote or consent of, or give any notice to, any of the Holders with respect to any action authorized or permitted under the Plan, this Agreement or any order of the Bankruptcy Court. The Trustee may, however, discuss any proposed action with any one or more of the Holders as the Trustee, in its sole and absolute discretion, deems appropriate.

E.    <u>Trustee as Holder</u>. The Trustee may be a Holder.

IV.    <u>Delivery and Acceptance of Trust Estate</u>.

A.    <u>Conveyance to the Liquidating Trust</u>. For tax purposes, Holders shall be deemed to have transferred and assigned all of the Liquidating Trust Assets and Causes of Action to the Liquidating Trust. The Liquidating Trust, or the Trustee on behalf of the Liquidating Trust, shall become the owner and holder of all privileges, including the attorney-client privilege owned or held by the Committee, whether before or after the Petition Date. At any time and from time to time after the date hereof at the Trustee's request and without further consideration, the Reorganized Debtor shall execute and deliver such instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Trustee may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Trust Estate to the Liquidating Trust and all privileges to the Liquidating Trust or the Trustee on behalf of the Liquidating Trust.

B.    <u>Acceptance of Conveyance</u>. The Trustee is hereby directed to, and the Trustee agrees that it will:

1.    accept delivery of the Trust Estate on behalf of the Liquidating Trust;

2.    accept from the Reorganized Debtor all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance required to be delivered by the Reorganized Debtor with respect to the Trust Estate transferred to the Liquidating Trust or the Trustee on behalf of the Liquidating Trust pursuant to or in connection with the Plan, the Plan Confirmation Order or this Agreement; and

3.      take such other action as may be required of the Liquidating Trust hereunder, including the receipt and acceptance as part of the Trust Estate of any property, instruments and choses in action, which the Trustee may receive in connection with or in consideration of the Trust Estate.

C.      No Interest Retained by the Reorganized Debtor.  The Reorganized Debtor shall retain no interest in the Trust Estate or the Liquidating Trust.

V.      Administration of Trust Estate.

A.      Reserves.  As soon as funds becomes available in the Trust Estate, the Trustee shall establish and maintain sufficient reserves for expenses of the Liquidating Trust, unclaimed distributions, and disputed claims, as the Trustee deems necessary or otherwise ordered by the Bankruptcy Court.

B.      Powers of the Trustee.

1.      Administrative Powers.  During the Trustee's administration of the Liquidating Trust, and subject to the Plan, the Plan Confirmation Order and this Agreement, the Liquidating Trust and the Trustee on behalf of the Liquidating Trust may, and where required by the Plan, shall, exercise the power:

i.      to receive and hold all the Liquidating Trust Assets and to have exclusive possession and control thereof for the purposes set forth in Section II(C) hereof;

ii.      to enter into, perform and exercise rights under contracts binding upon the Liquidating Trust (but not upon the Trustee in his individual capacity) which are reasonably incident to the administration of the Liquidating Trust and which the Trustee, in the exercise of his judgment, believes to be in the best interests of the Liquidating Trust;

iii.      to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which the reserves or other Cash and property of the Liquidating Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Estate as permitted or required under the Plan or this Agreement;

iv.      to employ and compensate attorneys (in addition to those attorneys employed and compensated pursuant to Section V(B)(2) hereof), accountants, appraisers, property managers, disbursing agents, brokers, realtors, expert witnesses, insurance adjusters, or any successor or other persons whose services may be necessary or advisable in the judgment of the Trustee in accordance with the terms of the Plan, and to pay from the Trust Estate reasonable compensation to such attorneys, accountants, appraisers, property managers, disbursing agents, brokers, realtors, expert witnesses, insurance adjuster or any successor, or other persons (including, when necessary or appropriate, contingent fee or commission based arrangements) in accordance with the terms of the Plan;

v.      to hold, administer, market, and lease (for the purposes of holding for sale) the Liquidating Trust Assets;

vi.    to sell or otherwise dispose of the Liquidating Trust Assets in accordance with the Plan;

vii.    to collect and receive any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Trust Estate and to distribute the same to the Holders in accordance with the terms of the Plan and this Agreement;

viii.    to pay any and all necessary fees and expenses attributable or related to the management, maintenance, administration, preservation or liquidation of the Trust Estate and to establish a reserve to pay for any expenses after termination of the Liquidating Trust, such as for preparation of final tax returns;

ix.    to investigate, file, compromise, settle, withdraw or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) or in any other appropriate court or tribunal, litigation claims, objections to disputed administrative expenses and disputed claims, and to exercise any and all rights and perform any and all obligations of the Liquidating Trust, under the Plan, this Agreement or otherwise. Notwithstanding the foregoing, the Trustee shall not compromise or settle any material claims or matters without first providing at least fourteen (14) days prior written notice thereof to the Holders (provided that delivery of such notice shall be an accommodation only, and Trustee shall be allowed to proceed with such compromise or settlement in its prudent business judgment notwithstanding objection from certain Holders);

