Stan S. Mallison (SBN 184191)
Hector R. Martinez (SBN 206336)
Marco A. Palau (SBN 242340)
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California 94612
Telephone: (510) 832-9999
Facsimile: (510) 832-1101
stanm@themmlawfirm.com
hectorm@themmlawfirm.com
mpalau@themmlawfirm.com

Counsel for Claimant DUC NGUYEN

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>GREAT CIRCLE FAMILY FOODS, LLC, et al.<br><br>Debtors<br><br>☒ Affects All Debtors<br>☐ Affects GCFF, LLC only<br>☐ Affects GCFF – Huntington Park, LLC only<br>☐ Affects GCFF – Orange, LLC only<br>☐ Affects GCFF – San Diego, LLC only<br>☐ Affects GCFF – Canoga, LLC only<br>☐ Affects GCFF – Ontario, LLC only<br><br>DUC NGUYEN,<br><br>Claimant/Plaintiff,<br><br>vs.<br><br>GREAT CIRCLE FAMILY FOODS, LLC, et al.<br><br>Debtors/Defendants. | Case No.: 8:07-bk-012600-ES<br><br>CHAPTER 11<br><br>Jointly Administered with Case Nos:<br><br>Case No. 8:07-bk-12603-ES<br>Case No. 8:07-bk-12605-ES<br>Case No. 8:07-bk-12606-ES<br>Case No. 8:07-bk-12602-ES<br>Case No. 8:07-bk-12604-ES<br><br>**AMENDED [ORIGINAL MOTION FILED UNDER INCORRECT EVENT CODE] DECLARATION OF AARON WOOLFSON IN SUPPORT OF MOTION AND MOTION FOR CONTINUANCE OF CLASS CERTIFICATION DEADLINE AND FOR SANCTIONS AGAINST STEPTOE & JOHNSON, COUNSEL FOR GREAT CIRCLE FAMILY FOODS, LLC**<br><br>Date: June 3, 2010<br>Time: 10:30 a.m.<br>Place: Courtroom 5A |

I, Aaron Woolfson, declare:

**Qualifications**

1. I am a founder of Telswitch Inc. and a managing partner of Merkt–Woolfson.

2. Telswitch Inc. builds and develops telephonic database service for several major telecommunications companies to manage their billing, as well as calculating and maintaining extensive databases related to the accurate calculation of the rates and rounding mechanisms used on telecommunications services.

3. Merkt-Woolfson produces billing and database mechanisms for banks to keep track of the paperwork that banks require to maintain mortgage and loan origination. It also provides extensive database management services to both government and private industries. My clients include the largest banks, military contractors, and publicly held telecommunications carriers where accuracy and accountability are a necessity.

4. I have extensive experience in creating, managing, and analyzing large databases, including payroll, timekeeping, telecommunications, and other proprietary databases. A typical transaction load on an average database maintained by my company is around 1 million records a day. I am accustomed to, and comfortable with, working with a large amount of data across a variety of industries, including for litigation purposes.

5. I have provided payroll and timekeeping database analysis for attorneys in Northern and Southern California involving numerous wage and hour class action cases.

6. I have been retained by the Law Offices of Mallison & Martinez to review a collection of timekeeping and payroll and sales data maintained by Great Circle for its employees.

7. My results are the consequence of my professional analysis of the databases provided to me.

**Conclusions**

8. It is my understanding that Great Circle utilizes an Hula™ Time Keeping system in their operations. Hula is a brand of restaurant Time Keeping and Point of Sale software that restaurants use in their operations

9. Hula maintains a rich set of features related to keeping track of Employees work-times and the in-and-out punches for various activities that make up the work day, including meal periods, rest breaks, and start-of-day in-punch, and finish-of-day out-punches;

10. Hula had a set of mechanisms that allows customers to customize reports and set up rules specific to the areas that they are conducting their business, and to set parameters related to pay and time keeping, and premiums that should be paid to the employees.

11. Hula has a well developed back-end database that is capable of providing reporting to payroll and accounting companies, for purposes of auditing and producing paychecks. There are a great number of companies, such as ADP, that integrate seamlessly into the Hula system, so that companies can send paychecks to their employees in an automated fashion.

