1            UNITED STATES BANKRUPTCY COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                     --oOo--

4   In Re:                    ) Case No. SA07-12600-ES
                              )
5   GREAT CIRCLE FAMILY       ) Santa Ana, California
    FOODS, LLC,               ) Thursday, June 3, 2010
6                             ) 10:30 a.m.
              Debtor.         )
7   _____)

8                             HEARING RE: MOTION FOR
                              CONTINUANCE FOR CLASS
9                             CERTIFICATION DEADLINE AND FOR
                              AN ORDER REQUIRING STEPTOE AND
10                            JOHNSON TO PAY PLAINTIFF'S
                              EXPERT EXPENSES ASSOCIATED
11                            WITH THE ANALYSIS OF FAULTY
                              AND INCOMPLETE DATA AND FOR
12                            ATTORNEYS FEES

13

14            TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE ERITHE SMITH
15         UNITED STATES BANKRUPTCY JUDGE

16  APPEARANCES:

17  Special Litigation Counsel    KATESSA C. DAVIS, ESQ.
     for the Debtor:              JEFFREY M. GOLDMAN, ESQ.
18                                Steptoe & Johnson, LLP
                                  2121 Avenue of the Stars
19                                Suite 2800
                                  Los Angeles, California 90677
20                                (310) 734-3273

21  For the Claimant:             STAN S. MALLISON, ESQ.
                                  1939 Harrison Street
22                                Suite 730
                                  Oakland, California 94612
23                                (925) 283-3842

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

ii

Court Recorder:             Rick Reid
                            United States Bankruptcy Court
                            411 West Fourth Street
                            Suite 2030
                            Santa Ana, California 92701

Transcriber:                Briggs Reporting Company, Inc.
                            6336 Greenwich Drive, Suite B
                            San Diego, California 92122
                            (310) 410-4151

1

1   SANTA ANA, CALIFORNIA THURSDAY, JUNE 3, 2010 10:30 AM

2                         --oOo--

3      (Call to order of the Court.)

4           THE COURT:  Number 19.

5           MS. CHARLES-DAVIS:  Good morning, your Honor.

6  Katessa Charles-Davis of Steptoe and Johnson, special

7  litigation counsel for Debtor, Great Circle Family Foods and

8  my associate.

9           MR. GOLDMAN:  Jeffrey Goldman, your Honor.

10          THE COURT:  Okay.  Is there a telephonic

11 appearance?  Mr. Mallison?

12          THE CLERK:  Is court call even there?  Court call?

13 They're on.

14     (Proceedings recessed briefly.)

15          THE COURT:  Are they on?

16          THE CLERK:  They should be, your Honor.

17          THE COURT:  Recalling number 19, Great Circle

18 Family Foods, LLC.  Courtroom appearance first.

19          MS. CHARLES-DAVIS:  Katessa Charles-Davis, Steptoe

20 and Johnson, special litigation counsel for Debtor, Great

21 Circle Family Foods.

22          MR. GOLDMAN:  Jeffrey Goldman, also special

23 litigation for Debtor Great Circle Family Foods.

24          THE COURT:  Telephonic appearance.

25          MR. MALLISON (Telephonic):  Good morning, your

*Briggs Reporting Company, Inc.*

2

1 Honor.  This is Stan Mallison on behalf of claimant.  We also

2 have our expert on the line if there's any questions the

3 Court may have with regards --

4          THE COURT:  Mr. Mallison, have you seen my

5 tentative ruling?

6          MR. MALLISON:  Yes, I have.

7          THE COURT:  Do you wish to address it?

8          MR. MALLISON:  Only one point.  I believe it may

9 be a typo but the tentative suggests that Plaintiffs, our

10 side claimant, would be sanctioned if Defendants did not

11 produce the data?

12          THE COURT:  Yeah, that's probably a typo.  I type

13 my own tentatives.

14          MR. MALLISON:  Okay.  Other than that, I think

15 we're fine.  I did bring my expert with regards to the issues

16 if you think we need to get into the exact issues.

17          THE COURT:  Ms. Davis?

18          MS. CHARLES-DAVIS:  Yes, your Honor, thank you.

19 First of all, I had an opportunity to look at the tentative,

20 and I'd like to offer the Court some clarification on certain

21 facts and issues.  First and foremost, the Debtor does not

22 have a tech person.  We were able to secure the cooperation

23 of Hula Software, a third party, to produce the data that the

24 Court requested.  We submitted the declaration of Juan Carlos

25 Mahia (phonetic) who is an employee of Hula Software.

3

1       At paragraph five, he declares that Hula Software

2 is not owned, operated or controlled by the Debtor, but

3 instead by other individuals that are identified in his

4 declaration.  Also in paragraph five, he's clear and states

5 that Debtor has no authority, control or responsibility over

6 the operations of Hula Software and doesn't maintain or

7 manage its database.  We've also submitted the declaration of

8 Roger Glukman (phonetic) where Mr. Glukman is the chief

9 executive officer of the Debtor, and he declares that he does

10 not and Debtor does not either own ADP or Hula Software and

11 has no authority, control or responsibility for the database

12 of Hula Software and that the Debtor has produced everything

13 in its possession, control and custody.

14       The claimant in this instance have failed to

15 issued a subpoena to Hula Software or to ADP to compel them

16 to produce documents and data necessary for their motion for

17 class certification.  We have no means of securing or

18 guaranteeing their cooperation by Monday, June 7th.  Mr.

19 Mahia executed the declaration from Lima, Peru and it was

20 difficult even securing this declaration.  So, to be able to

21 say that we would be able to get him on the phone is a

22 stretch.