x.    to sue or be sued in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Trustee or the Holders;

xi.    to represent the interests of the Holders with respect to any matters relating to the Plan, this Agreement or the Liquidating Trust affecting the rights of the Holders solely in their capacity as Holders;

xii.    to appoint the one (1) member of the Management Committee of the Reorganized Debtor to be appointed by the Liquidating Trust, as provided for in the Plan;

xiii.    to prosecute, exercise or enforce all litigation claims (including the Causes of Action) and the rights, claims, powers, objections and actions of the Debtors and their estates under sections 363, 365 and 501 to 558, inclusive, of the Bankruptcy Code whether or not such litigation was commenced by the Debtors prior to the Plan Effective Date;

xiv.    to act as representatives of the Debtors' bankruptcy estates under section 1123(b) of the Bankruptcy Code or otherwise;

xv.    to reimburse the Trustee for all expenses, damages, losses, etc. that the Trustee incurs in connection with the Liquidating Trust that are not due to the willful misconduct of the Trustee; and

xvi.    to do any and all other things, not in violation of any other terms of the Plan or this Agreement, which, in the judgment of the Trustee, are necessary or

70

appropriate to carry out the terms or purposes of the Plan, this Agreement, the Liquidating Trust or for the proper liquidation, management, investment and distribution of the Liquidating Trust Assets in accordance with the provisions of the Plan and this Agreement.

        2.    <u>Retention of Committee's Attorneys</u>. The Liquidating Trust is authorized to employ and compensate the attorneys employed by the Committee. Any actual or potential conflict of interest which might otherwise preclude such employment is waived and the Reorganized Debtor and the Trustee acknowledge that they have received full disclosure of such conflict, and hereby consent to such continued employment.

        3.    <u>Objections to Disputed Administrative Expenses and Disputed Claims</u>. From and after the Plan Effective Date, the Liquidating Trust, through the Trustee, shall be the sole representative of the Debtors' Estates for the purposes of investigating, settling, compromising, objecting to, and litigating in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to disputed claims held by any insiders of the Debtors, except as otherwise provided in the Plan, and the prosecution of any Causes of Action (whether that involves commencing such prosecution or continuing with the prosecution previously commenced by the Debtors).

    C.    <u>Limitations on Trustee; Investments</u>.

        1.    <u>No Trade or Business for Liquidating Trust</u>. The Trustee shall carry out the purposes of the Plan, this Agreement and the Liquidating Trust and the directions contained herein and shall not at any time cause the Liquidating Trust to enter into or engage in any business (except as may be consistent with the limited purposes of the Liquidating Trust), including the purchase of any asset or property (other than such assets or property as are necessary to carry out the purposes of the Plan, this Agreement or the Liquidating Trust, on behalf of the Liquidating Trust or the Holders). The Trustee is directed to take all actions necessary or appropriate to dispose of the Trust Estate in as prompt, efficient and orderly a fashion as possible, to make timely distributions of the Trust Estate to the Holders, and to otherwise not unduly prolong the duration of the Liquidating Trust. Pursuant to IRS Rev. Proc. 94-45, the Liquidating Trust shall distribute the Trust Estate at least annually to the Holders, except that the Liquidating Trust may retain an amount of funds deemed by the Trustee to be reasonably necessary to enable the Liquidating Trust to satisfy claims and contingent liabilities (including disputed claims).

        2.    <u>Investments</u>. The Trustee shall invest any funds held at any time as part of the Trust Estate, and funds in any reserves or escrows established pursuant to the terms of the Plan or this Agreement, only in investments authorized by IRS Rev. Proc. 94-45 ("Permitted Investments").

        3.    <u>Transferee Liabilities</u>. If any liability shall be asserted against the Liquidating Trust as transferee of the Trust Estate or any other property or assets on account of any claimed liability of or through the Debtors, the Trustee may use such part of the Trust Estate as may be necessary in contesting any such claimed liability and in payment, compromise, settlement and discharge thereof on terms satisfactory to the Trustee. In no event shall the Trustee be required or obligated to use hisr own property, funds or assets for any such purposes.

D.   <u>Administration of Trust</u>.  In administering the Liquidating Trust, the Trustee, subject to the express limitations contained in the Plan and this Agreement, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as he may deem necessary or appropriate to carry out the purposes of the Plan, this Agreement and the Liquidating Trust.  The Trustee shall not commingle any of the Trust Estate with the property of the Trustee or any other entity.