12. It is my understanding that companies who use the Hula to keep track of employee hours generally maintain the following within the program:

a) A button to the employee to press to indicate the start-of-day time-in punch;
b) A button for the employee to press to indicate the finish-of-day time-out punch;
c) A button for the employee to press to indicate the start of a rest break;
d) A button for the employee to press to indicate the finish of a rest break;
e) A button for the employee to press to indicate the start of a meal period;
f) A button for the employee to press to indicate the finish of a meal period.

13. Hula's website states that they engage a network of support personnel who are tasked with providing assistance to companies in setting up their systems, maintaining their systems, and administering business-specific-functions of the Hula system.

14. A full set of data from a typical Hula system would provide all of the elements related to the work-day punches , including meal period in-and-out punches, break in-and-out punches, manager edits, scheduling information.

15. Great Circle did not provide the full set of data in the first production of data. It did not have all employees, and it did not have critical fields. For example, I did not see any meal period in- or out- punches provided in first set of data files that Great Circle provided. I did not see any rest break in- or out- punches in the first set of data files that Great Circle provided. I did not

see any premium pay provided to employees for missed meals or missed breaks the first set of data files that Great Circle provided.

16. If in fact the original production data was incomplete, then with a complete set of data, I would be able to prove that:

a) Employees worked shifts where they did not receive their rest breaks within the time by when they were supposed to have taken their rest breaks, if rest breaks had been recorded.

b) Employees worked shifts where they did not receive their meal periods within the time by when they where supposed to have taken their meal breaks, if meal breaks had been recorded.

c) Employees worked shifts where they did not receive compensation for missed or late meal periods or missed or late rest breaks;

d) Employees worked shifts that were less than 2 hours in length,

e) Accurately calculate overtime hours;

17. In more than 30 cases that I have been hired to provide database analysis or expert testimony on, I have never seen a set of data that was a) more incomplete or b) where significant portions of critical data - meal periods - were completely missing from the data. Very simply, this has incurred unnecessary time and expense spent on this case in a result of these two incomplete data productions.

**Original Files Received from Great Circle:**

18. In middle of February, I received a set of files named "GCFFLabor_Mgr.bak" and "GCFFLaborDB_Full 20100115_055445.bak" from defendants. These files contained Time Keeping, Schedule, and Edit information on Employees who worked at Krispy Kreme franchises.

19. These files were in the native Microsoft SQL Backup Set Format.

20. These files were recognizable by Microsoft SQL Management Studio as valid database backup sets.

21. This set of files contained time-in, and time-out (shift start and finish times), but did

not contain time-in or time-out for meal periods or rest breaks, to the extent that meal or rest breaks were recorded, but not presented in the actual data production.

**Procedures that I took to conduct Analysis:**

22. I placed the Time Keeping and Time Schedule information back into the native SQL format, a secure data server using the Microsoft SQL Management Studio.

23. I performed an analysis on the sets of data to determine the number of employees represented in the files, and the dates and times that those employees were scheduled, and when they allegedly worked.

24. I was not able to determine when they took their rest breaks, or had meal periods because the rest and meal break punch data was missing from the data. To the extent that there was any rest break or meal period in- and out- punch data, I am not able to perform analysis because I could not find any evidence.

25. However, I believe that the data exists, because I do see that the summary of the employee work day contains numbers relative to this information. I also see the column headers called "PaidBreakHours", and "UnPaidBreakHours" which contain sum totals for day's rest and meal periods, but I do not see the constituents of this data within the dbo. tLaborActDet database table, or anywhere else within the database provided.

26. It was the result of the analysis which I was hired to perform that I was able to determine that there was employee data missing from the initial production of data, and it was a result of my significant experience with working with databases that I was able to determine that the second production of data did not contain valid data.

**Data Missing:**

27. In early March, I informed Mallison & Martinez that there were significant portions of the employees missing from the files that were originally provided by defendants.

28. There were also significant amounts of data missing from the data files that were originally produced, including time punches related to meal period and rest breaks.