23       Also, the Court's tentative indicates that we are

24 to produce readable data on or before June 9th.  Again, we do

25 not have any control or authority over Hula Software which

4

1 possesses the data.  Their cooperation has been voluntary.

2 They have not been subject to a subpoena or a deposition

3 notice by the claimant in this case for reasons I don't

4 understand.  With respect to the data itself, the Debtor has

5 provided all the requested data in its possession, custody

6 and control, and all that data that was produced from Hula

7 Software which is in dispute.

8        I understand that only 13 percent of the data is

9 actually in dispute.  Throughout this process, we have

10 requested in writing the specifications of the problems or

11 issues that the claimants contend with the data.  For

12 whatever reason they took their time and when they did

13 respond to us, they gave us vague complaints.  We asked for

14 specific information so that we can contact Hula and get

15 answers to them before the deadline of April 13th.  They

16 failed to do that.  They waited until the last possible day

17 on April 13th to file their ex parte application which, by

18 the way, was denied and their motion was filed late, the

19 motion to continue.

20        The big picture here is the maximum potential

21 recovery for this particular claim is $90,000.  We have a

22 class of potentially 3,100 former and current employees which

23 simple math maybe their claims might be worth $30 each.  I

24 don't understand and I believe a reasonable person would say

25 that this particular motion and dispute doesn't make fiscal

5

1 sense.  We've given them everything we have.  We didn't

2 manipulate the data.  We didn't corrupt the data.  We didn't

3 supplement the data.  We gave them everything that Hula gave

4 us.

5          They've been aware of the existence of Hula

6 Software.  They've been aware of existence of ADP for some

7 years now.  The fact that they failed to depose anybody from

8 that third party or serve a deposition subpoena or document

9 subpoena on that party I just don't get it.  I don't

10 understand.  What I'd like to request the Court to is please

11 reconsider its tentative ruling, and also to rule on the

12 objections that were submitted by the Debtor to the

13 declarations.  We are not waiving our objections to those

14 declarations.  Those declarations are fatally flawed in

15 several respects, including the declaration of Mr. Mallison

16 which was not signed under penalty of perjury.

17          Further, we ask the Court to disregard the

18 supplemental and late filed declaration of Mr. Wilson.  We

19 did not have an -- it was filed with a reply brief.  We

20 didn't have an opportunity to review it or to respond to it.

21 Also, I'd like to add that the data in dispute, the 13

22 percent of data related to -- that they contend is corrupt

23 has absolutely nothing to do with the motion for class

24 certification.  It could have been filed on April 16th.  It

25 wasn't.  It has nothing to do with the issues of numerosity.

6

1         As I indicated this class is almost 3,100 former

2 and current employees.  That issue has nothing to do with the

3 data.  Topicality has nothing to do with the data in dispute.

4 Adequacy has nothing to do with the data in dispute.  What we

5 have here are claims about working off the clock.  There's no

6 data necessary and there's no data that exists to support an

7 off the clock claim.  Claimant could have provided but failed

8 to produce even a single declaration for one of its purported

9 class members to the Court attesting to off the clock work.

10         Claimant's counsel is hiding behind this Milbrig

11 (phonetic) data because they can't put forth an adequate

12 motion for class certification.  Whatever they put forth it's

13 going to be objected to because the data is unauthenticated.

14 A document subpoena was not served.  I don't see or

15 understand how they can authenticate the data for a motion

16 for class certification.  One final point I'd like to add is

17 that in the state court action the state court has compelled

18 the arbitration of the disputes with respect to two of the

19 class representatives.

20         The Debtor in this case has bargained for the

21 right to arbitrate disputes, and by moving for it with the

22 class certification motion we're basically essentially

23 waiving or the Court is bargaining away or giving away what

24 the Debtor has rightly bargained for which is the arbitration

25 of some of these disputes, most of these disputes.  I'd like

7

1  to add, and I'm sure the Court has considered, that the

2  motion itself is procedurally defective.  It's not brought

3  under the appropriate rules.  There isn't the appropriate

4  stipulation or declarations.  If the declarations were

5  disregarded as the Debtor requests, this motion would be

6  totally gutted.

7          So, we request that the Court please reconsider

8  its tentative ruling.  Please rule on the objections for no

9  other purpose then for the possibility of review.  Jeff.

10          MR. GOLDMAN:  Good morning, your Honor.  I'm a

11 little congested so I apologize in advance.  I'll just add

12 the citation to the local bankruptcy rule that Ms. Davis was

13 referencing with respect to the procedural flaws.  It's local

14 bankruptcy rule 7026-1(c)(3)(c) which states that for a

15 discovery motion:

16          "In absence of such stipulation or

17          declaration of counsel of non-

18          cooperation of an opposing party, the

19          court will not consider the discovery

20          motion."

21 Thank you.

22          THE COURT:  All right.  Mr. Mallison.  Mr.

23 Mallison, I want to explain my tentative ruling.  I

24 understand there are evidentiary objections to which I'm

25 happy to give rulings.  My tentative ruling was designed to

8

1  possibly assist the parties in reaching some sort of

2  resolution to this.  So, that's why I didn't focus so much on

3  the technical aspects, although I did elude to one having to

4  do with procedure.  I can tell you that it is normally my

5  policy when it comes to discovery motions to not consider

6  motions that have not complied with the rules, including a

7  meet and confer regarding the possible resolution and, more

8  importantly, obtaining a stipulation, that is the filing of a

9  joint stipulation between the parties or absent a joint

10 stipulation a declaration indicating why a joint stipulation

11 was not possible.