E.   <u>Payment of Expenses and Other Liabilities</u>.  The Trustee shall pay from the Trust Estate all expenses, charges, liabilities and obligations of the Liquidating Trust, including such debts, liabilities, or obligations as may be payable from the Trust Estate, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses in connection with or arising out of the execution or administration of the Liquidating Trust and the Trust Estate, and such other payments and disbursements as are provided for in the Plan or this Agreement or which may be necessary or appropriate charges against the Liquidating Trust and the Trust Estate, and the Trustee, in his judgment, may, from time to time, make provision by reserve or otherwise, out of the Trust Estate, for such amount or amounts as the Trustee in his judgment may determine to be necessary or appropriate to meet or satisfy unascertained, unliquidated or contingent liabilities of the Liquidating Trust or the Trustee.

F.   <u>Tax Requirements</u>.  The Liquidating Trust shall comply with all payment, withholding and reporting requirements imposed by any federal, state or local laws.  All distributions of cash by the Liquidating Trust shall be subject to all such payment, withholding and reporting requirements.  The Liquidating Trust shall report and pay any taxes that may be imposed on the Liquidating Trust, the reserve for disputed claims, the reserve for unclaimed distributions and the Liquidating Trust's expense reserve by any federal, state or local laws.  As a condition to the receipt of any distributions under the Plan, the Holders may be required to provide the Liquidating Trust with information or documents required under applicable law for tax or other purposes.  Any Holder to whom a notice is mailed requesting such information or documents but who fails to deliver such information or documents to the Liquidating Trust within three months after the notice is mailed shall be forever barred from thereafter receiving any distributions from the Liquidating Trust and the amounts to which such Holder is no longer entitled shall be reallocated to the other Holders on a pro rata basis.  For tax purposes, Holders shall be treated as the grantors (as well as the beneficiaries) of the Liquidating Trust.  For tax purposes, Holders shall be deemed to have transferred and assigned all of the Liquidating Trust Assets and Causes of Action to the Liquidating Trust.  The intent of this Liquidating Trust is to treat this Liquidating Trust as a grantor trust for tax purposes, with the Holders deemed to be the grantors who transfer the Liquidating Trust Assets and Causes of Action to the Liquidating Trust.  All of the Liquidating Trust's income shall be subject to tax on a current basis, allocated to the Holders, with income to be allocated to Holders based on the amount of the Holders' Beneficial Interests.  The Trustee shall arrange for the Liquidating Trust to (i) obtain a taxpayer identification number for the Liquidating Trust, (ii) arrange for the Liquidating Trust to file any required tax returns, and (iii) send to the Holders any required K-1's reflecting the Holders' allocable portion of the income and deductions of the Liquidating Trust.  The Trustee shall have the right to cause the Liquidating Trust to file final tax or information returns on behalf of the Liquidating Trust after the termination of the Liquidating Trust.  The Trustee shall have no liability in the event the IRS or other taxing authority disputes the intended tax treatment of the Liquidating Trust; however, the Trustee may contest such action.

G.  Liabilities of the Liquidating Trust.  The Liquidating Trust shall have no liabilities whatsoever except (a) in accordance with the Plan and this Agreement and (b) the obligation to pay and reimburse the Trustee and the professionals, agents and representatives of the Liquidating Trust in accordance with the Plan and this Agreement.  Without limiting the foregoing, the Liquidating Trust shall have no liability for any expenses of or claims against the Debtors.

H.  Compensation of Trustee; Reimbursement of Expenses.  The Trustee shall be entitled to compensation and reimbursement as follows:

1.  Upon the Effective Date, and in consideration for the acceptance of this engagement, the Trustee shall receive from the Trust Estate the sum of Five Thousand Dollars ($5,000), which sum shall be deemed earned upon receipt.

2.  The Trustee shall receive compensation for his serves hereunder provided from and after the Effective Date and through the dissolution and termination of the Liquidating Trust, at an hourly rate of $_____, with such compensation being paid to the Trustee on a monthly basis from the assets of the Trust Estate.  The Trustee is authorized to make such disbursements of funds from the Trust Estate to himself on a monthly basis.  Should the Trust Estate be inadequate to pay such fees in any given month, such unpaid fees shall accrue and be payable from next available Trust Estate funds.  The Trustee shall maintain records of such compensable time incurred each month, and related payments to the Trustee, and shall make such records available to the Holders upon reasonable advance written request therefore.

3.  In addition to the compensation referenced above, the Trustee shall be entitled to be reimbursed from the Liquidating Trust for his actual, necessary and reasonable third-party expenses incurred in the performance of his duties under the Plan and this Agreement.  The Trustee shall be entitled to engage in such other activities as he deems appropriate, provided that the Trustee shall devote such time as is necessary to fulfill all of his duties under the Plan and this Agreement.