29. I requested that Mallison & Martinez contact Defendant's Counsel to request that the additional data be provided in a format that was equivalent to the format of the originally produced

data.

**Additional Files Received, but Invalid Data:**

30. An additional production was produced.

31. I reviewed the additional production of data and found it to be in an unrecognizable format – it was inconsistent with the format of the first production of data, and it could not be recognized with the same tools that I used to import and analyze the first set of data.

32. The USB drive contained a single file named "GCFF_MarchProduction.zip". The file appeared to be in a standard compressed format that I commonly encounter in my field of work.

33. When I opened the ZIP file, the contents were a single file named "GCFF_MarchProduction_1" which did not appear to be in the same naming convention as the original files received.

34. I attempted to place the data back into native SQL database format using Microsoft SQL Management Studio to read the file named "GCFF_MarchProduction_1", following the exact same steps that I had followed during my initial analysis,

35. Despite placing a .BAK in the name of the file, per instructions from Great Circle, I was still unable to read the file with the tools that I opened the first set of production with.

36. I received the following error from the Microsoft SQL Management Studio when attempting to place the data back into the native SQL format.




37. I then inspected the file using a program called "UltraEdit32" , to look at the raw contents of the file;

38. The file does not appear to contain valid data that is native to the Microsoft SQL Management Studio.

39. Despite the initial "header" of the file appearing as though it was created using the Microsoft SQL Management Studio, the remaining data in the file appears to be all zero's.

40. The malformation of the "backup set" that Great Circle produced appears to have resulted from an incorrectly performed operation on the computer server that contained the original data.

41. While the first production of data of incomplete data was over 4 gigabytes in size, the second set of data that Great Circle called "complete", was less than 1 gigabyte in size.

42. I was unable to proceed with a full analysis because of the defects in both of the sets of data.

**Steps that I need taken by defendants for me to Perform my Analysis:**

43. I am requesting that Great Circle produce a full set of invalid data from their Time Keeping database, employing the same methods and procedures they initially followed to capture the data for the first production, , except this time include all data for all employees.

44. I am requesting that Great Circle include all data sets in the database respective to employees, time keeping, schedules, breaks, and edits to those respective elements of data.

45. I am requesting that this production be in a format that is capable of being read by Microsoft SQL Management Studio.

46. I am requesting that the Great Circle retain Microsoft-Produced ".bak" file name nomenclature, just as had been assigned to the original files.

47. I am requesting that these files remain in uncompressed (non-zipped format) and simply placed onto a USB stick.

**Final Thoughts**

48. In the case of Great Circle, I spent a lot of time developing sets of procedures to establish the validity of data that was provided, instead of doing the data analysis itself – and determining which files were valid and invalid, and which components of data were missing. This is a complete waste of time, as I was hired to conduct an analysis of data, not a validation of whether

the data contained the elements that I needed to analyze.

49. Mallison & Martinez took great steps to meet the requirements of my very demanding schedule, providing assurances that the data would be available during the allocation of time that I had scheduled to work on my analysis. They promptly provided me with the data that they received, and let me know when data would be arriving.

50. I billed to my client 18.54 hours. ($2,668.30) so far, and have been so far unable to begin to produce a useful set of full analysis, because Defendants have not produced data in accordance with requests. My time was spent simply determining the status of the production(s), and the quality of the data contained within, and trying to establish whether I could perform an analysis on the data that had been provided, despite it being incomplete and missing a lot of data.

51. Typically, it has been my experience that Parties will work proactively with experts on both sides, because it is in everyone's interest to have a full, unbiased set of analysis based upon complete data, from which clients may derive their conclusions. My job simply is to provide a complete picture what took place during the course of employment.

52. I recently similar data in a case called La Salsa, in which my analysis was central toward class certification of approximately 3,000 hourly restaurant employees under similar circumstances.

53. If I were provided with a full set of data, I could provide the same type of analysis to this court as I did with the La Salsa case.

54. If I receive the complete set of requested data from Great Circle, I will need approximately three weeks to conduct my full analysis.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 16th day of April, 2010 at University of Illinois, Champaign, Illinois.

Aaron Woolfson