12         So, that's one of the issues you will need to

13 address, as well as the argument of Debtor's counsel that the

14 information that's being requested from the third party over

15 which the Debtor does not have control.  Why don't you start

16 with the procedural matter first.

17         MR. MALLISON:  Sure, your Honor.  It was my

18 understanding, and maybe in error, but my understanding the

19 Court has already ruled on the discovery matters at issue.

20         THE COURT:  You raise new issues.  You can't --

21 I'm not even going to let you go that far on that one.

22         MR. MALLISON:  Okay.

23         THE COURT:  Because if I ruled before and there's

24 still issues and you bring another motion and you raise

25 issues in that motion, that's a discovery motion.  It's

9

1 clearly -- I don't know how you get around it.  It's a

2 separate motion.  It is raising all sorts of discovery issues

3 and asserting that the electronic data was not produced or

4 not produced properly.  I don't know how you can call that

5 anything other than a discovery motion.

6          MR. MALLISON:  If I may.  Again, obviously in

7 error but we were just attempting to enforce your previous

8 order.

9          THE COURT:  Where do you say that?

10          MR. MALLISON:  The other point is we definitely

11 met and conferred.  I believe the record is full of requests

12 for Defendants to amend their response in this case or amend

13 their production of data, and they refused.

14          THE COURT:  Okay but you've done two things.  You

15 have not answered either one of my questions.  Number one

16 starting with the procedural issue I don't know how you make

17 the argument that you were just enforcing a prior order.  I

18 understand there was a prior motion to have these matters

19 produced, but obviously an other dispute has arisen over that

20 production.  The whole purpose of the local rules is so that

21 the Court can easily identify the issues and what the

22 position of the respective parties are.

23          Since you have now raised other issues with regard

24 to this new motion, you can't ride on the coat tails of the

25 prior motion and say that you weren't required to follow the

10

1 rules.  That doesn't make sense to me.  Secondly, I

2 specifically asked you to address the issue of the fact that

3 the data is coming from a third party and not directly from

4 the Debtor.

5          MR. MALLISON:  I'm happy to address that, your

6 Honor.

7          THE COURT:  All right.  Go ahead.

8          MR. MALLISON:  They are required by law as an

9 employer in the state of California to maintain that data.

10 They cannot -- it would be a violation of California labor

11 law for them to transfer that data and make it unaccessible

12 to themselves.  Labor Code 226, 1194 and the wage orders

13 require them to maintain this data.

14          Furthermore, some of the data is post filing of

15 the bankruptcy.  In either case, obviously they have been

16 able to get the data.  They have it under their control.

17 They've been able to abstract the data.  The expert, Aaron

18 Wilson has said that the problem lies with the manipulation

19 of the data by defense counsel --

20          THE COURT:  I guess I'm going to go to the

21 evidentiary objections because I found many parts of his

22 declaration to violate evidentiary rules.  So, let me go to

23 that.  I believe this is the evidentiary objections to the

24 amended declaration of Aaron Wilson, is that correct?

25          MS. CHARLES-DAVIS:  That's correct.

11

1          THE COURT:  The first objection, declaration of

2   Mr. Wilson at paragraph nine, maintain -- set of features

3   relating to keeping track of employees.  My tentative if I

4   were to have -- would have been to sustain that objection on

5   the grounds of lack of personal knowledge or foundation.

6   With respect to the second objection, again Hula had a set of

7   mechanisms to allow customers to customize reports.  Again,

8   sustained.  Lack of personal knowledge, foundation.

9          Three, Hula has developed back end database et

10  cetera.  Again, sustained lack of personal knowledge,

11  foundation.  Four, this is at paragraph 12:

12          "It is my understanding that the company

13          use Hula to keep track"

14  This again is lack of foundation, personal knowledge,

15  speculative.  Number five, Wilson declaration at paragraph

16  13.  Hula's website states that they engage in sustained.

17  Hearsay.  Number six, paragraph 14, a full set of data from a

18  typical Hula system.  Sustained lack of personal knowledge,

19  foundation.  Seven, this is paragraph 15, on this one I was

20  inclined to overrule that objection.  Eight, paragraph 16

21  overruled.  Number nine, this is paragraph 17 overruled.

22          Number 10 at paragraph 21, the files contain time

23  in and time out overruled.  Number 11 this is at paragraph

24  25, however I believe the data does exist, overruled.  With

25  respect to number 12, this is a declaration -- paragraph 28,

12

1 significant amounts of data missing from data files that were

2 originally produced, overruled.  13 overruled.  14 sustained

3 on the basis of lack of foundation, personal knowledge.  15,

4 paragraph 49 overruled.  16 overruled at paragraph 50.  17

5 overruled.  18 also overruled.  Ms. Davis, did you want to

6 address the issue regarding the labor law statute cited by

7 Mr. Mallison?

8          MS. CHARLES-DAVIS:  Certainly, your Honor.  First

9 of all, that is a separate cause of action that they are

10 alleging in the state claim, state court action that we

11 failed to maintain our records, and now they're pointing

12 their fingers and saying see, ha you didn't maintain your

13 records.  We have produced the records that are in our

14 possession, custody and control that we were required to

15 maintain under the law, but this data goes back seven years

16 and we're not required to maintain that data for seven years.

17 That's why we had to reach out to third party Hula to get the

18 balance of the data.

19          They have been cooperating with us voluntarily.

20 We have no means of compelling further cooperation from us.

21 If they decide we don't want to produce any more, we don't

22 want to work with you any more, then we're stuck.  They could

23 have subpoenaed and put them under jurisdiction of this

24 Court, but they didn't and I don't know why.

25          THE COURT:  Mr. Mallison.

13

1          MR. MALLISON:  The definition of the class is

2  based upon the statute of limitations in the state court

3  case, and the statute of limitations in the state court case

4  covers the time period in which they are required to keep

5  records, in addition to the time going forward after the

6  complaint was filed where they needed to maintain those

7  records for the purposes of the state court litigation.