VI.  Source of Payments; Distributions

A.  Payments from Trust Estate.  All payments to be made to the Holders under the Plan and this Agreement (with the exception of the Plan Effective Date cash payment to be made by the Reorganized Debtor directly to the Holders) shall be made only from the Liquidating Trust Assets and only to the extent that the Liquidating Trust shall have received sufficient assets, income or proceeds of the Trust Estate to make such payments in accordance with the Plan and this Agreement.  Each Holder shall look solely to the Liquidating Trust Assets, and not to the Trustee or any other representatives of the Liquidating Trust in their personal, individual or corporate capacities, or to the Debtors or the Reorganized Debtor, for distribution to such Holder as provided in the Plan and this Agreement.

B.  Distributions Pursuant to Plan and Agreement.  The Liquidating Trust shall distribute the Liquidating Trust Assets in accordance with the Plan and this Agreement.

1.  Timing Of Distributions.  All distributions of available cash made by the Liquidating Trust shall be as often, in the sole discretion of the Liquidating Trustee, as there is

available cash in an amount sufficient to make a distribution of available cash practicable in comparison to the costs of making a distribution. The distribution date for the final distribution of all remaining available cash by the Liquidating Trust shall be when all of the property, claims, rights and causes of action of the Liquidating Trust have been reduced to cash or abandoned and the Liquidating Trustee has performed all of his duties under the Plan and this Agreement.

2.      Disbursing Agent.  The Liquidating Trust shall serve as the disbursing agent for all distributions made by the Liquidating Trust. All distributions of cash by the Liquidating Trust shall be made in lawful currency of the United States, by checks drawn on or, at the option of the Liquidating Trust, wire transfers from, one or more United States banks selected by the Liquidating Trust from the list of approved depositories issued by the United States Trustee.

3.      Checks Not Cashed.  Any and all checks issued on account of allowed administrative expenses or allowed claims shall be null and void if not cashed within three months of issuance. The holder of an allowed administrative expense or allowed claim may thereafter make a written request for the Liquidating Trust to issue a replacement check until three months following issuance of the first check that became null and void. Thereafter, all allowed administrative expenses and allowed claims in respect of null and void checks shall be forever barred from any distributions from the Liquidating Trust and the cash represented by the null and void checks shall be used by the Liquidating Trust to make other distributions of cash required by the Plan.

4.      Delivery Of Distributions.  Unless otherwise agreed by the Liquidating Trust, each distribution of cash by the Liquidating Trust on each distribution date shall be made by first class United States mail, postage prepaid, to the holder of an allowed administrative expense or allowed claim at the latest address set forth on a request for payment of an allowed administrative expense, a proof of claim filed with the Bankruptcy Court on account of an allowed claim, the Schedules and Statements filed by the Debtor, or a written notice of change of address delivered to the Liquidating Trust after the Effective Date, or a notice delivered to the Debtor or the Liquidating Trust under Bankruptcy Rule 3001 identifying the name and address of the entity to whom an allowed administrative expense or an allowed claim has been transferred prior to the Effective Date, whichever is the most recent. The Liquidating Trust shall not be required to make any other effort to locate or ascertain any address for any distribution.

5.      Unclaimed Distributions.  Any distributions of cash under the Plan that are returned as unclaimed or undeliverable shall be allocated to a reserve administered by the Liquidating Trust. The Liquidating Trust is not required to attempt delivery of subsequent distribution to an address from which a prior distribution was returned as unclaimed or undeliverable.

6.      Disputed Administrative Expenses And Disputed Claims.  For purposes of making distributions under the Plan, on each distribution date the Liquidating Trust shall allocate to a reserve administered by the Liquidating Trust the amount of cash that would be distributed to the holders of disputed claims if they held allowed claims. No cash shall be

distributed to the holder of any disputed claim until the next distribution date following the date on which the disputed claim is resolved as an allowed claim.

    7.    <u>Amount Reserved for Disputed Claims</u>.    The Liquidating Trust shall allocate cash to the reserve for disputed claims on the basis of the face amount of each disputed claim unless the Bankruptcy Court authorizes the Liquidating Trust to use a lower amount upon motion or stipulation after notice and opportunity for hearing to the holder of the disputed claim and other parties in interest.    The Bankruptcy Court shall determine the amount of cash to be allocated to the reserve for disputed claims on account of any unliquidated disputed claim by estimation upon motion or stipulation after notice and opportunity for hearing to the holder of the disputed claim and other parties in interest.