8          So, they have to have these records.  The

9  allegation in the state case is not that they did not

10 maintain records. It's they did not maintain accurate

11 records, and that's exactly what we're trying to prove in

12 this proceeding.

13          MS. CHARLES-DAVIS:  May I respond, your Honor?

14          THE COURT:  Yes.

15          MR. MALLISON:  The accuracy of the record do not

16 have to do with off the clock time, although that's part of

17 it.  It has to do with the fact that they didn't pay the

18 amount of money they were supposed to pay.

19          THE COURT:  Go ahead.

20          MS. CHARLES-DAVIS:  His assessment is incorrect

21 about the second amended complaint.  The issue is that we

22 failed to maintain these records on these employees, and we

23 have maintained the records under the law.  Again, this class

24 period is seven years.  We're not required to maintain

25 throughout the whole -- for the rest of infinity, but just

14

1  what's required under the law.  We had to reach out again to

2  a third party to get that balance of the records.  At issue

3  though here, your Honor, is the records for 13 percent of the

4  class.  Let's not lose focus here.  They have the data, the

5  Milbrig data, on 87 percent of the class.  They have access

6  to it.  It's functional.  It's not in dispute.  They're

7  crying or complaining about 13 percent of the data on Milbrig

8  in this case.  That had nothing to do with their motion for

9  class certification.

10       They have the data for 87 percent of the class.

11  They could have come up with enough evidence, although it

12  would be unauthenticated evidence, to support their issue of

13  topicality, commonality, numerosity, and adequacy.  Those are

14  the elements under the statute.

15       MR. MALLISON:  Your Honor, that is entirely

16  inaccurate.  There is 13 percent of the employees that for

17  some reason they omitted in the January production, but

18  that's not our major concern.  They're right.  We could make

19  the class certification without that 13 percent.  The problem

20  was in the field which the 87 percent of data was produced

21  they omitted from the production the rest period times.  They

22  have the calculated times there.

23       They even put it in their own papers, a picture of

24  the calculated time but they omitted the rest period start

25  and stop times.  They omitted the meal start and stop times

15

1  from the data.  That's what we need to prove our case.

2  Somehow that disappeared out but we have calculated times

3  which are not relevant to our showing or not as relevant to

4  our showing.  Our showing is that the meal periods were late,

5  the rest periods were late.  The rest periods were short.

6  They didn't get a second rest period or they got it late.

7  That's what we need to prove in the case, and that's what

8  they took out.

9          MS. CHARLES-DAVIS:  Your Honor, we did not take

10  out, delete, omit, supplement, amend any data that was

11  provided to the claimant in this case.  There are nine causes

12  of action in the state court case.  The dispute appears to be

13  on meal break data that they say they don't have access to.

14  We provided everything we have.  Under the law, we're not

15  required to record rest breaks of 10 minutes.  It's not

16  required.  If we have a code in there that permits employees

17  to put that data in there and they choose not to, there's no

18  liability for us because we didn't record 10 minute rest

19  break data.

20          The software was developed by Hula, not by Debtor.

21  We leased or borrowed or purchased the software.  In that

22  software, they created codes for rest breaks.  That data or

23  that system or that software is supplied to retailers,

24  restaurants throughout the country.  They didn't make

25  customized software just for this particular Debtor.  Even

16

1 though there may be a code in there for rest breaks, we're

2 not required under the law to compel our employees to record

3 their 10 minute rest breaks.

4          THE COURT:  Mr. Goldman?

5          MR. GOLDMAN:  Yes, your Honor.

6          MR. MALLISON:  Yes, they did record their --

7          THE COURT:  Hold it, Mr. Mallison.  Go ahead.

8          MR. GOLDMAN:  Thank you.  Further to that point,

9 we have submitted declarations both from myself and from

10 Hula's representative Mr. Mahia establishing that all of the

11 data from the seven years of the class has been provided.

12 That's paragraphs five and 12 of my declaration, and

13 paragraph eight of Mr. Mahia's declaration.  No objections

14 were lodged to those declarations.  There's no disputes as to

15 those declarations, excuse me, your Honor, in the reply

16 brief.

17          I believe most of the objections that you've

18 overruled to Mr. Wilson's declarations have to do with his

19 belief as to what information is or is not there.  We've

20 provided unobjected to and undisputed evidence that all the

21 time information was provided.  As Ms. Davis pointed out a

22 little bit earlier, if they had concerns about what that data

23 looked like their remedy should have been to either specify

24 their concerns to us prior to the class certification

25 deadline as we requested many times, or to subpoena and

17

1 depose Hula Software which they haven't done over the three

2 years since this litigation has been pending.

3          THE COURT:  Mr. Mallison, I want to understand

4 something here.  I have the declaration of Mr. Mahia saying

5 that:

6               "Hula Software has provided the Debtor

7               will all time keeping information that

8               is available for Debtor's non-exempt

9               employees from 2003 to present.  Hula

10              Software has no other time keeping data

11              for Debtor's employees dating back to

12              2003."

13 So, what is it exactly am I supposed to compel the Debtor to

14 produce?  Hula says they don't have anything else.

15          MR. MALLISON:  Sure.  We don't know what they mean

16 by time keeping information, whether that includes all --

17          THE COURT:  Then, why don't you subpoena the

18 records from Hula.