    8.    <u>Payment Of Resolved Disputed Claims</u>.

        i.    On the distribution date following the date on which a disputed claim is resolved as an allowed claim, the Liquidating Trust shall make the appropriate distribution of the cash allocated to the reserve for disputed claims to the holder of the allowed claim (or such lesser pro rata amount if resolved as an allowed claim in an amount less than the amount used to determine the reserve).    If an entity holds one or more allowed claims and one or more disputed claims, no distribution of cash shall be made to that entity by the Liquidating Trust until all disputed claims held by that entity have been resolved.

        ii.    If a disputed claim is resolved as an allowed claim in an amount that is greater than the amount for which cash was reserved in the reserve for disputed claims, the holder of the allowed claim shall receive distributions from the Liquidating Trust in an amount equal to the amount that would have been received if the Liquidating Trust had allocated cash to the reserve for disputed claims on the basis of the amount of the allowed claim.    Any distributions of cash to which the holders of allowed claims would have been entitled had cash been reserved in the reserve for disputed claims on account of the full amount of the allowed claims shall be made up pro rata from subsequent distributions of available cash before any other distributions of available cash are made to other entities.

        iii.    Any cash allocated to the reserve for disputed claims on account of a disputed claim that is resolved, in whole or in part, as not qualifying as an allowed claim shall, to the extent it does not qualify as an allowed claim, be reallocated to make other distributions of cash required by the Plan.

    C.    <u>Maintenance of Records</u>.    The Liquidating Trust shall establish and maintain such books and records as the Trustee deems necessary or appropriate.    To the extent the Trustee is required to report to anyone, the Trustee shall have the authority to cause the Liquidating Trust to prepare and transmit periodic reports.

    D.    <u>Reserves</u>.    The Trustee shall establish and maintain reserves for expenses of the Liquidating Trust, disputed claims, and unclaimed distributions in accordance with the Plan and this Agreement.    The Trustee may establish and maintain such other reserves, accounting entries, escrow accounts or similar items as the Trustee deems necessary or appropriate.    All reserves, accounting entries, escrows and similar items and the amounts allocable to each are

solely for administrative convenience and the amounts allocated to each need not be segregated and may be commingled in one or more Permitted Investments as the Trustee deems necessary or appropriate.

E.    No Fractional Distributions.  No distributions to Holders in fractions of cents (i.e. fractions of hundredths of U.S. Dollars) shall be made by the Liquidating Trust.  Any distribution to a Holder that would include a fraction of a cent shall be rounded down to the nearest whole cent.  The aggregate amount of fractions of cents that are not distributed pursuant to this provision on the final distribution date shall be donated to a charitable organization designated by the Trustee.

F.    Dissolution and Termination.

1.    Dissolution Event.  The Liquidating Trust shall be dissolved upon either (i) the determination by the Trustee to dissolve the Liquidating Trust upon performance and completion of all obligations and duties of the Liquidating Trust and the Trustee under the Plan and this Agreement, including, without limitation, the distribution of the proceeds of the Trust Estate to the Holders as set forth in the Plan and this Agreement, or (ii) the majority vote of the Holders who elect to vote, with the majority vote for such purpose meaning more than 50% of the Beneficial Interest held by the voting Holders (and not more than 50% of the number of voting Holders).  For purposes of such majority vote by the Holders, the vote of any Holder that is an insider of the Reorganized Debtor (e.g., Richard Reinis and Roger Glickman) shall be disregarded.

VII.    Other Duties of the Trustee.

A.    Management of Trust Estate.  With respect to the Liquidating Trust Assets, the Trustee may, if sufficient funds are available, purchase and maintain in existence such insurance as the Trustee deems necessary or appropriate from time to time to protect the Liquidating Trust, the Trustee's (including the officers, employees, professionals, agents or representatives of the Liquidating Trust) and the Holders' interests in the Liquidating Trust Assets or from any potential claims or liabilities relating thereto or the distribution thereof.

B.    No Implied Duties.  The Trustee shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder except as expressly provided in the Plan or this Agreement, and no implied duties or obligations whatsoever of the Trustee shall be read into this Agreement.  Except as otherwise expressly provided in the Plan or this Agreement, the Trustee shall have no duties or obligations under any laws or statutes otherwise applicable to trusts.

VIII.    Concerning the Trustee.

A.    Acceptance by Trustee.  The Trustee accepts the Liquidating Trust hereby created for the benefit of the Holders and agree to act as the Trustee of the Liquidating Trust pursuant to the terms of the Plan and this Agreement.  The Trustee shall have and exercise the rights and powers granted in the Plan and this Agreement and shall be charged solely with the performance of the duties declared in the Plan and this Agreement on the part of the Trustee.

The Trustee also agrees to receive and disburse all funds actually received by them constituting part of the Trust Estate pursuant to the terms of the Plan and this Agreement.

B.     Discretionary Submission of Questions.  Subject to the provisions of the Plan and this Agreement, the Trustee, in his judgment, may, but shall not be required to, submit to the Bankruptcy Court, from time to time, after notice and opportunity for hearing have been provided to the Holders and Special Notice Entities, unless otherwise ordered by the Bankruptcy Court, any question or questions with respect to which the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Trustee with respect to the Liquidating Trust or the Trust Estate, or any part thereof, and the administration and distribution of the Liquidating Trust or the Trust Estate.   All costs and expenses incurred by the Trustee in the exercise of any right, power or authority conferred by the Plan or this Agreement shall be costs and expenses of the Trust Estate.