19          MR. MALLISON:  Well, this is the first time we've

20 heard that they don't possess the data honestly.  So, we

21 would be glad to subpoena Hula right now and get the

22 underlying database, but I think we've been spending like a

23 year trying to get it from them without any objection along

24 those lines.  So, we'd be --

25          THE COURT:  I don't understand.  This is the first

18

1 you've heard that Hula had the software -- that they were

2 using the Hula Software?

3        MR. MALLISON:  No, no, no, I didn't understand

4 until this moment that they are claiming they do not possess

5 the database, in other words the underlying database, the

6 data.  That they don't have access to it, that they don't

7 control it which would be in violation of California law.

8        THE COURT:  Well, you know what, I'm not here to

9 determine whether it's a violation of California law.  My

10 concern as a practical matter is I'm not going to issue

11 orders that don't make sense.

12        MR. MALLISON:  Okay.

13        THE COURT:  You can make the argument if they say

14 they produced everything they have, and you can subsequently

15 make an argument whether it's in this Court or state court

16 well, they haven't complied with the violations but to say

17 that you've got to grant this order because this is what

18 they're required to do because that's not the issue.  The

19 issue is what exactly is it I'm supposed to compel them to

20 produce if I have evidence there's nothing else for them to

21 produce?

22        MR. MALLISON:  The data -- the information that

23 they provided to me and the information in Aaron Wilson's

24 declaration demonstrates that they haven't provided all the

25 information that they have in their possession.  In

19

1 particular, they have provided us and the Court in their

2 brief with a demonstration that there's calculated fields,

3 that is there are rest breaks that have a calculated length.

4 The only way you can have a calculated field and if you have

5 the underlying calculated data, that is when they punched in

6 and when they punched out, you can't tell someone had a nine

7 minute break unless you know when they started and when they

8 stopped.  Same with meal breaks.  They provided calculated

9 times without the underlying calculated variables.  Those

10 have to be in the database and that's what Aaron Wilson put

11 in his declaration which you didn't strike.  There is

12 missing --

13          THE COURT:  Can you point me to the page, which

14 string you're looking at?

15          MR. MALLISON:  Paragraph 25 of Aaron Wilson's

16 declaration.

17          THE COURT:  Paragraph 25?

18          MR. MALLISON:  Of Aaron Wilson's declaration.

19          THE COURT:  Mr. Goldman?  Which declaration are we

20 looking at?

21          MR. MALLISON:  The amended motion filed -- amended

22 declaration of Aaron Wilson.

23          THE COURT:  All right.  Jeff Goldman's declaration

24 is the top of page 24, paragraph 25, clearly demarks the

25 calculated rest break field with no underlying rest break

20

1 information provided.

2 　　　　　THE COURT:  Mr. Goldman?

3 　　　　　MR. GOLDMAN:  Yes, your Honor.  First, I'd like to

4 correct something claimant is stating.  We did provide

5 information of breaks, evidence of breaks taken as well as

6 edits to breaks taken.  I can direct your attention to

7 paragraph 43 of my declaration you'll see in the screen shot

8 I provided on the left hand side the various tables in the

9 March 22nd production including T labor break, T labor break

10 edit, T labor edit history.  These all --

11 　　　　　THE COURT:  What paragraph is this again?

12 　　　　　MR. GOLDMAN:  It's paragraph 43 of my declaration,

13 your Honor.

14 　　　　　MR. MALLISON:  Your Honor, if we may, we never got

15 that much production in an uncorrupted form.

16 　　　　　MR. GOLDMAN:  This is the same information

17 available at the initial production we made, your Honor.

18 This isn't unique to the March production.  So, there is

19 break evidence provided in the productions that we made.

20 　　　　　THE COURT:  So, I'm sorry -- what I'm looking at

21 in paragraph 43 came from where?

22 　　　　　MR. GOLDMAN:  The screen shot that you're looking

23 at, your Honor, evidences the various tables that we provided

24 to claimant in the March 22 production.  The same type of

25 evidence was provided in the January production.  I'm

21

1 directing your attention to the folders labeled DBO.T labor

2 break.

3          THE COURT:  Wait a minute.  You got to tell me

4 because this is a teeny script.

5          MR. GOLDMAN:  I apologize for the small script,

6 your Honor.  The left hand side of that screen shot, line 18.

7          THE COURT:  Yes.

8          MR. GOLDMAN:  Line 17 and 18 that's where I'm

9 pointing you to.  Those are tables that contain break

10 information.

11          MS. CHARLES-DAVIS:  And that information and data

12 was provided in the initial production as well.

13          MR. MALLISON:  Your Honor, the declaration of

14 Aaron Wilson, paragraph 25 says it's not in there, and they

15 can only cite you to data that was not produced to us.

16          MS. CHARLES-DAVIS:  But, paragraph 25 by Mr.

17 Wilson is just his visual.  He didn't actually provide a copy

18 of the screen for the Court to see what he was looking at.

19 It just says what his belief is.

20          MR. MALLISON:  He's on the phone.  We can put --

21          THE COURT:  I'm not going to have testimony.  I

22 don't have time for that.  This is precisely why I needed a

23 stipulation because then we'd have each and every point, and

24 we'd have the one side, their position and any legal

25 authority, and the other side would respond to the same

22

1  issue, and we wouldn't be going through the process that

2  we're going through now.

3           MR. MALLISON:  Your Honor?

4           THE COURT:  And, I'm not going to have live

5  testimony at a motion hearing.  It's not happening.

6           MR. MALLISON:  Your Honor?

7           THE COURT:  So, no, I don't want to hear from your

8  declarant because there would have to be an opportunity for

9  cross examination.