C.     Liability of the Trustee.

1.     Limitation on Liability.  No provision of the Plan or this Agreement shall be construed to impose any liability upon the Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trust unless it shall be proven that the actions or omissions of such entity are not authorized under the Plan and this Agreement and constituted willful misconduct in the exercise of, or failure to exercise, any right or power under the Plan or this Agreement.

2.     Reliance on Certificates or Opinions.   In the absence of willful misconduct on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of the Plan or this Agreement.

3.     Discretion of Trustee.  Except as otherwise expressly provided in the Plan or this Agreement, the Trustee, within the limitations and restrictions expressed and imposed in the Plan and this Agreement, may act freely under all or any of the rights, powers and authority conferred in the Plan or this Agreement in all matters concerning the Liquidating Trust and the Trust Estate without the necessity of obtaining the consent or permission or authorization of the Holders, the Debtor, the Bankruptcy Court, or of any official or officer; and the rights, powers and authority conferred on the Trustee by the Plan and this Agreement are conferred in contemplation of such freedom of action within the limitations and restrictions so expressed and imposed; provided, however, that the Trustee shall not be liable for any error unless it shall be proved that the Trustee acted in a manner which constituted willful misconduct.

D.    Reliance by Trustee.

1.    Genuineness of Documents.  The Trustee and the officers, employees, professionals, agents and representatives of the Liquidating Trust may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by them to be genuine and to have been signed, made, entered or presented by the proper party, parties, official, officials, entity or entities.

2.    Retention of Professionals.  The Trustee may consult with legal counsel and with accountants and other professionals or experts, and the Liquidating Trust shall have the right to employ and to compensate any such professionals, with the approval of the Bankruptcy Court, as the Trustee deems appropriate.

3.    Reliance on Trustee.  No entity dealing with the Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trust shall be obligated to see to the application of any funds, securities, or other property paid or delivered to any of them or the Liquidating Trust or to inquire into the expediency or propriety of any transaction or the right, power or authority of the Trustee to enter into or consummate any transaction upon such terms as the Trustee deems necessary or appropriate.

E.    Indemnification.

1.    Payment of Expenses.  Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to above may be paid by the Liquidating Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the Trustee, officer, employee, professional, agent or representative of the Liquidating Trust to repay such amount if it shall ultimately be determined that such entity is not entitled to be indemnified.  The Liquidating Trust hereby indemnifies the Trustee in the event that any judgment is entered against him or any tax liability is asserted against him in connection with or on account of his role serving as the Trustee, and the Liquidating Trust hereby agrees to pay any costs of defense (including attorneys' fees and costs) incurred by the Trustee in defending against any such action, to the extent the Liquidation Trust has funds to do so.

2.    Insurance.  The Liquidating Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Trustee and the officers, employees, professionals, agents and representatives of the Liquidating Trust of and from any liability.  The terms "Trustee," "officers" "employees" "professionals," "agents" and "representatives" as used in this Agreement, where applicable, include the heirs, successors, executors, administrators, personal representatives, or estates of such persons or entities.

F.    Costs and Expenses of Trustee.

1.    Costs and Expenses.  The Trustee shall pay out of the Trust Estate all reasonable costs, expenses and obligations incurred by the Trustee in carrying out his duties under the Plan and this Agreement or in any manner connected, incidental or related to the administration of the Liquidating Trust, including:

i.    any reasonable fees and expenses of attorneys, accountants, investment advisors, expert witnesses, insurance adjustors, disbursing agents, property managers, realtors, brokers, professionals or other entities whom the Trustee may deem necessary or appropriate to employ in connection with the Liquidating Trust, or on his own behalf in accordance with the terms of the Plan or this Agreement; and

ii.    any taxes, charges and assessments which may be owed by, or levied or assessed against, the Liquidating Trust, the Trust Estate or any property held in trust hereunder.

G.    Resignation and Removal.

1.    Resignation of Administration Trustee.  The Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the date of resignation set forth in the notice of resignation.  Such resignation shall become effective after the day specified in such notice.

2.    Involuntary Removal of Trustee.  The Trustee may be removed involuntarily by a majority vote of of all of the Holders who elect to vote for good cause shown and only upon order of the Bankruptcy Court after notice and a hearing.

3.    Appointment of a Successor Trustee.  If, at any time, the Trustee resigns, is removed or becomes incapable of acting, the vacancy may be replaced by a majority vote of all of the Holders who elect to vote, and in the absence of such replacement by the Holders, the vacancy may be filled by the Bankruptcy Court.

IX.    Action by Trustee.

A.    Delegation of Powers and Duties.  The Trustee may delegate any of his powers or duties to one or more officers, employees, professionals, agents or representatives as the Trustee deem necessary or appropriate.  In carrying out any of the powers or duties delegated to them, such officers, employees, professionals, agents and representatives shall be entitled to the same rights, claims and protections as the Trustee would have had with respect thereto.