10          MR. MALLISON:  I understand that.  My point is a

11  little different.  What I suggest is that we carry out

12  your --

13          THE COURT:  No, I'm not going to carry it out now

14  because I can see now that -- as I said before I presented

15  that because maybe there was a resolution here, and instead

16  I'm hearing things that are diametrically opposed.  I see one

17  screen and it says something okay.  Then, I've got your

18  declarant saying he doesn't believe it's there.  I don't know

19  what he's looking at.  I don't know if he's looking at the

20  same screen that we're looking at on page 32 of the

21  opposition or not.

22          MR. MALLISON:  He's looking at a totally different

23  database.  He's looking at the January database.  We've never

24  been provided with the March database.  That's my point.

25  That might be one way to --

23

1          THE COURT:  So, the scree that appears on page 32,

2  paragraph 43 you don't have this?

3          MR. MALLISON:  No, the Aaron Wilson declaration

4  demonstrates that what we received from there from March

5  corrupted.  It was unreadable and they refused to produce a

6  replacement.  This whole motion would be moot if all the data

7  was actually in there and they just sent us a copy that

8  worked.

9          THE COURT:  I don't understand this.  I don't even

10  know how I can resolve this, Mr. Goldman.  What is going on?

11          MR. GOLDMAN:  First, your Honor, Mr. Mallison

12  previously stated that the March 22nd production is basically

13  irrelevant to the request -- the relief he's seeking.  So,

14  he's returned now to the March 22nd production.  Again, what

15  you have here are diametrically opposed declarations.  We

16  provided the information to them.  I've provided you with

17  step by step screen shots as to exactly how the file I

18  provided to Mr. Mallison can be opened, the data that can be

19  reviewed in that database.  Mr. Wilson has provided his

20  declaration saying I can't open it.

21          MR. MALLISON:  Wait a minute.  Mr. Wilson --

22          MS. CHARLES-DAVIS:  And, there has been no

23  objections to the declaration of Goldman, of Mahia or of

24  Glukman.

25          MR. MALLISON:  Your Honor, Mr. Wilson is an expert

24

1 in database analysis.  He followed those steps in his

2 declaration, how he followed those steps and he concluded it

3 was a corrupt file.  He analyzed the January data without any

4 problem, but he concluded that the March was corrupted data.

5          THE COURT:  Okay.  Let me make sure I understand

6 this.  He says the file is corrupted.  Mr. Goldman, you

7 looked at the file and it's alleged to be corrupted?

8          MR. GOLDMAN:  Correct.

9          THE COURT:  This doesn't make any sense.  It seems

10 to me that maybe you should meet with Mr. Goldman and look at

11 his computer screen.  I don't know.  This just doesn't make

12 any sense to me.

13          MR. MALLISON:  Well, we could get around this if

14 they just produced the March production, an uncorrupted

15 version.  If they think it's corrupted whatever.  There's

16 no --

17          THE COURT:  Was the March production produced or

18 not?

19          MS. CHARLES-DAVIS:  It was produced, your Honor

20 and it was not corrupted.  It was readable.  Mr. Mallison has

21 already conceded that that March production related to 13

22 percent of the class is irrelevant.  This was not obstruction

23 to their motion for class certification.  This is just an

24 excuse for a delay, delay, your Honor.  We have put off

25 evidentiary hearing a couple of times now because of the

25

1 claimant.  This one single claim is holding up the

2 distribution of $900,000 to Valley creditors out there

3 waiting.

4          MR. MALLISON:  Your Honor, they have now produced

5 the data in the January production.  We have that in the

6 Aaron declaration, paragraph 25.  They say they produced it

7 in the March production and as I mentioned they produced it

8 in a corrupted form.  It is not possible for --

9          THE COURT:  I have no way of resolving this.  I

10 have absolutely no way of resolving this.  I have one side

11 saying one thing, the other side saying another.  How, Mr.

12 Mallison, would you suggest that I resolve this since I have

13 conflicting testimony?

14          MR. MALLISON:  Sure.  Provide us with an

15 uncorrupted version, even if they think it's uncorrupted.

16 Just send us another one of the March data.  Simple, right?

17          MS. CHARLES-DAVIS:  This is not an inexpensive

18 process, your Honor.  We have to rely on a third party to

19 cooperate with us.  Their tech guy is located in another

20 country.  We have to pay expenses again for another copy of

21 this data that we produced in readable form originally.  The

22 problem here is they waited until the very last day, April

23 16th, to complain.

24          MR. MALLISON:  Your Honor?

25          MS. CHARLES-DAVIS:  We sent them --

26

1       THE COURT:  Let's say they would have complained

2 two days later, what would you have done?

3       MS. CHARLES-DAVIS:  They would have been out of

4 luck at that point in time.  They were only saved by the bell

5 by filing that ex parte application that was denied.  They

6 should be out of luck now.

7       THE COURT:  That wasn't my point.  You said they

8 waited to the last minute.  My point is if they had responded

9 immediately and said we have problems with this, then what?

10       MS. CHARLES-DAVIS:  Then we would have -- we've

11 asked them to -- prior to this motion, April 16th, weeks

12 before we asked them in writing please specify the issues

13 that you have with the database.  We never got a response

14 from Mr. Mallison.  What we got from Mr. Mallison was a

15 general vague email to my office saying Ms. Davis, the file

16 is corrupted.  Send us another one.  What is your problem?

17       It wasn't until we saw Mr. Wilson's declaration

18 that they started to begin to specify the problems that they

19 have with the data.  We were already in the brief writing

20 mode at that point in time.  Meet and confer requires that

21 you communicate with us about the specific issues or problems

22 that you have with the database so that we can get the

23 cooperation --

24       THE COURT:  So, when you said send the file again,

25 what would that entail?