X.    Supplements and Amendments to this Agreement.

A.    Supplements and Amendment.  Subject to the provisions of the Plan and this Agreement, at any time and from time to time, and subject to approval by the Bankruptcy Court if sought by the Trustee pursuant to Section VIII(B) of this Agreement, the Trustee may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Agreement, or amendments thereto.  In no event shall this Agreement be amended so as to change the purpose of the Liquidating Trust as set forth in the Plan or Section II above without the prior approval of the Bankruptcy Court after notice and opportunity for a hearing having been provided to the Holders and the Special Notice Entities.

B.    Trustee's Declining to Execute Documents.  If, in the reasonable opinion of the Trustee, any document required to be executed pursuant to the terms hereof materially and

adversely affects any immunity or indemnity in favor of the Trustee under this Agreement, the Trustee may in his discretion decline to execute such document.

C.      Notice of Form of Supplement and Amendments Requiring Vote or Consent. A copy of each amendment or supplement (or a fair summary thereof) shall be filed with the Bankruptcy Court and furnished to the Holders promptly after the execution thereof, except that with respect to any proposed amendment or supplement for which the consent of the Holders is required, the form of such proposed supplement or amendment (or a fair summary thereof) shall be furnished to the Holders in accordance with any applicable law prior to the Trustee's seeking the approval thereof by the Holders.

D.      Notice and Effect of Executed Amendment. Upon the execution of any amendment or supplement, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Agreement of the Trustee and the Holders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

XI.   Miscellaneous.

A.      Title to Trust Estate.  No Holder shall possess legal ownership of, or have title to, any part of the Trust Estate and no Holder shall have an interest in any specific property of the Liquidating Trust.

B.      Sales of Assets of the Trust Estate. Any sale or other conveyance of any assets of the Trust Estate, or part thereof, by the Trustee made in accordance with the terms of the Plan and this Agreement shall bind the Liquidating Trust and the Holders and shall be effective to transfer or convey all right, title and interest of the Trustee, the Liquidating Trust and the Holders in and to such assets.

C.      Notices. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or by facsimile transmission (and confirmed by mail), or by overnight courier as follows:

[To Be Supplied]

D.      Severability.   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, unless the prohibition or unenforceability of such provision will materially change the purpose or effect of this Agreement.

E.      Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument, and facsimile signatures shall have the same force and effect as original signatures.

F.    Binding Agreement.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and his respective successors and assigns and any successor Trustee provided for in Section VIII, and his or her respective successors and assigns, and the Holders, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Holder shall bind their respective heirs, personal representatives, successors and assigns.

G.    Headings.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

H.    Construction.  Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neutral, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

I.    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law may apply, this Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of California (excluding conflict of law rules), including all matters of construction, validity and performance.

J.    Construction with the Plan.  The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes.  References herein to this Agreement shall refer only to this Agreement and shall not include the Plan unless otherwise indicated.  In the event that the Plan and this Agreement are in contradiction, the terms of the Plan shall prevail.

K.    Subject to Bankruptcy Court's Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over this Agreement and the Liquidating Trust, the Trust Estate, the Trustee and the Debtors to: (a) ensure that the purposes and intent of the Plan and this Agreement are carried out;  (b) issue any and all Orders and to take other actions necessary to the implementation of the Plan and this Agreement, such jurisdiction to include the jurisdiction contemplated by Section 1142 of the Bankruptcy Code; and (c) resolve any disputes regarding the employment or compensation of any officers, employees, professionals, agents or representatives of the Trustee or the Liquidating Trust.  All provisions of this Agreement are subject to such continuing jurisdiction of the Bankruptcy Court.  The Bankruptcy Court may interpret or enforce this Agreement upon request of a party in interest in accordance with the Bankruptcy Rules.

L.    Integration.  The Plan and this Agreement supersede all negotiations concerning their subject matter which preceded or accompanied the execution and delivery of this Agreement.  The Plan and this Agreement are intended as a final expression of agreement as to the terms set forth in the Plan and this Agreement and may not be contradicted by evidence of prior agreement or contemporaneous agreement.  The Plan and this Agreement are also intended as a complete and exclusive statement of their terms.

IN WITNESS WHEREOF, the parties have executed or have hereunto caused this Agreement to be duly executed, as of the day and year first above written.