27

1           MS. CHARLES-DAVIS:  It will entail us -- one,

2  depending on the cooperation of a third party who we have no

3  control over --

4           THE COURT:  Just physically, what's involved in

5  transferring the same file you already transferred before?

6           MS. CHARLES-DAVIS:  Cost.

7           THE COURT:  What's the cost?

8           MS. CHARLES-DAVIS:  Jeff?

9           THE COURT:  I'm trying to figure out how this

10 works logistically.

11          MR. GOLDMAN:  Sure.  Well, in terms of --

12          MR. MALLISON:  Your Honor, if I may?

13          THE COURT:  No, I'm asking a question to Debtor's

14 counsel.

15          MR. GOLDMAN:  In terms of just the March file, I

16 can copy and paste the zip file that I sent again onto a

17 flash drive that I sent to him.  The problem is they're going

18 to come back with the same exact concerns that we dispute

19 which is we can't open it on our end, and we're going to say

20 we can open it on our end.  In order to regain the data from

21 Hula, Mr. Mahia has provided in his declaration what the

22 burden would be.  If I can have just a moment, I'll point out

23 the paragraph to you.  It's paragraph 27, your Honor.

24      (Pause.)

25          THE COURT:  All right.

28

1          MR. GOLDMAN:  I suppose one alternative to us in

2    paragraph 27 is if Hula is willing to put it onto a hard

3    drive, but again there's cost with getting a hard drive,

4    sending it to us and having it forwarded onto to claimants.

5    Thousands of dollars have already been spent to provide this

6    information.  Just the copying of hundreds of CD's alone has

7    gone into the thousands of dollars with no offers of

8    reimbursement.  So, the costs keep piling up and piling up

9    for information that we provided.

10          MS. CHARLES-DAVIS:  There's not even been an offer

11   from them to pay for the costs.

12          MR. MALLISON:  Your Honor, the cost of actually

13   producing the database which was your original order would

14   not have been substantial at all.  It sorts out data that

15   they think we're not entitled to that has been the expense.

16   That's where the expense comes from.  The database itself is

17   a matter of putting it on a disc, and then we could have had

18   all this problem solved.

19          MS. CHARLES-DAVIS:  Your Honor, we're under

20   obligation to protect the social security numbers and the

21   confidential information of these employees.  We don't have a

22   protective -- until recently we didn't have a protective

23   order over this data.  So, we were obligated under law not to

24   disclose their social security numbers, and that's the

25   information he's referring to.

29

1      MR. MALLISON:  We have a protective order now.  We

2 could give it to the third party expert.  We have no interest

3 in any private information or irrelevant information.  He can

4 analyze the data in its pristine state and we won't have this

5 problem.

6      MS. CHARLES-DAVIS:  As counsel may well know,

7 we're still subject to sanctions and litigation by these

8 employees if we disclose their social security numbers.

9 We're under court rule not to disclose that information.

10      MR. MALLISON:  The expert can be under a court

11 order protective order for that basis.

12      MR. GOLDMAN:  Let me just address one point made

13 by Mr. Mallison.  This is not a cost free process.  Hula

14 costs money.  My fees cost money.  Ms. Davis' fees cost

15 money.  Hard drives and flash drives cost money and CD's cost

16 money.  As I mentioned, it's been thousands of dollars so

17 far.  This is nothing more than a delay tactic, your Honor.

18      MS. CHARLES-DAVIS:  We're going to produce the

19 same data they already have, and they're going to come back

20 and say our expert can't open it.

21      THE COURT:  Mr. Mallison, why is that not the

22 result?  You're asking for the same thing they've already --

23 they say they've given you?

24      MR. MALLISON:  No, that's incorrect.  We know that

25 they have -- pursuant to Wilson's declaration at paragraph

30

1  25, somewhere along the line they have deleted data whether

2  it's at Hula or not.  For instance, one of the things that

3  was omitted in the declaration from Hula was that they

4  actually used this system as a point of sale system as well

5  which means there is time stamps for when people are working

6  every time they get on that register and punch in a

7  transaction.  That would be part of the data that would have

8  been included had they produced all the time stamped

9  information related to these employees.  They haven't

10  produced the rest breaks when they started and stopped.  They

11  haven't produced meal break data when they started and

12  stopped.  Somewhere that information has gone awry.  We need

13  the database, the underlying database --

14          THE COURT:  You know what I can't resolve this.

15  I've got conflicting testimony on both.  You're the moving

16  party.  You have the burden of proof.  You haven't met it.

17  If you think you should get the information, you're going to

18  have to subpoena Hula for it because this is getting us

19  nowhere.  I'm spending all this time all because you didn't

20  prepare a stipulation that should have been done in

21  accordance with local rules.

22          This would have been done in an organized fashion

23  rather than my having to look at several different

24  declarations and documents from all different places.  It

25  should have been in one document, one stipulation.  That's

31

1  the whole point of the local rule when it comes to discovery

2  matters because they do tend to be complicated and I don't

3  mean anything when I say convoluted but they can be,

4  especially when we're dealing with subjects like this in

5  terms of data, electronic data, whether or not it has been

6  produced, whether the files -- what they reflect.  We have to

7  talk on an apples to apples basis.

8          I shouldn't have to look at different pieces of

9  paper from, you know, just to try to figure out whether or

10 not the analysis is apples to apples or if it's not, or if

11 there's a disconnect.  I absolutely cannot do that with what

12 I have before me at this point.  I can't even tell if we're

13 talking about the same thing apples to apples.  I keep

14 hearing two different things even when we seem to be talking

15 about the same data, I'm hearing two different things.