DEBTORS:


By:_____
Its:_____


TRUSTEE:


By:_____
Its:_____

| In re:<br>GREAT CIRCLE FAMILY FOODS, LLC, et al.,<br><div align="right">Debtor(s).</div> | CHAPTER  11<br><br>CASE NUMBER  8:07-bk-12600-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing document described as **ORDER CONFIRMING DEBTORS'
SECOND AMENDED PLAN OF REORGANIZATION, AS MODIFIED**  will be served or was served **(a)**
on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to
controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served
by the court via NEF and hyperlink to the document. On _____, I checked the CM/ECF docket for
this bankruptcy case or adversary proceeding and determined that the following person(s) are on the
Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On June 1, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope
in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as
follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later
than 24 hours after the document is filed.*

Debtors
Roger E. Glickman, President and COO
Great Circle Family Foods, LLC
Dba Krispy Kreme Doughnuts
315 West 9th Street # 950
Los Angeles, CA 90015

Offices of the U.S. Trustee
Michael J. Hauser, Esq.
411 West Fourth Street,
Suite 9041
Santa Ana, CA 92701

Committee Counsel
Evan D. Smiley
Weiland, Golden, Smiley, Wang, et al.
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

Counsel for Bixby Land Company
Michael S. Greger, Esq./James A.
Timko, Esq.
Allen Matkins Leck Gamble, et al.
1900 Main Street, 5th Floor
Irvine, CA 92614-7321

RSN-Counsel for Krispy Kreme
Doughnut Corp.
Christopher R. Kaup, Esq.
Tiffany & Bosco, P.A.
Camelback Esplanade II
2525 East Camelback Road,
Third Floor
Phoenix, AZ 85016

Counsel for G.E.
Jeff Wegner
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102

Richard G. Reinis, Esq.
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite
2800
Los Angeles, CA 90067

☐  Service information continued on attached page

1

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 1, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Service by Personal Delivery
Honorable Erithe A. Smith
United States Bankruptcy Judge
411 West Fourth Street
Santa Ana, CA 92701

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 1, 2009 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9013-3.1**

2

| In re GREAT CIRCLE FAMILY FOODS, LLC, et al., | Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:07-bk-12600-ES |
|---|---|---|

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER CONFIRMING DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION, AS MODIFIED**  was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of June 1, 2009, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Ron Bender     rb@lnbrb.com
- Bradley D Blakeley     bblakeley@bandblaw.com
- Dustin P Branch     dustin.branch@kattenlaw.com
- Penn A Butler     pabutler@ssd.com
- Richard H Golubow     pj@winthropcouchot.com
- Michael S Greger     mgreger@allenmatkins.com
- Lawrence J Hilton     lhilton@hewittoneil.com, pgarnica@hewittoneil.com
- Bonnie M Holcomb     bonnie.holcomb@doj.ca.gov
- Robert E Huttenhoff     rhuttenhoff@shbllp.com
- Michael A Isaacs     misaacs@luce.com
- Monica Y Kim     myk@lnbrb.com
- Wendy A Loo     wendy.loo@lacity.org
- Hutchison B Meltzer     hmeltzer@wgllp.com
- Krikor J Meshefejian     kjm@lnbrb.com
- Ethan B Minkin     ethan.minkin@kutakrock.com
- Randall P Mroczynski     randym@cookseylaw.com
- Juliet Y Oh     jyo@lnbrb.com, jyo@lnbrb.com
- David M Poitras     dpoitras@jmbm.com
- Christian L Raisner     bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- Holly Roark     holly@roarklawoffices.com
- Julie H Rome-Banks     julie@bindermalter.com
- Martha E Romero     Romero@mromerolawfirm.com
- Gary B Rudolph     grudolph@sparberlaw.com
- Evan D Smiley     esmiley@wgllp.com
- Ovsanna Takvoryan     ovsanna@takvoryanlawgroup.com
- James A Timko     jtimko@allenmatkins.com
- Kim Tung     kt@lnbrb.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

3

1

2

☐    Service information continued on attached page

3

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

4

5

☐    Service information continued on attached page

6

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

7

8

Debtors
Roger E. Glickman, President and COO
Great Circle Family Foods, LLC
Dba Krispy Kreme Doughnuts
315 West 9th Street # 950
Los Angeles, CA 90015

Offices of the U.S. Trustee
Michael J. Hauser, Esq.
411 West Fourth Street,
Suite 9041
Santa Ana, CA 92701

Committee Counsel
Evan D. Smiley
Weiland, Golden, Smiley, Wang, et al.
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

9

10

Counsel for Bixby Land Company
Michael S. Greger, Esq./James A. Timko, Esq.
Allen Matkins Leck Gamble, et al.
1900 Main Street, 5th Floor
Irvine, CA 92614-7321

RSN-Counsel for Krispy Kreme Doughnut Corp.
Christopher R. Kaup, Esq.
Tiffany & Bosco, P.A.
Camelback Esplanade II
2525 East Camelback Road, Third Floor
Phoenix, AZ 85016

Counsel for G.E.
Jeff Wegner
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102

11

12

13

14

Richard G. Reinis, Esq.
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067

15

16

☐    Service information continued on attached page

17

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

18

*January 2009*                                                          **F 9021-1.1**

19

20

21

22

23

24

25