16         The bottom line that I'm hearing is that you've

17 got data that supposedly you can't open.  You want the Debtor

18 to produce it again.  The Debtor is basically saying we can

19 produce it and we're going to be back here again because

20 there's going to be problems again.  It seems to me that if

21 you are concerned about what Hula has or doesn't have that

22 you should subpoena the records from Hula.  I don't know why

23 you couldn't have done it before.  It just makes common sense

24 to me.

25         So, whether -- I can rule one of two ways or on

32

1 two different grounds.  One that you didn't comply with the

2 formal requirements of local Bankruptcy Rule 7026 which

3 requires a real substantive meet and confer, and it also

4 requires more importantly a joint stipulation by the parties

5 that was set forth in detail precisely what is in dispute,

6 what the specific positions are and the legal authority for

7 each position taken as to each disputed item.  That's the

8 purpose of the stipulation.  I don't have that.  I'm not

9 going to spend another hour trying to figure this out.  Don't

10 have the time to do it.  That should not be what I'm supposed

11 to do when I've got local rules that provide this to be done

12 in an organized fashion.

13           MR. MALLISON:  Your Honor, we're happy to subpoena

14 the data then.  Can we come back after we get the data --

15           MS. CHARLES-DAVIS:  Your Honor, their motion, as I

16 hear from the Court, is that it's generally in essence

17 denied.  There is no motion for class certification that will

18 be heard before this Court.  We have a status conference

19 coming up on June 17th where we can get a hearing date on

20 that evidentiary claim --

21           THE COURT:  The bottom line is that the motion is

22 denied because the whole purpose for the continuance of the

23 deadline was to -- was because the Debtor had not provided

24 certain information.  The reason I cannot make a ruling today

25 on this is in large part because the appropriate rule was not

33

1 followed that would have allowed to me to analyze this

2 succinctly in an organized fashion.  So, that's not my fault

3 that you decided not to follow the rule.  So, the motion will

4 be denied.

5         MS. CHARLES-DAVIS:  Thank you, your Honor.

6         MR. MALLISON:  Your Honor?

7         MS. CHARLES-DAVIS:  I just have one question.  Are

8 we still on calendar for June 17th for a status conference?

9         THE COURT:  I don't know.

10         MS. CHARLES-DAVIS:  I believe there's a status

11 conference in this matter on June 17th at which time we would

12 get a day for the evidentiary hearing on Mr. Duc Nguyen's

13 claim.

14         THE COURT:  Do you know the time?

15         MS. CHARLES-DAVIS:  I'll check, your Honor.  9:30

16 I believe, your Honor.  I may be in error, your Honor,

17 confusing this matter with the state court action.  I'm

18 sorry.  Nevertheless, we do need to get a date for the

19 evidentiary hearing for Mr. Duc Nguyen's individual claim.

20         MR. MALLISON:  Your Honor?

21         THE COURT:  There is a status conference set for

22 June 17 at 9:30 a.m. with an updated status report to June

23 10.  That was the date that I had set the deadline for the

24 filing of the motion for class certification.  That was from

25 the February 18 status conference.  So, there is a status

34

1    conference on June 17 at 9:30.

2            MS. CHARLES-DAVIS:  Shall we keep that one on

3    calendar, your Honor, and from there we can get the

4    evidentiary hearing date for Mr. Duc Nguyen's claim?

5            THE COURT:  Well, I assume because even without

6    the class certification, there is still Mr. Nguyen's claim,

7    correct?

8            MS. CHARLES-DAVIS:  That's correct, your Honor.

9            MR. MALLISON:  Your Honor?

10           THE COURT:  Yes.

11           MR. MALLISON:  I hate to go back to the last

12   motion, but we can file a class certification motion based

13   upon the defective information provided.

14           THE COURT:  Then, you should have done so.

15           MR. MALLISON:  I mean there are 199 people's

16   claims tossed out the --

17           THE COURT:  Again, it's up to you to follow the

18   rules then.  If you could have filed it on April 16, then you

19   should have filed it.

20           MR. MALLISON:  It's not a great motion.  The

21   information we needed was not there.

22           THE COURT:  Well, you just told me you could have

23   filed it.

24           MR. MALLISON:  We can file something.  These

25   people's claims are at stake here.

35

1        THE COURT:  Okay, but you could have filed it and
2  you didn't file it.

3        MR. MALLISON:  We didn't have the information that
4  we feel necessary to file that motion, but we can file it,
5  preserve the issue for appeal if necessary we can file it.

6        THE COURT:  I still don't understand why you
7  didn't file it if you could have filed it.

8        MR. MALLISON:  We don't have the data.  They
9  failed to provide us the data.  We can file it --

10        THE COURT:  Well, then I guess if you don't have
11  the data you can't file it, and you don't have the data
12  because you don't have a proper motion in front of me to
13  compel t hat.

14        MR. MALLISON:  I understand that, and we can
15  file --

16        THE COURT:  So, I don't know which way you're
17  going on this because I'm hearing two different things.

18        MR. MALLISON:  We can file the class certification
19  motion.  It will be based on the need for the data for
20  purposes of proving up our claims, but the legal issues about
21  what the common questions could be --

22        THE COURT:  The motion is denied, Mr. Mallison.
23  Period.

24        MS. CHARLES-DAVIS:  Thank you, your Honor.  We'll
25  see you on June 17th.

36

1          THE COURT:  All right.  Very well.

2       (Proceedings concluded.)

3

4          I certify that the foregoing is a correct

5  transcript from the electronic sound recording of the

6  proceedings in the above-entitled matter.

7

8  /s/ Holly Martens_____          12-28-10_____
   Transcriber                     Date
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25